Grant Joseph Savoy, Esq. California SB #284077
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Phone 213 840 7234
Email: gsavoy@thesksfirm.com

```
┌─────────────────────────────────┐
│ X FILED        ___ LODGED        │
│ ___ RECEIVED   ___ COPY          │
│        AUG 1 3 2012              │
│    CLERK U S DISTRICT COURT      │
│      DISTRICT OF ARIZONA         │
│ BY_____ DEPUTY        │
└─────────────────────────────────┘
```

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| NATIONAL ASSOCIATION for the ADVANCEMENT of MULTIJURISDICTION PRACTICE (NAAMJP), ALLISON GIRVIN, MARK ANDERSON,<br><br>    Plaintiffs<br><br>    vs.<br><br>THE ARIZONA SUPREME COURT, HON. CHIEF JUSTICE REBECCA WHITE BERCH, HON. VICE CHIEF JUSTICE W. SCOTT BALES, HON. JOHN PELANDER, HON. ROBERT M. BRUTINEL,<br><br>    Defendants, | CV 12-1724-PHX-GMS<br><br>COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF INVALIDATING ARIZONA SUPREME COURT RULES 34(f)A.1 AND 34(f)A. 3 THAT DENY ADMISSION ON MOTION PRIVILEGES TO NON-RECIPROCITY SISTER-STATE ATTORNEYS UNDER:<br>1. FIRST AMENDMENT<br>2. PRIVILEGES AND IMMUNITIES CLAUSES<br>3. COMMERCE CLAUSE<br>4. DECLARATORY JUDGMENT (28 USC § 2201) |

## INTRODUCTION

1. The United States Supreme Court has squarely held that bar admission on motion is a constitutionally protected Privilege and Immunity. *Supreme Court of Virginia v. Friedman*, 487 U.S. 59 (1998).   In *Friedman*, the Supreme Court squarely rejected every conceivable justification the Supreme Court of Virginia proffered for its discrimination in bar admission on motion against out-of-state attorneys; including the Virginia Supreme Court argument that the attorney's privilege and immunity to practice law was not abridged because Ms. Friedman could take an examination and, upon passing, she could gain the right to practice law. The norm under the Privileges and Immunities Clause is comity, i.e. equal treatment.

2. Likewise, the US Supreme Court has also held that professional norms articulated by the American Bar Association are "(s)tandards to which we have referred as 'guides to determining what is reasonable.'" *Wiggins v. Smith*, 539 US 510, 524 (2003).   The *American Bar Association Report of the Commission on Multijurisdictional Practice* (2002) carefully studied *Client Needs in the 21st Century* in open hearings held all over the United States, recommending that States adopt admission on motion for experienced attorneys, and concluding that the requirement and ritual of taking another bar exam injures the public. The ABA's recommendation has been endorsed by the Conference of Chief Justices.   As Einstein's special theory of relativity that space and time were relative revolutionized Newtonian classic physics, the ABA's recommendation that States adopt reciprocal admission on motion is a tectonic paradigm shift, a game-changer.

3. The Second Law of Thermodynamics tells us that all systems tend toward entropy and disorder. No one, however, likes to admit they are wrong or misinformed, especially about beliefs that have been long held, but technology is rapidly changing our world and the legal profession.  Improvements in technology are based on consistently evolving scientific advances, which provide us with

increasingly better information. At the core of the scientific method is hypothesis testing. Experiments are conducted to prove or disprove the hypothesis, and then the hypothesis is refined and re-tested. Science is self-correcting. We learn when a theory is objectively tested. All conclusions in science are subject to further evidence and new ways of interpreting the data.[1]

4. The Honorable Arizona Supreme Court, and its Chief Justice REBECCA WHITE BERCH with her service on the Uniform Bar Exam Committee, is at the epicenter of improving bench and bar operational efficiencies and the legal profession. Borders are dissolving because of internet fueled advances in technology. Bar admission on motion and license portability has developed national momentum. Affordable access to the Courts and admission on motion benefits all Americans.

5. The ABA Commission on Ethics 20/20 recently recommended that admission on motion privileges should be provided to all lawyers licensed within the United States with three years of experience, and that all restrictions (such as Arizona's retaliatory tit-for-tat reciprocity, i.e. you get reciprocity here if our lawyers get reciprocity in your state) —should be abrogated. The ABA has recommended that States uniformly adopt the Golden Rule, i.e. do unto others as you would have them do unto you.

6. Plaintiffs allege — the hypothesis that a State requirement that holds that experienced attorneys should have to take and pass another state's bar exam when tested objectively — is patently false. The Arizona Supreme Court's tit-for-tat bar admission rules are unconstitutional when examined based on the latest precedent under the First Amendment, the Privileges and Immunities Clauses, and the Commerce Clause. As Steve Jobs technologically transformed the world and developed Apple's mission statement "Think Different," the facts and law asserted

---

[1] Dr. Stephen Novella, *Your Deceptive Mind: A Scientific Guide to Critical Thinking*, (Published Teaching Company 2012), Chapter 13 "Philosophy and Presuppositions of Science." Dr. Novella is a professor at Yale Medical School.

herein necessitate thinking differently about a systemic national problem that affects all lawyers travelling interstate. The Arizona Supreme Court, by taking the first step to end the old-school paradigm of retaliation against attorneys from non-reciprocity states will likely cause other States to examine and reject the tit-for-tat retaliation admission paradigm; thus, enhancing its status as a national leader in the administration of justice, and best serving as a role model for all American citizens.

7. Many people oppose *change* because of a deep-seated emotional need for *control* over events in their lives, i.e. a fear of the unknown. Adopting admission on motion for all attorneys, however, will not diminish the State's *control* over its admission process because the attorney will still have to file an application for moral character clearance before obtaining bar admission. A State that is a leader and promoter of the Uniform Bar Exam should also be a leader in adopting and promoting a uniform experienced attorney admission rule.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. § 1331. Venue is appropriate as defendants' principal office is in Phoenix, Arizona.

## PARTIES

9. Plaintiff NATIONAL ASSOCIATION for the ADVANCEMENT OF MULTIJURISDICTION PRACTICE (NAAMJP) is a public benefit corporation organized under California law with offices in Los Angeles. Plaintiff, like other corporations such as in *Citizens United v. Federal Election Commission*, 130 S.Ct. 876 (2010) (holding corporations have First Amendment rights), is engaged in interstate commerce and advocacy throughout the United States for the purpose of improving the legal profession by petitioning for admission on motion in those minority of jurisdictions that have not yet adopted the ABA's recommendations for reciprocity. Simply stated, the right to petition for the redress of grievances is a

federal right.  State restrictions on that federal right are subject to First Amendment scrutiny, and "cannot be sustained merely because they were imposed for the purpose of dealing with some evil within the State's competence." *Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217, 22 (1967); *Republican Party of Minn. v. White*, 536 US 765 (2002)(holding the Minnesota Supreme Court cannot prohibit candidates for judicial election in that State under its Judicial Code of Conduct from announcing their views on disputed legal and political issues.)  Plaintiff also asserts association and/or third-party standing because many of its members, who wish to remain anonymous for many reasons, including not wanting to offend the Court or prejudice their client's claims that may be pending, are handicapped by Arizona's tit-for-tat bar admission rules.  These Plaintiff members are stigmatized, slandered, and humiliated by the Rule 34(f) blanket presumption that they are not competent in their profession.  Plaintiff and its members aver that *one bar exam is more than enough* to establish basic legal competence.  Plaintiffs assert that their prior state licensing warrants full faith and credit.

10. Plaintiff ALLISON GIRVIN is an attorney, in good standing, admitted to practice law in the State of California and the United States District Courts for the Central and Southern Districts of California.  Plaintiff graduated *cum laude* from Saint Joseph's University in Philadelphia, where she was the captain of the women's tennis team, and its most valuable player.  She earned a J.D. from ABA accredited Villanova University School of Law.  She has over 10,000 hours of experience working as a licensed attorney. Plaintiff worked as an attorney in California from 2005 to February 2012.  She then moved from California to Arizona in an effort to be closer to her family in Arizona.  She has been denied the privilege of admission on motion, based solely on her residence and bar admission in California, a non-reciprocity state.  As such, Plaintiff has been disabled because she is compelled to take work as a legal assistant, earning substantially less than she did as an attorney, while spending enormous amounts of money and time

preparing to take Arizona's Uniform Bar Exam in order to once again prove that she is not a threat to the public; and that she has more than *entry level* competence, in order to practice her profession in Arizona.  Plaintiff has been injured in her pursuit of life, liberty, and happiness by Arizona's tit-for-tat bar admission rule, and she may in the future again be similarly re-injured by another State's licensing rules, requiring her to take another bar exam. Plaintiff maintains that she is not at fault, and that she should not be tainted because of the State of California's isolationist bar admission rules; its refusal to adhere to the Supreme Court's decision in *Friedman* and the First Amendment; and its refusal to follow the ABA's multiple recommendations for admission on motion without restrictions.

11.  Plaintiff MARK ANDERSON is an attorney, in good standing, admitted to practice law in the State of Montana and the United States Tax Court.  He graduated from the ABA accredited University of Montana School of Law in 1997. Plaintiff ANDERSON practices law in Montana.   Plaintiff has practiced law for fifteen (15) years. He has worked in both the private and government sectors. He has over 30,000 hours of experience working as a licensed attorney. He has extensive legal experience in estate planning, taxation, loan and debt settlements, bankruptcy, and real estate. He wants to move to and practice law in Arizona for family reasons.  Plaintiff, like most attorneys, does not want to take another bar exam merely because he wants to exercise his constitutional right to interstate travel. Plaintiff asserts that his constitutional rights, as a member of the bar received into an ancient fellowship for something more than private gain, and as an American citizen are paralyzed by Arizona's tit-for-tat bar admission rules. Plaintiff, like the Court itself, is an instrument of justice.  Plaintiff is denied the privilege of admission on motion in Arizona based solely on his Montana residence and citizenship.  Coming from Montana, a non-reciprocity jurisdiction, Plaintiff is categorically and presumptively unfit to practice law in Arizona, despite his impeccable track record and extensive legal experience.   Plaintiff is thus

directly injured, stigmatized, slandered, and humiliated by the categorical presumption that he is not qualified in his profession. If Arizona abrogates its tit-for-tat bar admission Rule, Plaintiff will pay the $1,800 application fee, move to Arizona, attend Arizona's highly touted course on Arizona law, and apply for admission on motion.

12. The defendants are the Arizona Supreme Court, and the Hon. Chief Justice REBECCA WHITE BERCH, the Hon. Vice Chief Justice W. SCOTT BALES, the Hon. JOHN PELANDER, and the Hon. ROBERT M. BRUTINEL.

## FACTS

## I. THE NATION'S FOREMOST LEGAL AND NON-LEGAL LEADERS HAVE RECOMMENDED ADOPTION OF UNIFORM ADMISSION ON MOTION RULES FOR EXPERIENCED ATTORNEYS

### A. The ABA Commission on Ethics 20/20 Recommends All States Adopt Admission on Motion Without Restrictions

13. The ABA Commission on Ethics 20/20 recently concluded that the ABA should adopt amendments to the Model Rule on Admission by Motion that would allow all lawyers to qualify for admission by motion with three years of experience. In its report explaining its conclusion, the Commission noted that they "examined many ways in which globalization and technology affected the legal profession, including the increasing importance of cross-border practice," and concluded that, "additional changes are necessary in light of technological developments, economic trends, and client needs and demands."[2]

14. The Commission cited two key factors leading to their recommendation for reducing the length of practice requirement in the Rule for Admission by Motion from five years to three years. First, market and client demands in an

---

[2] *ABA Commission on Ethics 20/20 Initial Draft Proposal, Admission By Motion,* American Bar Online (September 7, 2011) (http://www.americanbar.org/content/dam/aba/administrative/ethics_2020/201109 07_final_admission_by_motion_initial_resolution_and_report_for_comment.authc heckdam.pdf)

increasingly borderless world are fueling the need for lawyers to gain admission in other jurisdictions. Second, lawyers often need to move to new jurisdictions for a wide range of personal reasons, including the need to find employment.

15. The 20/20 Commission found that admission by motion procedures now exist in 39 states and the District of Columbia. The Commission's research revealed that more than 65,000 lawyers have used the procedure in the last ten years, 40,000 in the last five years. The Commission made a factual finding that there is no evidence that lawyers admitted by motion are more likely to be subject to disciplinary complaints, malpractice suits, or be disciplined than lawyers admitted through more traditional procedures.

16. The Commission further held that female lawyers were particularly injured by the failure of States to have admission on motion privileges due to family obligations and gender discrimination.

17. The main criticisms against Admission on Motion were addressed by the Commission. First, the Commission considered the concern that a lawyer who has practiced for only three years may not be sufficiently competent to practice law in a new jurisdiction. However, the Commission "**found no reason to believe that lawyers who have been engaged in the active practice of law for three of the last seven years will be any less able to practice law in a new jurisdiction than a law school graduate who recently passed the bar**." (Emphasis added) It further concluded that, "the 'local' law concern falsely assumes that passage of the bar examination demonstrates competence in local law." The Commission asks that "the ABA adopt the resolution urging jurisdictions that have not adopted the Model Rule to do so **and, in particular, to do so without imposing additional restrictions, such as reciprocity requirements**." (Emphasis added) [3]

---

[3] *ABA Commission on Ethics 20/20 Initial Draft Proposal, Admission By Motion,* American Bar Online (September 7, 2011) (http://www.americanbar.org/content/dam/aba/administrative/ethics_2020/201109

18. The ABA MJP and 20/20 Commissions also necessarily presumed — if by law, a layman is presumed to know the law, or can presumptively find it, and is presumptively capable of representing herself — *a fortiori* an experienced licensed attorney can do the same.   The hypothesis that a layman is presumptively competent, while on the other hand, an experienced lawyer is presumptively not competent is implausible and irrational.

19. Additionally, there is a presumption "that the lawyer is competent to provide the guiding hand that the defendant needs" applies even to young and inexperienced lawyers in their first jury trial and even when the case is complex. *United States v. Cronic*, 466 U. S. 648, 658, 664 (1984);   *Supreme Court of Virginia v. Friedman*, *supra*, 487 U.S. 59 (1988)(holding admission on motion is constitutionally protected and the Supreme Court will not presume that non-resident attorneys or citizens are not fully qualified).   Arizona's requirement of complete re-testing of already licensed attorneys from non-reciprocity states trespasses these Supreme Court holdings.

20. Additionally, many cases turn as much on the facts as on the law. Experience with developing facts is often a product of just that—experience.  An attorney's skill in developing facts is not tested by a pen and paper superficial bar exam.  As facts come within the First Amendment's "breathing space," statements of the law are considered merely opinions. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004).   Simply stated, facts are disputed, law is often unsettled, and a matter of opinion with judges disagreeing with each other.   Thus, requiring some attorneys but not others to reinvent the wheel based on subjective tests does more harm than good because the facts and law are generally matters of opinion, as are the test results.  It is well known in testing circles that it is almost

07_final_admission_by_motion_initial_resolution_and_report_for_comment.authc heckdam.pdf)

impossible to get subjective graders to agree on test scores. *See* Dr. Geoff Norman footnote 28.

21. The European Union has concluded that *one bar exam is more than enough*. In the EU there are 40 countries, one million lawyers, and 23 official languages. Lawyers licensed in one country can open an office temporarily or permanently in any country in the EU. After three years of practice in that country, they become a member of their new country's bar and retain their initial bar licensing.

**B. The American Bar Association Proposed a Rule Allowing Experienced Attorneys Who Move to a New Jurisdiction to "Temporarily" Practice Law While Awaiting Full Admission into the New Jurisdiction**

22. After a careful lengthy study by leading lawyers from all over the United States, the ABA Commission on Ethics 20/20 recently proposed a revision of the Model Rules of Professional Responsibility to allow experienced attorneys to **temporarily** practice law in a new jurisdiction while under-going the often long process for full admission to take its course.[4] The updated rule calls for allowing attorneys, licensed in at least one jurisdiction and in good standing, to practice law for no more than 365 days, while satisfying the jurisdictional admission requirements.[5]

23. The revised version of the rule is meant to alleviate the financial burdens of a migrating attorney who, in many cases, cannot perform duties above that of a legal clerk or secretary. John C. Martin of the ABA noted, "[u]nder the old rule, a lawyer moving to a different jurisdiction would potentially have to suspend his or

---

[4] ABA Commission on Ethics 20/20 Initial Draft Proposal and Comments – Admission by Motion (September 7, 2011), http://www.americanbar.org/content/dam/aba/migrated/2011_build/ethics_2020/comments_on_aom_issues_paper_pdf.authcheckdam.pdf

[5] Jesyca Westbrook, *ABA Proposes Rule Changes to Aid Multijurisdictional Practice*, Litigation News (Nov. 21, 2011), http://apps.americanbar.org/litigation/litigationnews/top_stories/112111-aba-model-rule-5-5-jurisdictions.html .

her legal practice entirely while awaiting approval of their request for admission."[6] Brian F. Toohey of the ABA echoed the same sentiment noting that the revised rule would allow "lawyers to continue to act as lawyers" while getting through the admissions process in a new jurisdiction.[7]

24. The reason for this temporary practice rule is to allow the migrating attorney the ability to earn a living in the legal field while waiting for the often time-consuming process of admission into the new jurisdiction.[8] Faced with increasing student loans and an inability to pay back these loans, career choices especially for women and minority lawyers are handicapped. Without such a rule, attorneys are forced to take remedial legal jobs, not involving legal judgment, or even worse, leave the legal field to find work in another market. The result is an increased cost for legal services, and an increasing number of pro per filings. The ABA's temporary practice recommendation is another sound public policy reason warranting judgment for Plaintiffs.

**C. The Obama Administration and the Department of Defense Support the American Bar Association's Recommendation for Streamlined Admission Into the Practice of Law for Experienced Attorneys Married to Military Personnel**

25. Recently, the ABA proposed a new admissions rule allowing military spouses, licensed and in good standing in at least one jurisdiction, to be admitted into a new jurisdiction without being forced to take and pass the subject state's bar examination. Further, the proposal calls for the reduction of licensing fees for military spouses, all in an effort to reduce the burdens of travel and facilitate the travel demands placed on the military family.[9]

---

[6] *Id.* John C. Martin is the co-chair of the ABA Section of Litigation's Ethics and professionalism Committee in Chicago.

[7] *Id.* Brian F. Toohey is co-chair for the Section of Litigations Multijurisdictional Practice Subcommittee of the Ethics and Professionalism Committee, Cleveland.

[8] *Id.*

[9] Martha Neil, *Michelle Obama, Defense Officials Join ABA in Urging More 'License Portability' for Military Spouses,* ABA Journal (Feb. 17, 2012),

26.   Showing   strong   support   of   the   recommendation,   the   Obama Administration, through the Department of Defense, prepared a report outlining ways in which states could improve their multijurisdictional admission rules.  The report, titled "Supporting Our Military Families: Best Practices for Streamlining Occupational Licensing Across State Lines," was presented by the First Lady MICHELLE OBAMA and JILL BIDEN, wife of Vice President JOE BIDEN, at a Pentagon event this past February.[10]

27. The report notes that military families face unique circumstances of having to move across jurisdictional lines far more often than other American families, making it difficult for an attorney spouse to gain admission to practice and earn a living before it is time to relocate to anther jurisdiction.[11]  Brad Cooper, head of the White House's Military Support Office noted, "Military families are asked to move again and again…oftentimes, that means they are coming into a new   state   which   often   requires   different   licensing   and   credentialing standards…The fact of the matter is that this transition is a huge headache and a barrier to employment for spouses."[12]   The ABA's proposal has also gained tremendous support from The Military Spouse J.D. Network, an organization comprised of military spouses with law degrees.[13]

---

http://www.abajournal.com/news/article/michelle_obama_defense_officials_join_a ba_in_urging_more_license_portabilit/?utm_source=maestro&utm_medium=email &utm_campaign=daily_email.

[10] Amy Bushatz, *WH Pushes States to Ease Spouse License Rules,* Military.com (Feb.15, 2012), http://m.military.com/news/articlerss/wh-pushes-states-to-ease-spouse-license-rules.xml/1

[11] *Id.*

[12] *Id.*

[13] Hon. Erin Wirth and Mary Reding, Esq.,Co-Founders of the Military Spouse JD Network, *Letter Supporting ABA's Military Spouse Admissions Proposal* (Nov. 30, 2011).

28. In reality, the move to a new state or jurisdiction is an arduous and troublesome task for any family. New schools, new friends, and a new environment are just a few of the many changes. For those who are attorneys, the move becomes even more difficult due to the difficulty of satisfying new *entry-level* licensing standards. Admittedly, the process is much more frequent for military families; however, this barrier is a burden not only on military families, but on all American citizens that travel interstate to a new jurisdiction. Arizona is well known for its military bases. The Department of Defense and the Obama administration recommendation for stream-lined admission on motion is another sound public policy reason warranting judgment for Plaintiffs.

**D. General and Associate General Counsel of America's Largest Law Firms Support Admission on Motion in All Jurisdictions**

29. A Who's Who of American law firms recently submitted to the ABA Commission on Ethics 20/20 support of the adoption of admission on motion rules in all jurisdictions. The submission was entitled "Submission of Law Firm General Counsel."[14] The group described themselves as a "group of general or associate general counsel (or other partners responsible for risk management) of U.S.-based law firms with offices in several jurisdictions both within and outside the United States." Included in this illustrious group were the following mega-firms and attorneys:

Alston & Bird LLP
Steven M. Collins
General Counsel

Baker Botts L.L.P.
Charles Szalkowski
Partner & General Counsel

---

http://www.americanbar.org/content/dam/aba/administrative/ethics_2020/2011113 0_admission_on_motion_comments_all.authcheckdam.pdf
[14]

http://www.americanbar.org/content/dam/aba/administrative/ethics_2020/2011113 0_admission_on_motion_comments_all.authcheckdam.pdf.

Baker & McKenzie
Peter J. Engstrom
General Counsel

Bingham McCutchen LLP
Michael Plishner
General Counsel

Bryan Cave LLP
Michael McKinnis
General Counsel

Cadwalader, Wickersham & Taft LLP
Grant B. Hering
General Counsel

Chadbourne & Parke LLP
William K. Perry
General Counsel

Cooley LLP
Christopher A. Westover
General Counsel

Dechert LLP
Arthur Newbold
General Counsel

Duane Morris LLP
Michael J. Silverman
General Counsel

Dykema Gossett PLLC
Lori McAllister
General Counsel

Faegre & Benson LLP
William R. Busch
General Counsel


Fish & Richardson
Roger Feldman
General Counsel
and
Susan Ryan Tighe
Ethics and Risk Management Counsel


Hinshaw & Culbertson LLP
Thomas L. Browne
General Counsel
Anthony E. Davis
Partner


Kirkland & Ellis LLP
James H. Schink
General Counsel


Latham & Watkins
Everett C. Johnson, Jr.
General Counsel
Matthew Roskoski
Assistant General Counsel


Lowenstein Sandler PC
Allen B. Levithan
General Counsel


Manatt, Phelps & Phillips, LLP
Monte M. Lemann II
General Counsel


Morrison & Foerster LLP

Douglas L. Hendricks
Risk Management Chair

Nixon Peabody LLP
Robert C. Bernius
General Counsel

O'Melveny & Myers LLP
Martin S. Checov
General Counsel

Paul, Hastings, Janofsky & Walker LLP
Geoffrey L. Thomas
General Counsel

Sheppard, Mullin, Richter & Hampton, LLP
D. Ronald Ryland
General Counsel

Thomson & Knight LLP
Nancy W. Hargrove
Associate General Counsel

Wilson Sonsini Goodrich & Rosati
Donald E. Bradley

30.     National   and   International   law   firms   personally   deal   with multijurisdictional admission rules, due to the evolving nature of communication and technology and their interstate nature.   It is fair to coin them as the "barometer" for jurisdictional issues and practicality in the legal field.  The fact that the largest and most influential law firms in America strongly support uniform admission on motion is clear evidence of a systemic national injury caused by parochial State bar admission rules.

***

***

**E. The Association of Professional Responsibility Lawyers and the Association of Corporate Counsel Support Admission on Motion in All Jurisdictions**

31. The Association of Professional Responsibility Lawyers showed their support in a response to the ABA Ethics Commission 20/20 Issues Paper on the current admission on motion rules.[15]   The APRL is a national organization of professional responsibility lawyers with attorney members admitted to practice law in all American jurisdictions.  The APRL conducts studies relating to the various legal ethical issues, one of which is the licensing and multijurisdictional practice of lawyers.[16]

32. The APRL noted that in our modern technological and global community age the legal boundaries preventing multijurisdictional practice are becoming less and less practical.  "The growing ease of interstate and international travel and communication and the resulting globalization of economic activity have made it ever more necessary for lawyers to expand the geographic scope of their practices. Both law firms and their clients increasingly conduct business on a nationwide and even worldwide scale."[17]

33. The Association of Corporate Counsel, the nation's largest corporate counsel organization, has also promoted a national platform endorsing both temporary and permanent multijurisdictional practice and admission on motion rules to increase lawyer mobility.[18]  The platform is simple:

> A lawyer – however defined – who is licensed and in good standing in his or her home jurisdiction, may practice temporarily in other jurisdictions by simply agreeing to submit to regulation by appropriate

---

[15] http://www.americanbar.org/content/dam/aba/administrative/ethics_2020/201111 30_admission_on_motion_comments_all.authcheckdam.pdf

[16] *Id.*

[17] *Id.*

[18] *The Guiding Principle-Freedom of Movement for all Lawyers Across State Boundaries* (July, 2010) http://www.acc.com/advocacy/keyissues/mjp/upload/ACC-Comments-ABA-Ethics-20-20-WGIFL-7-10.pdf

authorities and be subject to applicable rules, without requiring local admission... Similarly, an equally simple and uniform rule is required to enable lawyers to relocate on a permanent basis and waive into a US jurisdiction based on their existing credentials (and not a full bar examination process)."[19]

34. In addition to promoting a national multijurisdictional practice platform, the ACC also warns of the "global community" disadvantage created by America's legal jurisdictional rules.  "Unless and until a way can be found to attain uniformity in practice requirements and admission, the United States and our legal profession will be at a growing disadvantage in the global marketplace, and we will not be serving the needs of clients who increasingly operate in a cross-border or global fashion."[20]

35. At a recent roundtable discussion, Arizona Supreme Court Chief Justice REBECCA WHITE BERCH noted that "[m]any of the things that drive your businesses are the same things that drive our courts: technology, time, and money."[21]

36.  Science and technology, such as the internet, are clearly not limited to any jurisdictional boundaries; in fact, they are the driving force in the connection and creation of the global community.  A full admission on motion rule would not only parallel the openness and interconnectedness of technology and the global community, it would also provide tremendous revenues for the admitting states.  The Arizona Court charges applicants a non-refundable $1,800 fee to apply for admission on motion.  Two years ago, Chief Justice REBECCA WHITE BERCH noted that Arizona's admission on motion process had raised nearly $600,000.[22]

[19] *Id.*
[20] *Id.*
[21] *Recognizing America's Judiciary: A Dialogue with Chief Justices on Key Issues for Leaders of Business & the* Community. (July 27, 2011).
[22] *Legal Horizon*, AZ Attorney (Sept. 2010).
(http://azatty.wordpress.com/2010/09/27/legal-horizon/)

She further noted that Arizona's course on Arizona law that attorneys seeking admission on motion are compelled to attend was so good that all Arizona lawyers would benefit by taking this course.   Extending admission on motion to attorneys from non-reciprocity states, when 39 States have already adopted admission on motion, is a win-win proposition for the public, the legal profession, and the Courts.

37. Plaintiffs challenge the constitutionality of the provisions in Rule 34(f)1.A. & 1. C.

- Rule 34(f)1.A. provides, "have been admitted by bar examination to practice law in another jurisdiction allowing for admission of licensed Arizona lawyers on a basis equivalent to this rule;"
- Rule 34(f)1.C. provides, "have been primarily engaged in the active practice of law in one or more states, territories, or the District of Columbia for five of the seven years immediately preceding the date upon which the application is filed;"

## II. ARIZONA'S IMPLEMENTATION OF THE UNIFORM BAR EXAMINATION DISCRIMINATES AGAINST EXPERIENCED ATTORNEYS

38. The Uniform Bar Examination (UBE) was created and pioneered by the National Conference of Bar Examiners (NCBE).[23]   The NCBE developed the UBE in an effort to create uniformity between the various legal bar examinations administered by the states.[24]   The Hon. REBECCA WHITE BERCH is the chair of the Education Committee of NCBE, and one of the UBE's strongest advocates.   In arguing for uniform bar admission rules, "Chief Justice Rebecca White Berch noted that law schools are teaching a national curriculum. The Uniform Bar

---

[23] http://www.ncbex.org/assets/media_files/UBE/ABA-Uniform-Bar-Exam-2010-Council-9-14-v2-3.pdf

[24] http://www.abajournal.com/magazine/article/one_for_all_uniform_bar_exam_picking_up_steam/

Examination (UBE) recognizes that trend. In addition, lawyers are relocating more frequently."[25]  The UBE is intended to eliminate the vast discrepancies between the wide assortments of bar exams in the United States and facilitate lawyer mobility across jurisdictional lines.    So far, 9 states have adopted the UBE, including Arizona.  Under Arizona's UBE admission, an attorney taking the UBE in another jurisdiction may transfer his score to Arizona and be admitted to practice law, pending a finding of good moral character and the completion of a class on Arizona Law.

39. The Arizona Supreme Court's disparate licensing protocol severely handicaps experienced attorneys as the purpose of a bar exam is to measure a minimum level of competence in order to protect the public.[26]  An experienced attorney has already proven his or her competence, and that he or she is not a threat to the public by their prior licensing and track record. In other words, requiring experienced attorneys to re-invent the wheel in order to get an Arizona law license rejects the best evidence of competence, and instead it relies on a testing protocol that is known to lack *content* validity, *criterion* or *predictive* validity.   It further flies in the teeth of the ABA's repeated recommendations that all American attorneys with three years of experience should be provided admission on motion privileges.  It is implausible and irrational to presume an experienced attorney in good standing is *not* minimally competent.  This presumption further contravenes the Supreme Court's holdings in *Friedman* that bar admission on motion is constitutionally protected.

40. While the UBE is an excellent measure of a recent law school graduate's ability and competence to practice law, the best evidence of an *experienced*

---

[25] Arizona State Bar Board of Governors: September Meeting Review (Sept. 2010).

[26] See Rebecca White Berch, "The Case for the Uniform Bar Exam, "*The Bar Examiner*, Feb 2009 p. 12 ("A bar exam is a test of minimum competence to practice law.")

attorney's ability and competence is his or her experience. *Experienced* attorneys are particularly injured by Arizona's disparate treatment and preference for youth because it is well known by testing experts, and the learned members of the UBE that pen and paper bar exams are superficial and lack *content validity*. [27] Bedford T. Bentley, a member of the UBE, has concluded that bar exams do not test nine out of ten fundamental lawyer skills.

41. It is also well known in testing circles that bar exams do not have *criterion* or *predictive validity*. In essence, criterion or predictive validity refers to the testing instrument's ability to measure the test taker's true ability, in this case to practice law. Practice is the best measure/evidence of one's ability, as the proof is in the pudding.

42. A uniform bar exam is a good way to test a recent graduate's sufficient knowledge of the law in order to protect the public, but it is not a reliable measure when applied to an already experienced attorney because it is well known in testing circles that it is virtually impossible to get readers to agree on subjective scores. [28] Dr. Susan Case, the Director of Testing for the National Conference of Bar Examiners (NCBE), avows that non-multiple choice format tests, such as essay and performance tests "because of their limitations, such as low reliability, lack of anonymity, and lack of standardization, should not be used in isolation." *See* Susan

---

[27] *See* Bedford T. Bentley, Jr. "Rethinking the Purpose of the Bar Examination," *The Bar Examiner*, February 2009 p. 17("The bar examination cannot and does not test many of the skills identified by the MacCrate Report as fundamental to the successful practice of law.") Nine out of the ten skills identified as fundamental are not tested on the bar exam.

[28] Dr. Geoff Norman is a nationally recognized testing expert with over 30 years of experience. Dr. Norman is one of the experts writing a chapter in the Cambridge Handbook of Expertise and Expert Performance, Dr. Norman writes: "Study after study has shown that it is almost impossible to get judges to agree on scores for essay answers." *See* "So What Does Guessing the Right Answer Out of Four Have to Do With Competence Anyway?" *The Bar Examiner*, p. 21 (Nov 2008).

M. Case, "Licensure In My Ideal World," *The Bar Examiner*, p. 27 November 2005.

43. Chief Justice REBECCA WHITE BERCH noted that admission on motion is "a tremendous advantage. Frankly, at my age the thought of taking a bar in another state, gives me the Kathleen Sullivan adverse reaction."[29] It is well documented that Kathleen Sullivan, former Dean of and current professor at Stanford Law School and named partner of the international mega-law firm of Quinn Emanuel Urquhart & Sullivan, failed the California bar exam as an experienced attorney. It would be wholly inaccurate and unfair to classify her as an incompetent attorney based solely on her allegedly failing the California bar exam, a test that is one hundred percent subjective, when the NCBE and leading testing experts declare that subjective tests are not a valid measurement, and it is almost impossible to get graders to agree on subjective scores.

## III. THE HYPOTHESIS THAT REQURING EXPERIENCED ATTORNEYS TO TAKE ANOTHER STATES'S BAR EXAM PROVIDES PUBLIC PROTECTION IS FALSE

44. A wise judge proportions belief to the evidence. A delusion is a fixed belief that is not changed even in the face of overwhelming contradictory evidence. The tendency to form delusions is considered a symptom of mental illness. As Carl Sagan said, "For me it is far better to grasp that the universe as it really is rather than to persist in delusion however satisfying and reassuring." The latest and overwhelming best evidence available proves that the hypothesis that a State's requirement for complete re-testing of experienced attorneys is necessary to provide public protection is false.[30]

---

[29] *Recognizing America's Judiciary: A Dialogue with Chief Justices on Key Issues for Leaders of Business & the* Community. (July 27, 2011).

[30] *The Standards for Educational and Psychological Testing* (1999) (Published by the American Educational Research Association, American Psychological Association, and the National Council on Measurement in Education) (Standards) were developed "to provide criteria for the evaluation of tests, testing practices,

45. First, the purpose of a licensing exam is to ascertain a *minimum level* of competence in order to provide public protection.   The United States Supreme Court has squarely held that it will not presume an experienced out-of-state attorney is not competent or will injure the public.  There is no admissible evidence that disproves this Supreme Court presumption of professional competence.

46. Second, the ABA has repeatedly and carefully studied this precise issue, concluding reciprocal admission on motion should be adopted by all states without restrictions.   It concluded the failure to have admission on motion injures the public.   The Arizona Supreme Court, as the user of its licensing test,   has an affirmative duty to consider the state of the art in licensing experienced attorneys, and to consider less restrictive alternatives. [31] The State of Arizona does not have any empirical evidence disproving the ABA's carefully studied conclusions, or empirical evidence proving the validity and reliability of its licensing test for experienced attorneys licensed in non-reciprocity states.

47. Third, according to the ABA's "MacCrate Commission," nine out of ten fundamental lawyering skills cannot be tested on a pen and paper bar exam.  There are two types of memory, declarative and non-declarative.  Declarative is about recollection of persons, places, and events. Non-declarative is skill memory like riding a bike or managing a case or a law practice.  Some fundamental legal

---

and the effects of test use." *Id.* at p. 2. "When tests are at issue in legal proceedings and other venues requiring expert witness testimony it is essential that professional judgment be based on the accepted corpus of knowledge in determining the relevance of particular standards in a given situation.  The intent of the Standards is to offer guidance for such judgments." *Id.* at 4.

[31] The *Standards* also emphasize that evaluating acceptability (of a test) involves (a) professional judgment that is based on a knowledge of behavioral  science, psychometrics, and the community standards in the professional field to which the tests apply; (b) the degree to which the intent of the standard has been satisfied by the test developer and user; (c) the alternatives that are readily available; and (d) research and experimental evidence regarding feasibility of meeting the standard." *Id.* at 4.

specialties such as taxation are not tested on any State's bar exam.   Some fundamental legal skills such as oral argument and trial practice cannot be tested on a bar exam.[32]

48. Fourth, bar exams, per se, have never been proven to have *criterion* or *predictive* validity.  The State of Wisconsin does not even require its in-state law school graduates to take its bar exam.   No state requires its already licensed attorneys to again take another bar exam to prove continuing competence.  There is no evidence that Arizona licensed attorneys will injure the public if they are admitted in another state.  Thus, it is implausible to conclude another State's licensed attorneys may injure the public if they are admitted on motion in Arizona.

49. Fifth, the cognitive science of *expertise* and *expert performance* proves excellence is the product of experience, and that it cannot be predicted.  *See* K. Anders Ericsson, Ed., *The Cambridge Handbook of Expertise and Expert Performance* (Cambridge University Press 2006).  K. Anders Ericsson is the leading pioneer in this cross-disciplinary field.   Cognitive scientists have concluded that it takes 10,000 hours to develop true expertise in any field, taking the brain this long to assimilate all that it needs to know to achieve true mastery.  Experienced experts surpass novices, those new to a profession, in seven major ways: (a) generating the best solution; (b) pattern recognition; (c) qualitative analysis; (d) self-monitoring skills in terms of their ability and knowing what they do not know; (e) choosing appropriate strategies; (f) seeing and exploiting opportunities; and (g) cognitive effort, meaning they work faster, with less effort,

---

[32] "(N)o one has yet devised an examination which will test one's ability to be a courtroom advocate." Report and Tentative Recommendations of the Committee to Practice in the Federal Courts in the Judicial Conference of the United States. 79 F.R.D. 187, 196. "Lawyers with previous trial experience are much more likely to turn in very good performances, and it permits the inference that experience improves the quality of trial performance." Id. at 196. There is a correlation between the quality of trial performance and the prior experience of the attorneys evaluated. 83 F.R.D. at 222.

and greater control. *Id.* at 27. True expertise is based on pattern recognition skills that are intuitive and developed with experience, much like an athlete's skill increases from beginner, to novice, to professional.

50. Sixth, cognitive scientists have further concluded major scientific and societal advancements are often the product of cross-pollination between fields. Science has proven diversity increases fitness (more minds at work), innovation (creativity), levels of trust, and robustness in organizations; diversity reduces error because all of us together are smarter than any of us individually; it prevents dominant coalitions from taking over because everyone has the opportunity to participate.[33]

51. Seventh, Arizona provides full admission on motion to favored states. The tit-for-tat criterion for disfavored state status has nothing to do with empirical evidence linked to competence. It is a standard that is based merely on state relations that has nothing to do with protecting the public and everything to do with retaliation under color of state law and providing local lawyer monopoly protection.

52. Eighth, even among the disfavored states, the disfavored attorneys are provided admission to practice law in Arizona as Registered Legal Service Attorneys,[34] Registered In-house Counsel,[35] and through *Pro Hac Vice* admission,[36] and there is no minimum five year experience requirement. It cannot be plausibly presumed that attorneys from non-reciprocity states can be safely trusted to represent the indigent, corporations, and *pro hac vice*, but not others. The tit-for-tat exclusion is retaliation as is the five years of practice requirement. This is viewpoint and content discrimination.

---

[33] Scot E. Page, Understanding Complexity, Lecture Four "Why Different is More," Lecture Six "Emergence I – Why More is Different" (The Teaching Company 2009)
[34] Arizona Supreme Court Rule 38(f).
[35] Arizona Supreme Court Rule 38(h).
[36] Arizona Supreme Court Rule 38(a).

53.  Ninth, research shows that people who have earned a law degree have an average IQ of 125, comparable to the average IQ of doctors, when the average IQ is measured at 100.  Lawyers, in general, are among our best and brightest. They do not, when crossing a state line, suddenly become incompetent. The dogma used to be that people lose 10,000 neurons a day once past their twenties. There has been, however, a major revolution in neurobiology that proves the adult brain, even the aged brain, can generate brand-new neurons. In fact, your brain can get better over time. Synapses, as well as the connections between neurons become more powerful. They can become more excitable. Neurons can grow new connections, new synapses, and new processes.[37] Place a 90-year-old in an enriched environment and that person will show signs of neurons growing new processes. Brain maturation is a lifelong process.[38]

54. Finally, the complete re-testing licensing requirement for disfavored state attorneys is implausible because it ignores the base rate statistics for attorney misconduct.  The empirical evidence proves there are very few bad apples in the national supermarket.  Less than 0.4% of attorneys admitted to practice law in Arizona were the subject of disciplinary actions.[39]  In many of these cases,[40] the

---

[37] Robert Sapolsky, Being Human: Life Lessons from the Frontiers of Science, p. 210 (Teaching Company 2012)  Dr. Sapolsky is a Professor of Neurology and Neurosurgery at Stanford University.

[38] Id. at 212

[39] Arizona's Finest Lawyers Online (Citing The Arizona Bar Association), (www.azfinestlawyers.org/faqs/88-how-many-lawyers-are-there.html )(2012).As of October 2011, Arizona had approximately 21,728 attorneys admitted to the Arizona State Bar. See also Arizona Courts, Attorney Discipline Online (www.azcourts.gov/attorneydiscipline/disciplinarycasesmatrix/2009disciplinarycasesmatrix.aspx) noting that in 2009 approximately seventy-nine (79) attorneys admitted to practice law in Arizona were disciplined for attorney misconduct for violating the professional rules of conduct.

[40] Arizona Courts, Attorney Discipline Online (www.azcourts.gov/attorneydiscipline/disciplinarycasesmatrix/2009disciplinarycas

punishment was a reprimand.[41] There is thus no evidence proving that Arizona's attorneys are a threat to the public in non-reciprocity states or that another State's attorneys are a threat to the public in Arizona.

55. These cumulative facts prove the hypothesis that tit-for-tat admission requirements are necessary to protect the public is implausible and false. There is no plausible non-discriminatory motive other than retaliation.

**FIRST CAUSE OF ACTION**
**RULE 34(f) 1.A & 1.C VIOLATES THE FIRST AMENDMENT**

The preceding allegations are incorporated by reference.

**A.    Rule 34(f) 1.A & 1.C Constitutes Unlawful *Content* and *Viewpoint Discrimination* On Its Face and As Applied**

56. The Ninth Circuit has recognized that the "basic analysis under the First Amendment . . . has not turned on the motives of the legislators, but on the effect of the regulation." *City of Las Vegas v. Foley*, 747 F.2d 1294, 1998 (9th Cir. 1984). The true motive behind the creation and adoption for Rule 34(f) does not change

---

esmatrix.aspx) noting that in 2009 punishments ranged from one (1) month suspensions all the way up to disbarment.   Suspensions, for various amounts of time ranging from one month to two years, were the most common form of discipline, with thirty-three (33) attorneys receiving some form of suspension from the practice of law.  Attorney Censure was the second most common form of discipline, with twenty-eight (28) attorneys receiving this form of punishment. The harshest of the punishments, Disbarment, was handed out to thirteen (13) Arizona attorneys.  Informal Reprimands and Probation were the least common form of punishment, applying to about six (6) Arizona attorneys.
[41] *Arizona Courts*, Attorney Discipline Online (www.azcourts.gov/attorneydiscipline/disciplinarycasesmatrix/2010disciplinarycasesmatrix.aspx).  In 2010, the number of attorney discipline cases dropped dramatically, with only thirty-six (36) total attorneys subject to disciplinary actions.  In 2010, Attorney Censure was the most prevalent form of attorney discipline, with seventeen (17) attorneys being subject to Censure Orders. Fourteen (14) attorneys received some form of Suspension from the practice of law, with suspensions ranging from two (2) months up to four (4) years.  Only three attorneys were subject to Informal Reprimands, and only one attorney was disbarred.

27

the First Amendment analysis; it is its effect that we must look to in determining its constitutionality.

57. "A regulation that denies one group of citizens the right to address a selected audience on controversial issues of public policy is plainly viewpoint discrimination." *Consolidated Edison Co. v. Public Serv. Comn'n*, 447 U.S. 530, 546 (1980). "Viewpoint discrimination is thus an egregious form of content discrimination." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 US 819, 829 (1995); *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U. S. 37, 46 (1983). "To permit one side of a debatable public question to have a monopoly in expressing its views is the antithesis of constitutional guarantees." *Madison Joint School Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175-176 (1976). "A law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship. This danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official." *Lakewood v. Plain Dealer Publishing Co*, 486 U.S. 750, 763 (1988).

58. Rule 34(f) allows attorneys from reciprocity states to obtain a license and petition the courts and speak; whereas, it categorically prohibits attorneys from non-reciprocity states the same precious freedoms. Rule 34(f) is not a time, place, and manner restriction because it is not viewpoint and content neutral.[42] Rule 34(f) permits licensing and debate by one group of otherwise qualified experienced attorneys while denying another group of otherwise qualified attorneys the same precious freedoms. Therefore, Rule 34(f) is content and viewpoint discrimination.

---

[42] To be upheld as a constitutional time, place or manner restriction a permit requirement applying to First Amendment activity must "(1) be content-neutral, (2) be narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels of expression." *Ward v. Rock Against Racism*, 491 U.S. 781, 789-90 (1989). The tit-for-tat restrictions are not time, place or manner restrictions because they are not content neutral.

59. Moreover, distinctions in the right to exercise First Amendment freedoms are subject to strict scrutiny. In *Citizens United v. Federal Election Commission*, 130 S.Ct. 876, (2010), the Court held:

> Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each. *Id.* at 890
>
> …
>
> Any effort by the Judiciary to decide which means of communications are to be preferred for the particular type of message and speaker would raise questions as to the courts' own lawful authority. Substantial questions would arise if courts were to begin saying what means of speech should be preferred or disfavored. *Id.* at 890

60. The basic premise underlying the Court's ruling in *Citizens United* is the proposition that the First Amendment bars regulatory distinctions based on a speaker's identity, including its "identity" as a corporation. *Id.* at 930 (Justice Stevens in dissent). Courts, too, are bound by the First Amendment. *Id.* at 891. Rule 34(f), as adopted by the Arizona Supreme Court, makes differential licensing distinctions based on a speaker's identity as a member of a favored or disfavored state bar. Moreover, the hypothesis that a layman is presumptively competent to represent themselves, unless mentally ill, while on the other hand, Plaintiff experienced lawyers from non-reciprocity states are presumptively incompetent makes no sense.

61. Rule 34(f) permits one State's experienced attorneys a license by admission on motion, while prohibiting another State's experienced attorneys a

license by admission on motion, which is content and viewpoint discrimination; therefore, Rule 34(f) is unconstitutional.

## B. Rule 34(f) 1.A & 1.C is Facially Invalid as it Is Substantially *Overbroad* On Its Face and As Applied

62. A state law may be deemed constitutionally invalid if it is substantially overbroad. *Broadrick v. Oklahoma*, 413 U.S. 601 (1973).   A government regulation is substantially overbroad if it suppresses substantially more speech than necessary to achieve its goal.   *Id.* at 612.   The tit-for-tat condition precedent in Rule 34(f) chills more speech than necessary by categorically excluding lawyers from non-reciprocity States, as does the five year requirement.   It is not narrowly tailored as there is no evidence that experienced attorneys licensed in non-reciprocity jurisdiction are a threat to Arizona citizens.

63. The purpose of tit-for-tat restrictions is clearly punitive because experienced attorneys in good standing have already proven they are not a threat to the public; and it is well known that bar exams lack *content* validity and they lack *criterion* or *predictive* validity; and it is well known that it is almost impossible to get graders to agree on subjective tests. [43]

64. Rule 34(f) is a wall that categorically disqualifies all experienced attorneys from some States, no matter their level of experience or the subject of their expertise; while it categorically qualifies all experienced lawyers from some states.  This blanket disqualification from admission on motion of all experienced attorneys from all non-reciprocity jurisdictions is patently overbroad, not narrowly tailored, and therefore unconstitutional.

\*\*\*

\*\*\*

\*\*\*

---

[43] *See* footnotes 26-28, and Dr. Susan Case's citations noted above.

## C. Rule 34(f) 1.A & 1.C is a *Prior Restraint* that Violates the Right to Petition and Engage in Speech Concerning Matters of Public Concern In a Limited Public Forum On Its Face and As Applied

65. The operations of the courts and the judicial conduct of judges are matters of utmost public concern. *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 839 (1978). Litigation is a form of political expression. *In re Primus*, 436 U.S. 412, 428. The First Amendment protects "litigation [as] a means for achieving the lawful objectives of equality by all government." *NAACP v. Button*, 371 U.S. 415, 429 (1963). It is thus a form of political expression. *Ibid.* "It is no answer to the constitutional claims … that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression." *Id.* at 438-39. Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid. *Procunier v. Martinez*, 416 U.S. 396, 419 (1974).

66. *Legal Services Corporation v. Velazquez,* 531 U.S. 533 (2001), held that an attorney has a First Amendment right to advocate on behalf of his client in court. In *Legal Services*, the Court upheld a First Amendment challenge by indigent clients to a congressional statute allocating federal funds to local organizations for the purpose of providing legal representation to indigent people in non-criminal proceedings, but with a condition prohibiting "legal representation ... involv[ing] an effort to amend or otherwise challenge existing welfare law." *Id.* at 536-37. The Court interpreted this condition as "prevent[ing] an attorney from arguing to a court" the constitutional validity of the law. *Id.* at 537. The Court characterized the congressional funding scheme as a limited public forum, and thus found its viewpoint-discriminatory condition constitutionally impermissible. As in *Legal Service*, where a prior restraint excluded clients' otherwise-reasonable arguments from the courtroom before the clients had a chance to assert them, Plaintiffs are categorically excluded from Arizona Courtrooms before they have a chance to appear. *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, (1975) ("Any

system of prior restraint . . . comes to this Court bearing a heavy presumption against its constitutional validity."); *Legal Services*, 531 U.S. at 544-45, 547-48. Here, as in *Legal Services*, the State restrictions imposed by Rule 34(f) constitute a prior restraint on the right to petition.

67. Rule 34(f)'s categorical distinction and differential treatment of attorneys from reciprocity jurisdictions and those who are not restrains Plaintiffs from exercising their right to engage in speech in a public forum concerning matters of public concern. Therefore, Rule 34(f) is unconstitutional and invalid as a prior restraint.

## D. Rule 34(f) 1.A & 1.C Constitutes *Compelled Association* that Abridges the First Amendment Right of Freedom of Association On Its Face and As Applied

68. "The Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984). The Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State. *Ibid.* "Moreover, the constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others. Protecting these relationships from unwarranted state interference therefore safeguards the ability to independently define one's identity that is central to any concept of liberty." *Ibid.* An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed. *Id.* at 622. Government actions that may unconstitutionally infringe upon this freedom can take a number of forms. Among other things, government may seek to impose

penalties or withhold benefits from individuals because of their membership in a disfavored group. *Ibid.*

69. The right to associate also includes a right *not* to associate. *Roberts v. United States Jaycees, supra,* 468 U.S. at 622. Here, as in *Roberts,* Rule 34(f) imposes penalties and withholds privileges based solely on plaintiffs' licensing in disfavored non-reciprocity jurisdictions. As such, the Arizona Supreme Court bears the burden of proving the validity of the admission on motion rule, which it cannot meet because the U.S. Supreme Court has already held that admission on motion is a constitutionally protected Privilege and Immunity. *Supreme Court of Virginia v. Friedman, supra,* 487 U.S. 59 (1998). Plaintiffs are denied the privileges of admission on motion solely because of their prior licensing and association with the disfavored non-reciprocity states. Therefore, under the above law, Rule 34(f) is invalid as it violates Plaintiffs' right to associate.

### E. Rule 34(f) 1.A & 1.C  Violates the First Amendment *Right To Petition* On Its Face and As Applied

70. In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49 (1993), the Court in construing the right to petition held that litigation could only be enjoined when it is a sham. To be a sham, first, it must be objectively baseless in the sense that no reasonable litigant could expect success on the merits; second, the litigant's subjective motive must conceal an attempt to interfere with the business relationship of a competitor …through the use of government process — as opposed to the outcome of that process — as an anti-competitive weapon. *Id.* at 60-61.

71. Rule 34(f) violates the Petition Clause because it arbitrarily and irrationally presumes that the Plaintiffs, and all experienced lawyers from non-reciprocity states, will file *sham* petitions for an anti-competitive purpose, and only file *sham* petitions for an anti-competitive purpose unless they take another entry level bar exam. There is no evidence that experienced attorneys in good standing

from non-reciprocity states will violate their professional responsibilities, and file sham petitions for an anti-competitive purpose.   Moreover, it is irrational to conclude experienced attorneys will violate their professional responsibilities and sacrifice their good standing in the states where they are licensed. On the other hand, requiring experienced attorneys to again re-invent the wheel and prove they have sufficient entry level competence in order to protect the public is anti-competitive and decreases competition.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE PRIVILEGES AND IMMUNITIES CLAUSES

72. The preceding allegations are incorporated by reference.

73. Like the inseparable First Amendment rights to speech, petition, and association, Article IV Sec. 2 and the 14th Amendment Privileges and Immunities are intertwined and inseparable with the constitutional right to travel.   The High Court in *Supreme Court of New Hampshire v. Piper*, 470 U.S. 275 (1985) held:

> "The lawyer's role in the national economy is not the only reason that the opportunity to practice law should be considered a "fundamental right." We believe that the legal profession has a noncommercial role and duty that reinforce the view that the practice of law falls within the ambit of the Privileges and Immunities Clause.[fn11] Out-of-state lawyers may — and often do — represent persons who raise unpopular federal claims. In some cases, representation by nonresident counsel may be the only means available for the vindication of federal rights." *Id.* at 281-82.

74. As noted above, the U.S. Supreme Court has squarely held bar admission on motion is a constitutionally protected Privilege and Immunity. *See Supreme Court of Virginia v. Friedman, supra*, 487 U.S. 59 (1988).   The Clause is implicated whenever a state discriminates against either residents or citizens.   The norm under the Privileges and Immunities Clause is comity. *Id.* at 64.   In addition to admission on motion, the fundamental rights protected by the Privileges and Immunities Clause include "the right of a citizen of one state to pass through, or to reside in any other state, for purposes of trade, agriculture, **professional pursuits**,

or otherwise; to claim the benefit of the writ of habeas corpus; to **institute and maintain actions of any kind in the courts of the state**." *Supreme Court of New Hampshire v. Piper, supra,* 470 U.S. at 281 n. 10 (1985) (emphasis added). The Clause implicates federal rights.  The universal principle deduced from *Piper* and *Friedman* is that the Supreme Court has concluded that if all men and women are created equal, and members of the bar are men and women, then all attorneys are created equal.

75.  In *Piper* and its progeny, the defendant Supreme Courts proffered various reasons to justify their challenged bar admission policies.  It was argued out-of-state lawyers will be less familiar with local law; they will not be available for scheduled hearings and pro bono work; they will be less concerned with their professional responsibilities; it will be too difficult to supervise the ethics of a nation-wide bar; and that admission on motion is discretionary and does not come within the ambit of the Privileges and Immunities Clause.  The Supreme Court rejected every justification as insubstantial.  It further recognized that many of the States have put up barriers primarily to protect their own lawyers from professional competition, which is not a legitimate state interest.  "The Privileges and Immunities Clause was designed primarily to prevent such economic protectionism." *Supreme Court of New Hampshire v. Piper, supra,* 470 U.S. at 285 n. 18 (1985).

76.  In *Saenz v. Roe,* (1999) 526 U.S. 489, the High Court in a landmark decision squarely extended the reach of the Privileges and Immunities Clauses to in-state residents and citizens.  The State of California sought to limit the welfare benefits of new residents to the amount they would have received in their state of prior residence.  The High Court invalidated this statute.  It held the right to travel embraces three different components: the right to enter and leave another State; the right to be treated as a welcome visitor while temporarily present in another State; and, for those travelers who elect to become permanent residents, the right to be

treated like other citizens of that State. *Id.* at 498-500. It further held that newly arrived citizens had the same right to privileges and immunities enjoyed by other citizens of their new State — the third aspect of the right to travel. That right is protected by the new arrival's status as both a state citizen and a United States citizen, and it is plainly identified in the Fourteenth Amendment's Privileges and Immunities Clause. *Id.* at 502-04.

77. In *Saenz*, the State of California discriminated against the plaintiffs based on their prior state of residence. In this case, Arizona is doing the same thing. It is discriminating against Plaintiffs and out-of-state attorneys based exclusively on their home jurisdiction's reciprocity, or lack thereof (i.e. their prior citizenship or  residency). There is no substantial justification for Rule 34(f)'s denial of Plaintiffs' Privileges and Immunities, virtually identical to the lack of justification for differential treatment of welfare benefit recipients in *Saenz*. There is no substantial justification for the Plaintiffs to be categorically disqualified for admission on motion Privileges and Immunities when *Supreme Court of Virginia v. Friedman, supra*, 487 U.S. 59 (1989) holds State discrimination on motion against an otherwise qualified lawyer on the basis of citizenship or residence is unconstitutional.

78. Rule 34(f) 1.A & 1.C  has the purpose and effect of punishing non-resident citizens from non-reciprocity states and preventing them from "pursuing professional pursuits" and "instituting and maintaining actions" in the state courts, in violation of the Privileges and Immunities Clauses and the Right to Travel. *Supreme Court of New Hampshire v. Piper, supra*, 470 U.S. at 281 fn. 10 (1985).

## THIRD CAUSE OF ACTION

## VIOLATION OF THE COMMERCE CLAUSE

79. The preceding allegations are incorporated by reference.

80. In *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975) the Supreme Court found that legal services affected interstate commerce and the delivery of legal services were subject to regulation under the Commerce Clause.

81. Lawyer competition in the market place of ideas and commerce makes everyone better. See *FTC v. Superior Court Trial Lawyers Assn.* (1989) 493 U.S. 411,

> "(U)ltimately competition will produce not only lower prices, but also better goods and services.' *National Society of Professional Engineers v. United States*, 435 S. 679, 695 (1978). This judgment 'recognizes that all elements of a bargain — quality, service, safety, and durability — and not just the immediate cost, are favorably affected by the free opportunity to select among alternative offers.'" *Trial Lawyers, supra*, 493 U.S. at 423.
>
> . . .
>
> "That is equally so when the quality of legal advocacy rather, than engineering design, is at issue." *Id.* at 424.

82. In *Wiesmueller v. Kosbucki*, 571 F.3d 699 (7th Cir. 2009), the plaintiffs were graduates of accredited out-of-state law schools who wanted to practice law in Wisconsin. They sued members of the Wisconsin Board of Bar Examiners and the Supreme Court of Wisconsin, charging a violation of the Commerce Clause of Article I of the Constitution and seeking injunctive relief. They argued that the "diploma privilege" discriminated against graduates of out-of-state law schools wanting to practice law in Wisconsin. Under the challenged admission rule, graduates of accredited law schools in states other than Wisconsin wanting to practice law in Wisconsin could only be admitted to the Wisconsin Bar if they practiced law for a minimum of 5 year or successfully passed the Wisconsin Bar. The Seventh Circuit held that regulating the practice of law is a legitimate government function but it is not exempt from scrutiny under the commerce clause. *Id.* at 707. It reversed a dismissal order and remanded the case to the District Court to allow plaintiffs to prove their case.

83. In *Great Atlantic & Pacific Tea Co. v. Cottrell*, 424 US 366 (1976),

"The question presented ... is whether Mississippi, consistently with the Commerce Clause, Art. I, § 8, cl. 3, of the Constitution,[2] may, pursuant to this regulation, constitutionally deny a Louisiana milk producer the right to sell in Mississippi milk satisfying Mississippi's health standards solely because the State of Louisiana has not signed a reciprocity agreement with the State of Mississippi as required by the regulation." *Id.* at 368.   Likewise, Plaintiffs here are injured because Arizona does not have a reciprocity agreement with Montana and California.   Plaintiffs are injured because this failure to have a reciprocity agreement is based on hyper-technical tit-for-tat entry level bar admission standards that are then applied to experienced attorneys.  The U.S. Supreme Court held, "The reciprocity clause thus disserves rather than promotes any higher Mississippi milk quality standards. Therefore this is a case where the "burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits."   Likewise, Arizona's tit-for-tat retaliation and requirement of complete re-testing for experienced attorneys is clearly excessive in relation to the putative local benefit.  It discriminates against interstate commerce and does more harm than good.  Economic protection is not a legitimate state interest. *Piper*, 470 U.S. at 285 n. 18 (1985).

84. In determining if a state regulation violates the Commerce Clause, the Supreme Court set forth the following analysis:

> "[T]wo-tiered approach to analyzing state economic regulation under the Commerce Clause. When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, the courts have generally struck down the statute without further inquiry. When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Id.* at 703 (citing *Brown-Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 578-79 (1986)).

85. Rule 34(f) directly regulates interstate commerce per se unevenly since it allows and disqualifies certain experienced attorneys from admission on motion privileges and providing interstate legal services depending on prior state licensing. Further, it discriminates against interstate commerce since its effect is to favor reciprocity for some experienced out-of-state attorneys, but not other disfavored states. Rule 34(f) intentionally discriminates against interstate commerce since there is no justification for the distinction it creates. Its practical effect is to punish lawyers who were citizens or residents of non-reciprocity jurisdictions. As such, Rule 34(f) is per se invalid and in violation of the Commerce Clause.

86. Plaintiffs assert their right to declaratory relief under 28 U.S.C. §2201. There is an actual controversy of sufficient immediacy and concreteness relating to the legal rights of the Plaintiffs and their injury, and their relation to and the duties of the Defendants, to warrant relief under 28 U.S.C. § 2201.

87. Plaintiffs therefore request the following relief:

- An Order declaring Arizona Supreme Court Rule 34(f) 1.A & 1.C invalid and unconstitutional on its face and as applied.
- An Order declaring tit-for-tat bar admission rules unconstitutional.
- An Order declaring Arizona's failure to have admission on motion privileges for all experienced attorneys is unconstitutional.
- An Order admitting Plaintiffs to the bar of the Arizona Supreme Court.
- Costs.
- Attorney fees.
- Grant such other relief as may be just and proper.

Dated: August 8, 2012

/s/ *Grant Joseph Savoy*
Grant Joseph Savoy
Attorney for Plaintiffs
NAAMJP et. al.