1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   National Association for the Advancement          No. CV-12-01724-PHX-GMS
    of Multijurisdictional Practice; Allison
10  Girvin; Mark Anderson; and Mark Kolman,           **ORDER**

11                      Plaintiffs,

12  v.

13  Hon. Rebecca White Berch, Chief Justice;
    Hon. W. Scott Bales, Vice Chief Justice;
14  Hon. John Pelander and Hon. Robert M.
    Brutinel, Justices,
15
                       Defendants.
16

17

18          The Rules of Practice of the United States District Court for the District of

19  Arizona incorporate Arizona's "Rules of Professional Conduct," set forth in the Rules of

20  the Supreme Court of the State of Arizona, Ariz. R. Sup. Ct. 42, as the applicable ethical

21  rules of this Court. LRCiv. 83.2(e). Local Rule 83 of the Rules of Practice further

22  provides that this Court may disbar, discipline, or revoke the order of appointment for

23  any attorney admitted or otherwise authorized to practice in the District of Arizona.

24  LRCiv. 83.2(a).

25          During the course of presiding over *NAAMP v. Rebecca White Berch et al.*, the

26  Court has become aware of circumstances suggesting that Grant Joseph Savoy, counsel

27  for Plaintiffs, has engaged in conduct that violates the Rules of Professional Conduct.

28  Thus, pursuant to the authority provided in Local Rule 83.2, this Order sets forth the

reasons for believing that Mr. Savoy has violated these Rules. This Order then directs the Clerk of Court to set up a separate proceeding, with a miscellaneous case number, to be randomly assigned to a Judge of this Court other than Judge G. Murray Snow. The purpose of establishing this miscellaneous and separate case is to transfer this Order to Show Cause to that case and allow the assigned judge to determine whether Mr. Savoy has violated the Rules of Professional Conduct and whether any such violations should result in the revocation of his pro hac vice status or his discipline from this Court. The Court notes that opposing counsel has agreed to appear as a witness and submit evidence at the hearing for this Order to Show Cause.

On December 21, 2012, Plaintiffs filed a Second Amended Complaint which alleged that Defendants' counsel, Eryn McCarthy, had called Mr. Savoy and stated that one of this Court's chambers law clerks had communicated *ex parte* with Ms. McCarthy and told her that the undersigned was upset about the filing of the initial Complaint.[1] (Doc. 36 at 38.) Defendants subsequently moved to strike the Paragraph 73 containing the above allegations. (Doc. 43.) In so doing, Ms. McCarthy attached a sworn affidavit, attached herein as Exhibit A, in which she stated under penalty of perjury that she did not make the statements alleged in Paragraph 73 "or any such statements of any threatening nature to Mr. Savoy or anyone else." (Doc. 43-1 at 2.) She also attached a number of emails exchanged between herself and Mr. Savoy which she asserts tend to show that she never made any threats against Mr. Savoy. (Doc. 43-1, Ex. A.) Ms. McCarthy further sets forth in her affidavit that Mr. Savoy advised Ms. McCarthy that he had not drafted the Second Amended Complaint, but that it had been drafted by Mr. Giannini, now Mr.

---

[1] The full text of the allegation is as follows:

73. Shortly, after the initial Complaint was served, counsel for the defendants called counsel for plaintiffs. She advised that the Hon. G. MURRAY SNOW was "pissed off" about this case being filed, that his Honor's Clerk had called her *ex parte* and told her this fact. She further stated in a threatening tone of voice that her client's [sic] had the connections, power, and intent to retaliate and ruin counsel's career if he continued with this proceeding.

(Doc. 36 at 38.)

- 2 -

Savoy's co-counsel in the underlying case. (Doc. 43-1 at ¶ 6.C.) He stated that he agreed with Ms. McCarthy in her belief that the claims in the underlying case were meritless. (*Id.* at ¶ 6.D.) He further advised Ms. McCarthy that he was worried that this case was going to be bad for his career and that he was "over his head." (*Id.*) He asked Ms. McCarthy for advice, at which point she told him to call the California bar and seek ethics guidance. (*Id.*)

In response to Defendants' Motion to Strike, Mr. Savoy filed an affidavit of his own, attached herein as Exhibit B, swearing under penalty of perjury that he read Paragraph 73 and that he "[stood] behind the facts alleged as true." (Doc. 57-1 at 1.) Thus, the Court was faced with directly opposing affidavits regarding the allegations of Paragraph 73.

The Court therefore set a hearing to assess whether a show cause hearing was appropriate. (Doc. 63.) The next day, Plaintiffs filed a Notice voluntarily striking Paragraph 73 of the Second Amended Complaint. (Doc. 64.) The Court thus granted Defendants' Motion to Strike, but maintained the hearing regarding the conflicting affidavits.

The hearing was held on March 1, 2012. (Doc. 73.) A transcript of the hearing is attached herein as Exhibit C. Throughout the hearing, Mr. Savoy maintained that he believed that Paragraph 73 was a true description of his interpretation of a phone call with Ms. McCarthy. (*See* Hr'g Tr. 6:16–20; 9:10–11; 15:7-8; 25:8–9; 28:12–15, Mar. 1, 2012.) Though Mr. Savoy stated that he did not author Paragraph 73, he admitted that he signed the Second Amended Complaint and that he further signed a statement under oath saying that Paragraph 73 was correct and true. (*Id.* at 16:6–17.) However, he also agreed that Ms. McCarthy's version of events was correct. (*Id.* at 15:10–18.) In addition, Ms. McCarthy played a recording of a voicemail which Mr. Savoy left on her phone on February 5, 2013, and in that voicemail Mr. Savoy simultaneously maintained the truth of his own allegations while stating that he "believe[d] that everything [Ms. McCarthy] said in [her] motion to strike Paragraph 73 was correct." (*Id.* at 13:23–24.) Ms. McCarthy's

position at the hearing was that the allegations in Paragraph 73 were untrue. (*Id.* at 9:24–25.)

Mr. Giannini also represented to the Court that he "participate[d] in drafting all of the words" of Paragraph 73. (*Id.* at 18:22–19:1.) However, he stated that the basis for the allegations of Paragraph 73 was a conversation that he had with Mr. Savoy immediately after Mr. Savoy ended the phone call with Ms. McCarthy. (*Id.* at 20:20–21:5, 21:13–16.) The Court questioned both Mr. Savoy and Mr. Giannini about who authored Paragraph 73, but warned them that their answers may implicate the Fifth Amendment and informed them that they were not required to answer. (*Id.* at 15:21–16:4, 18:5–7, 19:12–17.)

Mr. Savoy characterized the allegations in Paragraph 73 as a misinterpretation. (*Id.* at 25:4–7.) He stated several times that he considered the allegations to be too "emotional" and a distraction from the case, which is the reason he gave for filing a Notice to voluntarily strike Paragraph 73. (*Id.* at 7:9–13; *see also id.* at 13:24–14:2; 24:21–25:7; 31:8–11.) Further, as discussed above, he repeatedly stated that in his opinion, his version of the events was compatible with Ms. McCarthy's version of the events, and that he believed both to be true and correct. (*Id.* at 11:17–20; 13:22–24; 15:10–18.) As he explained at the hearing, the call from Ms. McCarthy was the first time he had been in contact with opposing counsel in any case. (*Id.* at 24:12–15.) According to Mr. Savoy, during the call Ms. McCarthy informed him that he had made serious allegations against powerful people and that this kind of case could "have a serious impact on a career of an attorney, especially a young attorney." (*Id.* at 25:5–10.) Mr. Savoy stated that he took this as a "direct threat that [her] clients were going to come after [him]." (*Id.* at 25:14–15.) He stated that if he had gotten the call today, he would not have reacted in the same way. (*Id.* at 25:11–12.) Thus, Mr. Savoy appears to believe that his misinterpretation of Ms. McCarthy's words justifies the differences between his version of the events and Ms. McCarthy's version of the events.

There is, of course, almost always some elasticity in the interpretation of words. However, there are limits on the extent to which one can claim that something does not

- 4 -

mean what it plainly says. As can be seen by comparing the affidavits filed by Ms. McCarthy and Mr. Savoy, the two versions of events are incompatible. Though it is somewhat plausible that, as a young attorney, Mr. Savoy may have misconstrued Ms. McCarthy's statements as a threat, Paragraph 73 goes beyond alleging that Ms. McCarthy made a threat. Paragraph 73 specifically alleges that Ms. McCarthy stated that she had *ex parte* contacts with clerks of this Court who told her that the undersigned was "pissed off" that Mr. Savoy had filed this case. (Doc. 36 at 28.) It further alleges that Ms. McCarthy expressly threatened that her clients had "the connections, power, and intent to retaliate and ruin counsel's career." (*Id.*) At the hearing, however, Mr. Savoy stated that he "never said that she had an *ex parte* hearing" and that he should not have signed the complaint or affidavit. (Hr'g Tr. at 24:2–4; *see also id.* at 21:16–18.)

Based on these facts, it appears that Mr. Savoy's behavior implicates several of Arizona's Rules of Professional Conduct. Under Ethics Rule ("ER") 3.1, it does not appear that Mr. Savoy had a "good faith basis in law and fact" for filing the Second Amended Complaint containing Paragraph 73. *See* Ariz. R. Sup. Ct. 42, ER 3.1 ("Meritorious Claims and Contentions"). Mr. Savoy may also have violated ER 3.3 in alleging that Ms. McCarthy stated that she had *ex parte* contacts and in signing an affidavit reaffirming this allegation. ER 3.3 prohibits a lawyer from knowingly making a false statement of fact or law, or, importantly, failing to correct a false statement of material fact or law previously made by the lawyer. ER 3.3 ("Candor Toward the Tribunal"). As discussed above, Mr. Savoy admitted at the hearing that he never said that Ms. McCarthy told him anything about *ex parte* contacts. It also appears that Mr. Savoy's behavior implicates ER 8.2. ER 8.2 states that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth and falsity concerning the qualifications or integrity of a judge." ER 8.2 ("Judicial and Legal Officials"). Here, Mr. Savoy alleged that Ms. McCarthy made statements that, if true, would impugn the integrity of this Court by suggesting that a clerk of the undersigned initiated prohibited *ex parte* contacts with Ms. McCarthy to communicate this Court's

disapproval of his client's initial filing. Finally, ER 8.4 specifies that it is professional misconduct to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation;" and to "engage in conduct that is prejudicial to the administration of justice." Based on the conduct described above, it appears that Mr. Savoy has violated ER 8.4.

The Court is mindful of the fact that Mr. Savoy is a young lawyer at the very beginning of his career. Nevertheless, his behavior in this case suggests that he has disregarded the standards set forth in the Rules of Professional Conduct, after he had at least once been advised by sympathetic opposing counsel to consult the state Bar of California for ethics advice. Thus, additional proceedings are necessary to determine whether violations of the Rules have in fact occurred.

**IT IS THEREFORE ORDERED** that Grant Joseph Savoy **SHALL SHOW CAUSE** why his pro hac vice status in this Court should not be terminated or why he should not otherwise be disciplined. *See* LRCiv. 83.2(a), (e). Accordingly, **IT IS ORDERED** that the Clerk of Court set up a separate proceeding with a miscellaneous case number for the transfer and adjudication of this Order to Show Cause.

**IT IS FURTHER ORDERED** that the miscellaneous case number be reassigned, by lot, to another Judge in the District of Arizona. The Clerk is directed that Judge G. Murray Snow shall not be selected to rule on the Order to Show Cause.

**IT IS FURTHER ORDERED** that this Miscellaneous Case has been reassigned by random lot to the Honorable David G. Campbell. All future proceedings and papers submitted shall bear the following complete case number: MC-13-00014-PHX-DGC.

Dated this 6th day of March, 2013.

A. Murray Snow
G. Murray Snow
United States District Judge

# EXHIBIT A

THOMAS C. HORNE
Attorney General
Eryn McCarthy
State Bar No. 015182
Assistant Attorney General
1275 W. Washington
Phoenix, Arizona 85007-2997
Phone: (602) 542-7723
Fax:    (602 542-4385
adminlaw@azag.gov

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| National Association for the Advancement of Multijurisdiction Practice; Allison Girvin; Mark Anderson; and Mark Kolman, | No. CV12-01724-PHX-GMS |
| Plaintiffs, | **DECLARATION OF ERYN M. McCARTHY IN SUPPORT of MOTION to STRIKE** |
| v. | |
| Hon. Rebecca White Berch, Chief Justice; Hon. W. Scott Bales, Vice Chief Justice; Hon. John Pelander and Hon. Robert M. Brutinel, Justices, | |
| Defendants. | |

I, Eryn M. McCarthy, declare as follows:

1. I am currently employed by the Office of the Arizona Attorney General as an Assistant Attorney General. I have been employed by the Office for a total of over thirteen years.

2. As a part of my job duties, I represent numerous state agencies, including the Arizona Supreme Court and the Justices.  I have represented the Arizona Supreme Court and/or

its Justices in both advisory and litigation capacities for over ten years. I presently represent the Arizona Supreme Court and the Justices in the captioned matter.

3. Throughout my years of representing the Arizona Supreme Court, I have never threatened opposing parties/their counsel that the Arizona Supreme Court or its Justices would retaliate against them in any manner whatsoever. I have never been accused of such conduct by any opposing party/counsel with the sole exception of the false accusations made by Plaintiffs/Mr. Savoy on page 38, paragraph 73 of the Second Amended Complaint.

4. On page 38, paragraph 73 of Plaintiffs' Second Amended Complaint, Plaintiffs allege that I called Grant Savoy, Plaintiffs' counsel, and "advised that the Hon. G. Murray Snow was 'pissed off' about this case being filed, that his Honor's Clerk had called her *ex parte* and told her this fact." They further allege that I "stated in a threatening tone of voice that [my] client's [sic] had the connections, power, and intent to retaliate and ruin counsel's career if he continued with this proceeding." I did not make these statements or any such statements of any threatening nature to Mr. Savoy or anyone else.

5. Pursuant to the Court's Order dated August 14, 2012, requiring me to confer with opposing counsel about the deficiencies in the Complaint, I called Mr. Savoy on September 4, 2012. I explained in detail the deficiencies that I believed could be cured by amendment and those that I did not believe could be cured by amendment.

6. During the September 4, 2012, conversation Mr. Savoy told me the following:

A. He was a new lawyer, just recently admitted to the California bar.

B. He was an intern for Plaintiff, National Association for the Advancement of Multijurisdiction Practice (NAAMJP), until a month earlier. He is recently employed by a law firm.

C. Joseph Giannini, the Director for the NAAMJP, wrote the Complaint and told him to sign it while he was still an intern at the NAAMJP. He did not read the Complaint before he signed it and said Mr. Giannini directs the case. When I told him I did not believe the claims had any merit, he said he agreed and that Mr. Giannini has filed many lawsuits against different states' and district courts' bar admission rules naming the NAAMJP and other lawyers as plaintiffs but has lost. He said Mr. Giannini is licensed in another state but is "pissed off" that he failed the California bar several times. He began to tell me of conversations about the present case between Mr. Gianini and himself and I told him to stop as they were protected by the attorney-client privilege.

D. He said he was also the lawyer for another of Mr. Giannini's lawsuits challenging California rules and was worried that these cases were going to be bad for his career. He said he is over his head. He asked me what he should do and I told him to call the California bar and seek ethics guidance and to withdraw from the case if he has concerns. I also told him that he could file a Rule 41 motion to voluntarily dismiss the Complaint until new counsel could be procured.

E. He said he needed time to consult with Mr. Giannini about the deficiencies in the Complaint, his wanting to withdraw as counsel, and dismissing the case under Rule 41. Since the Defendants' answer was due on September 14, 2012, I told him I would seek a thirty day extension to file an answer in order to give him time to decide what to do. He told me he would call me soon after he talked to Mr. Giannini.

7. By email dated the same day of the telephone conversation, September 4, 2012, Mr. Savoy informed me that "he spoke briefly with [his] client about the issues we discussed" and that he but would talk with him more that afternoon. He said he will keep me

-3-

updated on the situation and thanked me for my "understanding of the situation." *See* email string between Grant Savoy and Eryn McCarthy dated September 4, 2012 – October 1, 2012, Attachment A.

8. By email dated September 5, 2012, Mr. Savoy stated:

> Eryn: I spoke with my client briefly yesterday, and have been trying to contact him today as well. From the little I gathered, he still believes he has valid claims and that all plaintiffs have standing. I explained the situation to him, but he appears to not want to voluntarily dismiss the complaint. As for my involvement, we discussed that this was not good for my young career; I requested from my client that I be removed/replaced as counsel of record in the matter, to which he agreed. I will be able to give you more information as soon as I speak with my client again. Thank you very much for your understanding of the situation. Grant "

> *See* Attachment A.

9. By email dated September 17, 2012, I stated the following:

> Hi Grant – has your client procured new counsel? Any idea if any final decision is made as to whether the Complaint will be amended or not (even though I think amendment could cure some issues but not the fundamental defects)?

> *See* Attachment A.

10. By email dated September 17, 2012, Mr. Savoy responded:

> Eryn, my client has not found alternate counsel yet, however, he is in the process of looking at this time. As for amending or withdrawing the complaint, he has not told me exactly what he wants to do yet. Could you please inform me again of the defects (both curable and incurable) so I can relay them to my client? Again, thank you for your understanding of the situation. I will get back to you as soon as I get the list of defects and speak with my client. Thanks Grant"

> *See* Attachment A.

11. By email September 17, 2012, I responded within the hour with a detailed list of the

defects. *See* Attachment A.

12. By email dated October 1, 2012, Mr. Savoy stated:

> Eryn, per my client's request, I am forwarding this email to you. Thank you, Grant

> *Forwarded message from Joe Giannini dated September 23, 2012:*

> Grant: I am looking for associate counsel with you, and will find as I know you are over-&#($*&@@. We are lining up, almost there. I am going to New Jersey on Monday and will be back Sat.

> In the meantime, PLEASE send the AZ AG this email ---"Pursuant to the Court's Order Re 12(b) amendments, Plaintiffs request that you provide the legal citations that you aver can or cannot be cured that warrants their amending or dismissing the Complaint. They are seeking new counsel, may amend the Complaint and/or get this matter resolved forthwith.  Plaintiffs will cooperate with you."

> *See* Attachment A.

13. By email dated October 1, 2012, I stated the following to Mr. Savoy:

> Grant – I am not obligated under the Order to set out my full case with legal citations and argument.  I sent you an e-mail setting out the matters that I believe can and cannot be cured, in additions to the extensive phone conversation we had last month. I am preparing a motion to dismiss that is due October 15. I will seek no other extension as I already received a 30 day extension so that you and your client could address the issues.   You informed me that your client was not inclined to amend or dismiss under rule 41. Again, given that my time to file a responsive pleading is only two weeks away, you may want to just consider dismissing without prejudice under Rule 41 until you and your client can figure out how you want to proceed.  In the meantime, I am proceeding with my preparing my motion.

> *See* Attachment A.

14. The conversation on September 4, 2012, is the only substantive conversation I have had with Mr. Savoy.

1        I declare under penalty of perjury that the foregoing is true and correct.  Executed on January

2  8, 2013.

Eryn M. McCarthy

# ATTACHMENT A

**McCarthy, Eryn**

| | |
|---|---|
| **From:** | McCarthy, Eryn |
| **Sent:** | Monday, October 01, 2012 9:34 AM |
| **To:** | 'Grant Savoy' |
| **Subject:** | RE: Request |

Grant – I am not obligated under the Order to set out my full case with legal citations and argument. I sent you an e-mail setting out the matters that I believe can and cannot be cured, in addition to the extensive phone conversation we had last month. I am preparing a motion to dismiss that is due October 15. I will seek no other extension as I already received a 30 day extension so that you and your client could address the issues. You informed me that your client was not inclined to amend or dismiss under rule 41.

Again, given that my time to file a responsive pleading is only two weeks away, you may want to just consider dismissing without prejudice under Rule 41 until you and your client can figure out how you want to proceed. In the meantime, I am proceeding with my preparing my motion.

**From:** Grant Savoy [mailto:gsavoy@thesksfirm.com]
**Sent:** Monday, October 01, 2012 9:16 AM
**To:** McCarthy, Eryn
**Subject:** Fwd: Request

Eryn,
Per my client's request, I am forwarding this email to you.

Thank you,

Grant

---------- Forwarded message ----------
From: "joe giannini" <alex@mjplaw.org>
Date: Sep 23, 2012 10:52 AM
Subject: Request
To: <gsavoy@thesksfirm.com>

Grant:  I am looking for associate counsel with you, and will find as I know you are over-&#($*&@@.  We are lining up, almost there.  I am going New Jersey on Monday and will be back Sat.

In the meantime, PLEASE send the AZ AG this email  ---- "Pursuant to the Court's Order Re 12(b) amendments, Plaintiffs request that you provide the legal citations that you aver can or cannot be cured that warrants their amending or dismissing the Complaint.  They are seeking new counsel, may amend the Complaint, and/or get this matter resolved forthwith. Plaintiffs will cooperate with you."

Thanks

**McCarthy, Eryn**

| | |
|---|---|
| From: | McCarthy, Eryn |
| Sent: | Monday, September 17, 2012 2:07 PM |
| To: | 'Grant Savoy' |
| Subject: | RE: NAAMJP et al v. Arizona Supreme Court et al. |

Grant – as we discussed, in my opinion, the possibly "curable" defects I have identified to date include the following:

1. Naming Arizona Supreme Court as defendant– barred by Eleventh Amendment
2. Justices – literally no claim made against them
3. In 9th Circuit, no direct cause of action directly under US Constitution when state actors named as defendants
4. NAAMJP – no standing
5. Girvin/Anderson – face of complaint states Girvin "has been denied privilege of admission" and Anderson "is being denied admission" – implies they have applied for admission on motion but have been denied. Under 9th Circuit law, only recourse for denial of admission is through state supreme court. Contrary to what complaint states, you indicated Girvin took UBE exam here and that results are expected in October – if pass – no standing; you also said in fact she did not apply for admission on motion – possible standing issues in that case. Complaint should clarify just what Girvin and Anderson have done.
6. Rule 34 requires other criteria for admission on motion even if originating state does offer comity – complaint does not indicate these plaintiffs have met all other criteria. If they have not, this would be a fundamental defect also.
7. Rule 8 violations
8. Commerce clause – dormant or otherwise?

In my opinion, the following have been identified to date as fundamental defects and cannot be cured by amendment:

1. No claim in any event, even if cured above defects, under the Commerce Clause, First Amendment or Privileges and Immunity Clauses.
2. Abstention
3. Possible ripeness issues
4. Failure to exhaust state remedies

Of course, I may identify more grounds. Thank you.

---

**From:** Grant Savoy [mailto:gsavoy@thesksfirm.com]
**Sent:** Monday, September 17, 2012 1:24 PM
**To:** McCarthy, Eryn
**Subject:** RE: NAAMJP et al v. Arizona Supreme Court et al.

Eryn,
My client has not found alternate counsel yet, however, he is in the process of looking at this time. As for amending or withdrawing the complaint, he has not told me exactly what he wants to do yet. Could you please inform me again of the defects (both curable and incurable) so I can relay them to my client?
Again, thank you for your understanding of the situation. I will get back to you as soon as I get the list of defects and speak w my client.

Thanks

Grant

1

On Sep 17, 2012 11:18 AM, "McCarthy, Eryn" <Eryn.McCarthy@azag.gov> wrote:

Hi Grant – has your client procured new counsel? Any idea if any final decision is made as to whether the Complaint will be amended or not (even though I think amendment could cure some issues but not the fundamental defects)?

---

**From:** Grant Savoy [mailto:gsavoy@thesksfirm.com]
**Sent:** Wednesday, September 05, 2012 1:27 PM
**To:** McCarthy, Eryn
**Subject:** Re: NAAMJP et al v. Arizona Supreme Court et al.

Eryn:

I spoke with my client briefly yesterday, and have been trying to contact him today as well.  From the little I gathered, he still believes he has valid claims and that all plaintiff have valid standing.  I explained the situation to him, but he appears to not want to voluntarily dismiss the complaint.  As for my involvement, we discussed that this was not good for my young career; therefore, I requested from my client that I be removed/replaced as counsel of record in the matter, to which he agreed. I will be able to give you more information as soon as I speak with my client again  Thank you very much for your understanding of the situation.

Grant

On Tue, Sep 4, 2012 at 11:01 AM, McCarthy, Eryn <Eryn.McCarthy@azag.gov> wrote:

Thanks

---

**From:** gsavoy@thesksfirm.com [mailto:gsavoy@thesksfirm.com]
**Sent:** Tuesday, September 04, 2012 11:01 AM
**To:** McCarthy, Eryn
**Subject:** Re: NAAMJP et al v. Arizona Supreme Court et al.

Eryn,

I spoke briefly with my client about the issues we discussed. I am going to speak w him at more depth this afternoon; of course, I will keep you updated on the situation. As for the email address, you can still use the @thesksfirm.com address, as the other is for my current employer. Thank you for your understanding of the situation. I will be in touch with you tomorrow morning.

Sincerely,
Grant Savoy

Sent via BlackBerry from T-Mobile

---

**From:** "McCarthy, Eryn" <Eryn.McCarthy@azag.gov>

**Date:** Tue, 4 Sep 2012 17:55:03 +0000

**To:** 'gsavoy@thesksfirm.com'<gsavoy@thesksfirm.com>;
'gsavoy@initiativelegal.com'<gsavoy@initiativelegal.com>

**Subject:** NAAMJP et al v. Arizona Supreme Court et al.


Hi Grant.  Based on our consultation today in compliance with Judge Snow's Order, I understand that you will be addressing several issues with your client concerning how to proceed.  As we discussed, I will look into filing a motion to enlarge time to file my clients' responsive pleading to give you time to address the issues before we file the MTD.   I will ask for 30 days from September 14.


If there is a different e-mail address for you, please let me know. The e-mail address for the sks firm does not appear current  - I found the Initiative address on the California Bar's web site.  Thank you.



--

---

Grant Joseph Savoy, Esq.



# SOLOUKI | KROL | SAVOY
1800 Century Park East, Suite 600
Los Angeles, California 90067
gsavoy@thesksfirm.com

www.thesksfirm.com
Main: 424.652.5025
Direct: 424.442.0019
Fax: 424.652.5000

---

CONFIDENTIALITY NOTICE: This e-mail message and its attachments are intended solely for the addressed recipient and may contain legally privileged and confidential information. Any unauthorized use, disclosure or duplication is prohibited. If you are not the addressed recipient, or received this e-mail message in error, please notify the sender.

# EXHIBIT B

## DECLARATION OF GRANT JOSEPH SAVOY

I, GRANT JOSEPH SAVOY, am competent to testify, and have personal knowledge. I am counsel for the Plaintiffs admitted *pro hac vice* in this case.   I am submitting this Declaration in Opposition to the Defendants' Motion to Strike. I hereby aver under oath the following:

1. I am familiar with my professional obligations as a member of the bar and with Fed. R.Civ. Proc 11.   I was intimately involved in drafting every aspect of the Complaints in this proceeding, having gone over the facts and law many, many times.  I believe in the merits of Plaintiffs' claims.  I read paragraph 73 before signing the Second Amended Complaint, and carefully considered its import.  I stand behind the facts alleged as true.

2. Counsel's other allegations that I am a puppet and signed the Complaint without knowing its contents, facts and law, is implausible and beyond absurd.

Sworn to under penalty of perjury under the laws of the United States.

Dated:  January 27, 2013                          /s/ *Grant Joseph Savoy*

                                               _____
                                               Grant Joseph Savoy

1

# EXHIBIT C

1               UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF ARIZONA

3

4   National Association for the        )
    Advancement of Multijurisdiction    )
5   Practice; Allison Girvin; and Mark  )
    Anderson,                           )
6                                       )
                Plaintiffs,             ) No. CV 12-1724-PHX-GMS
7                                       )
                vs.                     ) Phoenix, Arizona
8                                       ) March 1, 2013
    Hon. Rebecca White Berch, Chief     ) 4:03 p.m.
9   Justice; Hon. W. Scott Bales, Vice  )
    Chief Justice; Hon. John Pelander   )
10  and Hon. Robert M. Brutinel,        )
    Justices,                           )
11                                      )
                Defendants.             )
12  _____)

13

14

15

16

17          REPORTER'S TRANSCRIPT OF PROCEEDINGS

18       BEFORE THE HONORABLE G. MURRAY SNOW

19               (In-Court Hearing)

20

21

22  Court Reporter:          Gary Moll
                             401 W. Washington Street, SPC #38
23                           Phoenix, Arizona   85003
                             (602) 322-7263
24

25  Proceedings taken by stenographic court reporter
    Transcript prepared by computer-aided transcription

1                           A P P E A R A N C E S

2

3     For the Plaintiffs:            Grant J. Savoy, Esq.
                                     SKS LAW
4                                    1800 Century Park East, Suite 600
                                     Los Angeles, California  90067
5                                    424-652-5025

6                                    Joseph R. Giannini, Esq.
                                     12016 Wilshire Blvd., Suite 5
7                                    Los Angeles, California  90025
                                     310-207-1776
8
      For the Defendants:           Eryn M. McCarthy, AAG
9                                    Charles A. Grube, AAG
                                     OFFICE OF THE ATTORNEY GENERAL
10                                   1275 W. Washington
                                     Phoenix, Arizona  85007
11                                   (602) 542-7723

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

P R O C E E D I N G S

THE CLERK:  This is CV 12-1724, National Association for the Advancement of Multijurisdiction Practice v. Arizona Supreme Court, on for in-court hearing.

Counsel, please announce your appearances.

MR. SAVOY:  Grant Savoy, attorney for the plaintiffs.

MS. McCARTHY:  Eryn McCarthy and Charles Grube, assistant AG's, attorneys for the defendant.

MR. GIANNINI:  Good afternoon, Your Honor.  Joseph Giannini for the plaintiff, and Mark Kolman, a plaintiff in this case.

THE COURT:  Mark --

MR. KOLMAN:  Kolman.

THE COURT:  Kolman.  Mr. Kolman, have you represented -- have you entered a notice of appearance?

MR. KOLMAN:  No, Your Honor.  I'm the plaintiff in this case.  I'm not allowed to practice in Arizona.

THE COURT:  All right, you're the plaintiff.  I had remembered the plaintiff with a different name, I apologize.

MR. SAVOY:  There's two Marks, Your Honor.  There's two Marks that are plaintiffs: one Mark Anderson and one Mark Kolman.

THE COURT:  Well, I believe that you will know from the orders what I'm interested in.  We have had -- Mr. Savoy,

16:03:31

16:03:44

16:03:55

16:04:06

16:04:19

1    you signed a second amended -- or an amended complaint with a

2    paragraph in that complaint that indicates that the defense --

3    counsel for defense -- specifically Ms. McCarthy, I presume --

4    called you and told you that my clerks passed on information

5    about my disposition about this case, and that it was                     16:04:49

6    apparently going to be some sort of retribution by the justices

7    of the Supreme Court against you personally for pursuing this

8    action.

9            Do I understand that allegation correctly?

10           MR. SAVOY:  The allegation is somewhat correct,              16:05:04

11   although it wasn't --

12           THE COURT:  Well -- it states --

13           MR. SAVOY:  It wasn't --

14           THE COURT:  -- what it states, doesn't it?

15           MR. SAVOY:  It does.                                          16:05:12

16           THE COURT:  All right.  So how have I misstated it?

17           MR. SAVOY:  I was contacted by Ms. McCarthy per the

18   order to meet and confer with counsel --

19           THE COURT:  Well, I just want -- all I'm talking about

20   now is the allegation of the complaint.  I'm not talking --         16:05:23

21           MR. SAVOY:  Okay.

22           THE COURT:  -- about what you and Ms. McCarthy talked

23   about.

24           MR. SAVOY:  Okay.

25           THE COURT:  What does the complaint allege, if I've         16:05:29

1   misunderstood it?

2        MR. SAVOY:  The complaint alleges that she did call

3   me, she contacted me, let me know that you were unhappy about

4   this case being filed, and that this is the kind of case that

5   can have a major impact on my career.                          16:05:43

6        THE COURT:  And she indicated to you that my clerks

7   were the ones that passed that information along to her?

8        MR. SAVOY:  She indicated to me that she got the

9   information based on the fact that she's been before you many

10  times and that you never issued an order this quickly.  And   16:05:57

11  based on your action of issuing that order to amend the

12  complaint and avoid a 12(b) filing, that she understands from

13  this that you were very unhappy about it being -- being filed.

14       THE COURT:  That's not at all what the complaint

15  alleges, is it?                                                16:06:15

16       MR. SAVOY:  As far as what I recall, I do recall her

17  telling me that she was in contact with the clerk of the court,

18  and that the clerk had expressed the same sentiments: that you

19  were unhappy about this being filed.

20       THE COURT:  Okay, let me read to you --                   16:06:25

21       MR. SAVOY:  Okay.

22       THE COURT:  -- and see if I have the correct

23  allegation:  "Shortly after the initial complaint was served,

24  counsel for the defendants called counsel for plaintiffs.  She

25  advised that the Honorable G. Murray Snow was, quote, pissed   16:06:35

1   off, unquote, about this case being filed; that his Honor's

2   clerk had called her ex parte and told her this fact.  She

3   further stated in a threatening tone of voice that her clients

4   had the connections, power, and intent to retaliate and ruin

5   counsel's career if he continued with this proceeding.          16:06:54

6           Have I correctly read the allegations?

7           MR. SAVOY:  You have correctly read it, sir.

8           THE COURT:  All right.  And you signed that complaint?

9           MR. SAVOY:  I did sign the complaint, Your Honor.

10          THE COURT:  And then you further signed a statement     16:07:08

11  under oath --

12          MR. SAVOY:  Yes.

13          THE COURT:  -- that that was true.

14          MR. SAVOY:  Yes, Your Honor, that's correct.

15          THE COURT:  All right.  Are you now changing --         16:07:13

16          MR. SAVOY:  I am not changing -- I am not changing

17  what was stated that that was not what was verbatim said in the

18  conversation.  That was my interpretation of it, and I'm

19  standing by that being what I understood from the conversation,

20  Your Honor.                                                     16:07:27

21          THE COURT:  All right.  Let me ask you, does that --

22  since that time you have consented to the striking of that

23  paragraph in the complaint, is that correct?

24          MR. SAVOY:  That's correct, Your Honor.

25          THE COURT:  Well, let me ask you this:  Have you done   16:07:46

1    that based on your understanding that the allegation bears no

2    relevance to your underlying claims, or do you believe that it

3    does bear relevance to your underlying claims but you're

4    striking it to avoid difficulty?

5          MR. SAVOY:  That was an issue -- the relevance issue        16:08:06

6    was something that me and co-counsel were trying to decide

7    whether or not it was relevant for the matter.  We determined

8    that it may be relevant.

9          The purpose of striking it was because we realized

10   that it was bringing in too many emotions between myself and     16:08:20

11   co -- I mean and opposing counsel, and it was taking the focus

12   of the case away from the actual merits and the actual clients

13   that are in this matter.

14         So we felt that for the -- it would be best for the

15   case and for our clients' chances of winning if that was taken   16:08:35

16   out and the personal attacks were removed from the complaint,

17   because we believed that it's not about my emotions or opposing

18   counsel's motions; it's about -- emotions, I should say; it's

19   really about the merits of the underlying case.

20         THE COURT:  And I suppose that any retribution against      16:08:52

21   you that you allege in the complaint is not relevant to your

22   underlying clients' claims, in any case.

23         MR. SAVOY:  The more that I reviewed it and looked at

24   it, I don't believe that it is fully relevant, no, Your Honor,

25   I agree.                                                          16:09:05

1       THE COURT:  Now let me tell you what I have a problem

2   with, and Ms. McCarthy, I will hear from you.

3       Even though that's out of the case, and even though

4   presumably you have no problem with me presiding in this case

5   even though there's some allegation by your complaint, through        16:09:18

6   Ms. McCarthy, that's conceivable that I am involved somehow

7   with threats against you, it really bothers me that I have you

8   avowing that something is true under oath and I have

9   Ms. McCarthy avowing that something -- that that is not true

10  under oath, and you have both made those statements under         16:09:40

11  penalty of perjury.

12      MR. SAVOY:  Yes, Your Honor.

13      THE COURT:  I don't tolerate that kind of stuff in my

14  court.  One of the two of you is lying, and I'm going to

15  determine who, and I'm going to take appropriate action about       16:09:49

16  it.  It seems to me that there isn't a whole lot of leeway, in

17  light of the statements made under oath, that you have

18  indicated that the allegation in your complaint is true.

19      And so I guess as a matter of satellite proceeding I'm

20  wondering if we ought to have a hearing about whether or not I      16:10:10

21  should allow you and/or Ms. McCarthy, depending upon who I

22  determine is telling the truth, to be sanctioned by this Court

23  including up to -- in your case, it would be the loss of your

24  pro hac vice status; and Ms. McCarthy, it would be the loss of

25  the right to practice in federal court, and/or a referral to        16:10:33

1    the State Bar of Arizona.

2          Do you have any problem with such a proceeding?

3          MR. SAVOY:  I would like to avoid such a proceeding,

4    because, as I stated, I believe that we've gotten to this point

5    based on emotions and not the merit of the case, and so I would          16:10:46

6    like to do whatever possible to remedy this situation.

7          THE COURT:  Well, the remedy of the situation is to

8    file true pleadings, and if you haven't filed a true pleading

9    then you better fess up.

10         MR. SAVOY:  I believe that I did file a true pleading,          16:11:01

11   Your Honor.

12         THE COURT:  All right.  Ms. McCarthy, I'm going to

13   allow you to be heard.

14         MS. McCARTHY:  Thank you, Your Honor.  Is it all right

15   if I remain seated?          16:11:09

16         THE COURT:  Generally, I do ask you to come --

17         MS. McCARTHY:  Sure.

18         THE COURT:  -- to the podium, but I don't mind if you

19   remain seated, so long as you speak directly into a microphone

20   so that we can have a complete record.          16:11:16

21         MS. McCARTHY:  Sure.  And, Your Honor, there's --

22   there's different things, and I appreciate the concern that

23   you're having.

24         The record before you I do believe demonstrates the

25   fact that that allegation is untrue.  Their recent filings          16:11:31

1   demonstrate that.

2           On the 22nd of February they filed their response to

3   our motion for summary judgment.  As a part of that they filed

4   their controverting statement of facts and objections to our

5   facts.  The defendants' statement of facts, specifically          16:11:48

6   number 36, stated that Eryn McCarthy did not make the

7   statements alleged in paragraph 73 of the second amended

8   complaint.

9           The plaintiffs, very painstakingly for all the other

10  facts, defendants' statement of facts, either objected or --     16:12:10

11  and then admitted or denied.  But the one that they did not

12  address was fact number 36.  They did not deny it, and

13  therefore it's deemed admitted.

14          The other thing, Your Honor, is Mr. Savoy called me on

15  February 5th, my office phone number, and left a voice message,   16:12:28

16  the three- to four-minute voice message -- and I do have a

17  recording of that if you're interested in hearing it, and I do

18  have a transcription of it as well -- where he indicated that

19  everything I said in my motion to strike was correct.

20          He further indicated that, you know, he was emotional     16:12:48

21  during the conversation in September because he felt he was

22  over his head; that Mr. Giannini was dictating all of this.  He

23  also indicates that he did not want to put that paragraph in

24  the complaint.  And again, I do have a copy of that recording.

25          The other thing, Your Honor, is that when you look at     16:13:08

1    the e-mails that's attached to the motion to strike, very

2    clearly those e-mails, the e-mails that I received from

3    Mr. Savoy, nowhere in there does he reference anything close to

4    that I threatened him.  Instead, on no less than three

5    occasions he's thanking me for my understanding.  But again, by          16:13:28

6    his own voice on that February 5th message he states:

7    Everything you said in your motion to strike is correct.  So I

8    believe --

9             THE COURT:  Mr. Savoy, did you call and leave an

10   e-mail message on the day that --                                        16:13:42

11            MR. SAVOY:  I left a voicemail message, yes, Your

12   Honor.

13            THE COURT:  I'm sorry, voicemail message?

14            MR. SAVOY:  Yes, Your Honor.

15            THE COURT:  Do you have any objection if I listen to           16:13:48

16   it?

17            MR. SAVOY:  I do not, Your Honor.  I believe that

18   everything she is stating is correct, and I do believe that her

19   version of what happened is also correct, but I also believe

20   that my version of it is correct as well.                                16:13:58

21            There is -- I think that there was something --

22            THE COURT:  All right.  I've heard enough from you.

23            MR. SAVOY:  Okay.

24            THE COURT:  I'm going to now hear the voicemail, and

25   I'll give you a chance to address it afterwards.                         16:14:08

1          MS. McCARTHY:  Okay.

2          MR. SAVOY:  Thank you, Your Honor.

3          MS. McCARTHY:  And Your Honor, as a matter of -- we

4    did try -- I have a standard cassette tape, and we did bring a

5    dictation machine to -- to play it on.                          16:14:15

6          I did call your assistant.  She said that she did not

7    believe that the Court had anything that would be able to play

8    this.  We did attempt to bring the recording -- recorder in,

9    but security indicated to us that we weren't allowed to do

10   that.                                                           16:14:32

11         I do have the recording on my cell phone, if that's

12   all right with you.

13         THE COURT:  We can give it a shot. `

14         MS. McCARTHY:  Okay.

15         Just bear with me one moment.  I apologize.               16:14:46

16         (Cell phone message played for the Court as follows:)

17         "This message is for Eryn McCarthy.  This is Grant

18   Savoy calling in regards to the NAAMJP versus Arizona Supreme

19   Court matter.  I am at a point now that I need to reach out to

20   you guys.  I am -- for lack of a better term, I'm basically     16:15:23

21   becoming the whipping boy of this entire -- this entire thing

22   and I'm in the middle, and now you guys are pointing the finger

23   at me and Joe Giannini's pointing the finger at me and

24   everybody's trying to point the finger at me when in reality,

25   the person who's acting in bad faith is Joe.                    16:15:46

1        "Now that he is not my client, now that he is a

2   co-counsel in the matter, I feel that, you know, I have certain

3   responsibilities to the Court and I have certain

4   responsibilities to both the California bar and the Arizona bar

5   to let everyone know what's going on.                                    16:16:03

6        "Now, I know that Judge Snow ordered a hearing set for

7   the 1st of March, and I'm more than amen -- amendable [sic] to

8   going to the hearing.  As you know, my financial situation is

9   very strained right now.  I am in California.  I don't know

10  where I will be able to come up with the money for the -- to    16:16:22

11  get over there.  However, I'd be more than willing to appear

12  telephonically if you guys were amendable to that.

13       "I have been in contact with Joseph Giannini.  I did

14  express to him the importance of removing paragraph 73

15  [indiscernible] and he did remove -- or he did notice the Court  16:16:41

16  of his intent to move [sic] 73 today.  I have been trying to

17  get him to sub me out as counsel since I last talked to you all

18  the way back -- or since I first talked to you all the way back

19  in September, and it's been like pulling teeth the entire time

20  getting him to sign the substitution of counsel form for me.     16:16:55

21       "And, you know, I'm kind of in the pit hole right now,

22  and now it's -- you know, I still stand by the things I said.

23  I believe that they -- I believe that everything you said in

24  your motion to strike paragraph 73 was correct.  However, I do

25  believe that based on the emotions that I was going through I    16:17:14

1   did take a lot of stuff in the wrong manner or maybe I

2   misunderstood it.

3         "However, I specifically did not want to include any

4   of that matter in the complaint.  I am -- I don't know, I

5   wouldn't consider myself a puppet, because I like to think of          16:17:31

6   myself as a man, and I do take offense to you calling me a

7   puppet, but at the same time, it is kind of an apt description,

8   because -- and no matter how hard I try to set forth the

9   procedure and I try to be a lawyer in this matter, I am

10  continually overrun by my former client/current co-counsel.            16:17:46

11        "So whether this is going to take a conversation

12  between me, you, and the judge, or me, you, the judge and

13  Mr. Giannini, it's completely up to the judge, but I do need to

14  clarify -- clarify my stance in this whole matter.  I do need

15  to clarify my position in this whole matter and what my                16:18:05

16  participation has been in this matter.

17        "So when you get this message, give me a call if you'd

18  like.  I know that you did request -- that you were thinking

19  about getting counsel to represent you in the matter if it's an

20  evidentiary hearing, so I understand that you may not want to          16:18:23

21  speak with me about this matter, but feel free to give me a

22  call when you do get this.  My number's 424-442-0019, or you

23  can reach me directly on my cell phone any time of day at

24  213-840-7234.

25        "Thank you for your time.  Talk to you soon.  Bye."              16:18:39

1          MR. GIANNINI:  Your Honor, may I be heard?

2          THE COURT:  No, you may not.

3          Ms. McCarthy, do you have anything more to say?

4          MS. McCARTHY:  I don't, Your Honor.

5          THE COURT:  All right.  Now, Mr. Savoy, you wanted to          16:18:56

6   say something.

7          MR. SAVOY:  Yes, Your Honor.  I still stand by what I

8   said in paragraph 73.  I know my obligations to the court to

9   submit true pleadings --

10          THE COURT:  Let me ask you this.  You said --          16:19:11

11          MR. SAVOY:  Yes.

12          THE COURT:  -- on that telephone conversation that --

13          MR. SAVOY:  Yes.

14          THE COURT:  -- everything that Ms. McCarthy said in

15   her motion to strike was true.          16:19:17

16          MR. SAVOY:  Prior to that, I also said that I stand by

17   the allegations made in the complaint, and I also believe that

18   what you said was true.

19          THE COURT:  I want to ask you a specific question.

20          MR. SAVOY:  Yes, Your Honor.          16:19:25

21          THE COURT:  If you want to retain counsel or consider

22   the question, I think I need to advise you that in addition to

23   any order to show cause, it strikes me that there may be Fifth

24   Amendment overtones to what I'm asking you.

25          MR. SAVOY:  Okay.          16:19:39

1        THE COURT:  So I'm going to give you the right -- I'm
2   going to give you these warnings, and you don't have to answer
3   my question if you feel like any of your constitutional rights
4   are being implicated.  I want to respect those.
5        MR. SAVOY:  Thank you, Your Honor.                    16:19:52
6        THE COURT:  Did you draft paragraph 73?
7        MR. SAVOY:  I did not draft paragraph 73.
8        THE COURT:  Do you know who did draft paragraph 73?
9        MR. SAVOY:  I do know who drafted paragraph 73.
10       THE COURT:  Who drafted paragraph 73?                 16:20:02
11       MR. SAVOY:  My co-counsel, Mr. Giannini.
12       THE COURT:  All right.  And you signed paragraph 73?
13       MR. SAVOY:  I signed the complaint that included
14   paragraph 73, yes.
15       THE COURT:  You signed an oath -- signed a statement   16:20:10
16   under oath saying paragraph 73 was correct and true?
17       MR. SAVOY:  Yes, I did.
18       THE COURT:  All right.  Do you have anything else you
19   want to say?
20       MR. SAVOY:  I reviewed the complaint.  I helped author  16:20:21
21   the complaint.  I did not author paragraph 73.  There was some
22   back and forth between myself and co-counsel as to whether 73
23   should even be included in it.  I expressed that I did not want
24   it to be included; I didn't feel that it was appropriate.  Him,
25   being my client at the time, insisted that it be included, and  16:20:41

1   it eventually was included in the second-amended complaint.

2        THE COURT:  How was Mr. Giannini your client?

3        MR. SAVOY:  He is a director of the national

4   association for multijurisdiction practice.

5        THE COURT:  All right.  But it isn't that he himself          16:20:55

6   is seeking the right to practice in the state of Arizona.

7        MR. SAVOY:  No, he himself is not.

8        THE COURT:  All right.  He is -- he is the director of

9   an organization that is seeking that right --

10       MR. SAVOY:  Exactly.          16:21:03

11       THE COURT:  -- on behalf of others.

12       MR. SAVOY:  Yes, Your Honor.

13       THE COURT:  All right.  Do you have anything else you

14   want to say?

15       MR. SAVOY:  I don't have anything further, Your Honor.          16:21:09

16   Thank you.

17       THE COURT:  All right.  Mr. Giannini, you had

18   something you wanted to say.

19       MR. GIANNINI:  Yes, Your Honor.  Thank you.

20       Your Honor, thank you for the opportunity to be here;          16:21:19

21   enjoy being here in Arizona.  Mr. Savoy has worked with us for

22   over a year.  He's worked with us full time.  He's a very

23   talented lawyer.  He worked with the Los Angeles attorneys

24   office.  He got a scholarship to law school.  He was a

25   top-10-percent graduate of Southwestern University.  He has          16:21:44

1    worked for a firm that did criminal defense.  He's a partner in

2    his own firm now.  He's worked for a class action firm.  He's

3    an extraordinarily talented young man.  He's worked with us in

4    depth.  He has authored this complaint.  He has --

5              THE COURT:  Let me ask you, and I'm going to give you      16:22:06

6    the same -- same warnings that I gave to your co-counsel,

7    Mr. Savoy, about the Fifth Amendment.

8              Who authored paragraph 73 of the amended complaint?

9              MR. GIANNINI:  Your Honor, 73 was drafted after

10   consultation with Mr. Savoy and myself based on evidence.          16:22:31

11   After the conversation between Mrs. McCarthy and Mr. Savoy he

12   called me immediately.  I made notes of the conversation.  I

13   was astonished at what had transpired.

14         Mr. Savoy was deeply, deeply distressed at that time.

15   He was intimidated and essentially terrorized by the             16:22:58

16   representations of Mrs. --

17             THE COURT:  Who drafted paragraph 73 of the amended

18   complaint?

19             MR. GIANNINI:  I participated in drafting 73, Your

20   Honor, yes.                                                      16:23:15

21             THE COURT:  Did you draft the words of paragraph 73?

22             MR. GIANNINI:  I did participate in drafting all of

23   the words, Your Honor, and the -- the facts that we relied upon

24   on drafting paragraph 73, which we dismissed voluntarily

25   because it was becoming a distraction to the claims that we      16:23:37

```
 1    were making --

 2          THE COURT:  No, that's -- I realize that, and

 3    paragraph 73 is no longer in the complaint.  It's stricken.

 4    And I'm not worried about that for purposes of going forward

 5    with your lawsuit.                                              16:23:51

 6          What I'm worried about is if I have practitioners here

 7    who I'm going to continue to allow to practice in this court

 8    with the kind and level of complete lack of regard for the

 9    truth.  That's what I'm investigating, and certain standards of

10    professionalism and ethics that are required to practice here,  16:24:12

11    I don't care if you are a young lawyer, you know better.

12          So Mr. Giannini, did you draft paragraph 73 of the

13    complaint?  I'm not going to require you to answer the

14    question, because it may bear on your Fifth Amendment rights;

15    it may bear on your right to practice in this proceeding -- in  16:24:27

16    this jurisdiction.  But if you choose to answer, I want -- I

17    want an answer.

18          MR. GIANNINI:  I'm not going to answer, Your Honor.

19          THE COURT:  Okay.

20          MR. GIANNINI:  Because you're making allegations, it      16:24:39

21    seems --

22          THE COURT:  I am certainly concerned about the

23    allegation that you drafted or had at least a role in drafting

24    every word of, that it seems to me to reflect statements that

25    are absolutely untrue.  Mr. Savoy signed those statements and   16:24:58
```

1   represented that they are true to this Court, and now he has

2   acknowledged that everything that -- I'm sorry, he's

3   acknowledged that everything that Ms. McCarthy has said in her

4   motion to strike is true.

5           Well, one of the things she said is that she never          16:25:15

6   called him.  She never said that one of my clerks called her or

7   said that I was, quote, unquote, pissed off.

8           And so I think that kind of allegation is not ethical,

9   and it isn't -- and to sign it -- to write it in the first

10  place is problematic when it's not true.  To sign it when it's   16:25:36

11  not true and file it in this court both are actions, I think,

12  of lack of ethics and professionalism that I just don't know

13  that I can tolerate allowing that kind of level of practice to

14  happen here.

15          MR. GIANNINI:  Your Honor -- Your Honor, I'm in a        16:25:58

16  situation where I feel hamstrung --

17          THE COURT:  All right.

18          MR. GIANNINI:  -- because --

19          THE COURT:  Go ahead.

20          MR. GIANNINI:  -- because you're talking about one       16:26:10

21  conversation with what the recording was and we're talking

22  about a conversation that Ms. McCarthy had with Mr. McCoy --

23  with Mr. Savoy immediately after the complaint was filed --

24          THE COURT:  All right.

25          MR. GIANNINI:  -- in which case was the basis for        16:26:26

1   paragraph 73.

2       This conversation, I made notes of the conversation

3   that I had with Mr. Savoy immediately after the conversation

4   that he had with Ms. McCarthy, and these are the notes that I

5   have.                                        16:26:46

6       If you'd like, I'd like to present it to you.  I can

7   show a copy to opposing counsel.  But in essence, the notes

8   that I made of the conversation that I had with Mr. Savoy

9   immediately, immediately, on the same day within five minutes

10   after the conversation, bears out the contents of what is in   16:27:01

11   paragraph 73, Your Honor, I submit to the Court.  These are the

12   notes.

13       I also submit that when Mr. Savoy explained to me

14   exactly what happened immediately after the conversation, that

15   he was truthfully recounting what he understood the substance   16:27:17

16   of the conversation to be.

17       We, in this case, did not want to get into a dispute

18   with opposing counsel.  In essence, we felt that we had been

19   threatened, and as a result of being threatened we responded to

20   that threat.                             16:27:42

21       We on further reflection decided we don't want to open

22   up an animosity contest, or urinating contest, or whatever it

23   is you want to call it.  We would like to focus on the merits,

24   and we dismissed the case because we don't want to get involved

25   in all this other peripheral things.               16:28:03

1          We have very strong clients.  Mr. Kolman is a former

2     assistant U.S. attorney.  He's a former public defender.  He's

3     been a member of a firm that has represented Pima County --

4          THE COURT:  I don't really want to argue the merits of

5     your case, which are totally separate from this matter.                    16:28:21

6          MR. GIANNINI:  And that is why, Your Honor --

7          THE COURT:  Oh, I understand it, but you have still

8     drafted it.  You didn't sign it; Mr. Savoy did.

9          MR. SAVOY:  Yes, Your Honor.

10         THE COURT:  But Mr. Savoy, do you want to take the                     16:28:33

11    stand and be under oath, or do you want to say what you've

12    said?  I'm not going to oblige you to be under oath.  But I

13    will tell you that it is my inclination not to let this lie.

14         I don't want to ruin your career.  You're a young

15    lawyer.  I don't think Ms. McCarthy wants to ruin your career.            16:28:55

16    But what you did was, arguably, a criminal act; it was

17    certainly an unprofessional act.

18         MR. SAVOY:  If I could approach the podium and speak

19    on my behalf, Your Honor.

20         THE COURT:  Please.                                                   16:29:13

21         MR. SAVOY:  Thank you.

22         THE COURT:  Mr. Giannini, do you want to take your

23    seat for the moment?

24         MR. GIANNINI:  Your Honor, may I approach with this?

25         THE COURT:  I'll allow -- I'll hear from you after                    16:29:19

1    I've heard from Mr. Savoy.

2            Do you have an objection, Ms. McCarthy, to me looking

3    at that?

4            MS. McCARTHY:  No, Your Honor.

5            THE COURT:  All right, Mr. Savoy.                    16:29:33

6            MR. GIANNINI:  Your Honor, the --

7            THE COURT:  I don't want to hear from you,

8    Mr. Giannini.  I'll talk to you in a minute.

9            MR. SAVOY:  Your Honor, in this matter it's just --

10   for the purposes of this hearing, I don't want to get into any   16:29:44

11   of the other surrounding circumstances, but I was contacted and

12   I did take what was said to me as a threat.  I now, through --

13   I've only been practicing for some eight months now, but over

14   my eight months of practicing I've come to realize that when

15   opposing counsel calls you and says, You have a meritless case.   16:30:03

16   Says that this case, you need to dismiss it, you're going to

17   get into this and that, that it's not an actual direct threat;

18   it's something that is almost common practice in civil

19   practice.

20           THE COURT:  All right.  Let me ask you --            16:30:15

21           MR. SAVOY:  Yes, Your Honor.

22           THE COURT:  -- are you saying that Ms. McCarthy told

23   you that one of my clerks called her?

24           MR. SAVOY:  No, Your Honor.  What I'm specific --

25           THE COURT:  She did not say that.                   16:30:22

1          MR. SAVOY:  She said -- from what I remember, she said

2     she was in contact.  I never said that she had an ex parte

3     hearing.  That is something that I understand I should have not

4     signed.

5          But what happened is she called me.  She informed me          16:30:33

6     that these are serious allegations you're making against very

7     powerful people.  The Arizona Supreme Court isn't going to

8     take this lightly.  This is the magnitude of a case that can

9     have a serious impact on a career of an attorney, especially a

10    young attorney.                                                    16:30:47

11         Now, if I would have got that call today I wouldn't

12    have reacted in the way I reacted.  But this was the first case

13    I had ever filed, this was the first time I'd been in contact

14    with opposing counsel, and I took this as a direct threat that

15    the clients were going to come after me, her clients.  I took    16:31:01

16    it as she said she's never seen you submit a motion -- or an

17    order this quickly after a case being filed.  Therefore, based

18    on that, she knows that you're upset.  From my recollection,

19    she said she was in contact with the Court.

20         Now, I want to keep in mind that I was under extreme         16:31:18

21    emotion when I relayed this information to Mr. Giannini.  So

22    while Mr. Giannini may have had a level head as he was writing

23    the notes that you're reviewing, I was speaking out of emotion.

24    For that very reason that I was speaking out of emotion, we've

25    gone back and forth about the inclusion or exclusion of         16:31:35

1    paragraph 73 because I felt that even though it is the best of

2    what I remember, and even though I do stand by those statements

3    based on the best of my recollection, I know that I was under

4    the color of extreme emotions, and I did not want to bring it

5    in because I may have misheard something, I may have                16:31:55

6    misinterpreted something, or I may have taken something the

7    wrong way, and that was the reason I didn't want to include it.

8              However, I do stand by that that is what I took from

9    that conversation with opposing counsel.

10             THE COURT:  All right.  Do you have anything else you     16:32:07

11   want to say?

12             MR. SAVOY:  I have nothing further, Your Honor.

13             THE COURT:  All right.  You can be seated.

14             Mr. Giannini, what did you want to say?

15             MR. GIANNINI:  Your Honor, if you'll -- you'll notice     16:32:16

16   the note up at the top.  It says the date that the conversation

17   took place and the time the conversation took place.  I ripped

18   off the yellow pad, and in doing so the very top of the line

19   with what I wrote was -- is no longer legible.

20             But if you look down further at the notes, basically     16:32:37

21   what Mr. Savoy communicated to me at the time in the tone of

22   voice that he communicated it to me made it very clear to me

23   that he had been threatened, in that the second sentence here,

24   it says, Judge Snow is pissed off, her understanding.

25             I also recall that when he talks to me about this, he     16:33:08

1    had said that your clerk had contacted her, and that if you'll

2    go down the remainder, you can see I wasn't really trying to

3    paint a picture of something that was in excess of what was

4    happening, I was just trying to crystallize exactly what my

5    understanding of the conversation was, and realizing that our          16:33:37

6    counsel had been not only threatened, but essentially

7    threatened to the point where he indicated that we needed to

8    get additional counsel; put us in a situation where we felt

9    that this is something that is improper, unprofessional on the

10   part of the defense counsel, and it should not be tolerated,          16:34:02

11   and we didn't feel that we should tolerate such a -- such

12   charges and such threats.

13           THE COURT:  So even though you didn't view them as

14   relevant to this lawsuit, you nevertheless included them in the

15   complaint?                                                             16:34:19

16           MR. GIANNINI:  Well, initially, Your Honor, we felt

17   that it was very relevant.  We felt it was relevant because of

18   Allison Girvin being failed on the bar exam by 1 point.

19   Apparently, there were 170 different applicants on the exam

20   that were failed and she was failed -- she had the highest          16:34:40

21   score of anyone who had been failed.  We felt that this was

22   relevant.

23           THE COURT:  Relevant -- threats against Mr. Savoy are

24   relevant to Ms. Girvin's claim?

25           MR. GIANNINI:  Yes, relevant to retaliation.                  16:34:55

```
 1              THE COURT:  All right.  Do you still feel they're

 2   relevant?

 3              MR. GIANNINI:  Your Honor, as I mentioned and asked

 4   before, we -- we feel that it's a distraction.  We don't need

 5   it.  I believe that Ms. McCarthy overreacted.  I believe       16:35:15

 6   Mr. Savoy overreacted --

 7              THE COURT:  I believe you overreacted, too, sir.

 8              MR. GIANNINI:  Maybe I overreacted, too, but if I

 9   overreacted, it was the reaction of everyone around me that

10   caused the reaction.                                           16:35:28

11              THE COURT:  Let me ask you, did Mr. Savoy come back to

12   you and say:  I don't think we should include this in the

13   complaint?

14              MR. GIANNINI:  I'm sorry?

15              THE COURT:  Did he come back and say:  I don't think  16:35:35

16   we should include paragraph 73 in the amended complaint?

17              MR. GIANNINI:  I think there was another paragraph

18   that was in the complaint before paragraph 73 was in it.

19   That's my recollection, Your Honor.

20              THE COURT:  Mr. Savoy, do you have anything you want   16:35:56

21   to add on this?

22              MR. SAVOY:  It wasn't specifically paragraph 73 that I

23   told him not to include, because I didn't -- you know, he

24   authored paragraph 73.  It was specifically I did not want to

25   include anything about the communications that I had with       16:36:10
```

1   Ms. McCarthy.  I made this abundantly clear to him that I

2   thought it wasn't relevant and that there was no need to bring

3   a motion into the case.

4           THE COURT:  Is that correct, Mr. Giannini?

5           MR. GIANNINI:  Yes, and that was also correct that we    16:36:21

6   discussed it further and he approved it and it was filed after

7   reviewing it and the --

8           THE COURT:  And it's also correct, isn't it,

9   Mr. Savoy, that you in fact filed a statement under oath that

10  all of the statements made in the amended complaint were      16:36:38

11  correct.

12          MR. SAVOY:  I still believe that as 73 reads, that is

13  my interpretation, and yes, I still submitted that, and I would

14  still say that I believe that that is my recollection of what

15  happened, yes, Your Honor.                                    16:36:51

16          THE COURT:  All right.

17          MR. SAVOY:  I did not believe in the relevance at the

18  time, and I didn't want to bring in this because I knew it

19  would come to something of this nature, and that was where the

20  dispute of whether we should include it or not include it came 16:37:01

21  into place.

22          THE COURT:  All right.  Do you have anything else you

23  want to say, Mr. Giannini?

24          MR. GIANNINI:  Only, Your Honor, that I request that

25  you allow us to dismiss 73, and --                            16:37:14

1    THE COURT:  I've already allowed you to dismiss 73.

2   Well, actually, I've granted Ms. McCarthy's motion to strike

3   paragraph 73.

4    MR. GIANNINI:  Well, the -- the one thing I think that

5   it's important that we add was -- is that it wasn't just the                16:37:29

6   motion that Ms. McCarthy filed with regard to 73.  There were a

7   number of other facts that she indicated in her motion which --

8   specifically like he had not read the complaint before he filed

9   it, and he didn't know what was in it, and that he had no idea,

10   essentially, what was going on.  These are facts that are                   16:38:00

11   alleged by Ms. McCarthy in her motion to dismiss it that are

12   completely bogus.  They have no basis in fact.

13    We have e-mails from clients.  We have 15 or 16

14   different drafts of the complaint that both Mr. Savoy and I

15   went over line by line by line for almost a year.  So the issue             16:38:22

16   that we confronted was statements are being made that are

17   completely false, statements are being made that have no

18   bearing on this issue, on the merits of these claims, we want

19   to focus on the merits, and I have nothing further to add, Your

20   Honor.  Thank you.                                                          16:38:51

21    THE COURT:  All right.  Ms. McCarthy, you have

22   anything else you wish to say?

23    MS. McCARTHY:  Thank you, Your Honor.  Just that I do

24   believe that the voicemail speaks for itself.  The e-mails

25   attached to the motion to strike demonstrate this is not a "he             16:39:05

1    said/she said."

2            THE COURT:  Yeah.

3            MS. McCARTHY:  Thank you.

4            THE COURT:  Mr. Savoy?

5            MR. SAVOY:  Yes, Your Honor.                    16:39:10

6            THE COURT:  You don't have a lot of money and you're

7    not able to come back.  Do you want to have a hearing on your

8    ability to practice law in this court, or the revocation of

9    your status that is certainly -- or that currently allows you

10   to practice pro hac vice here?                          16:39:25

11           MR. SAVOY:  Can I have a moment to think about that,

12   Your Honor?

13           THE COURT:  You may.

14           MR. GIANNINI:  May we have 30 seconds, Your Honor?

15           THE COURT:  If he wishes to consult with you,       16:39:43

16   Mr. Giannini, he may do so.

17           MR. SAVOY:  I would like to speak with co-counsel

18   briefly.  Thank you, Your Honor.

19           THE COURT:  Um-hum.

20           (Pause in proceedings.)                           16:39:51

21           MR. SAVOY:  Your Honor, as far as my right or

22   privilege to -- privilege, I should consider it, to practice in

23   this court in this matter, I do not want to lose in general my

24   ability to practice in the District Court of Arizona.  I do

25   have family and friends that live in this district and I do    16:42:04

1    believe that this is a place that I will argue in the future.

2         I understand that there is a lot of problems with my

3    involvement in this case currently.  I would ask if it would be

4    amendable to the Court to relieve me as counsel in this matter,

5    but not revoke my pro hac vice admission in a way that would          16:42:21

6    affect my ability to practice in the federal district courts of

7    Arizona in the future.

8         If that's not amendable to the Court, I do believe

9    that the allegations that we have set forth today that we

10   can -- the ones I have set forth today, that I can prove them        16:42:35

11   through evidence.  I do not have the means, nor am I prepared

12   to move forward at this time with that sort of a hearing.

13        I would be more than willing to -- you know, I know

14   that in Los Angeles there's telephonic appearances in courts

15   for certain hearings.  If that was amendable to the Court and        16:42:52

16   you wanted to go through the pro hac vice and see if it should

17   be revoked, which in turn would basically negate me from being

18   able to practice in this district court in my career, I would

19   be amendable to doing a phone conference, but I would ask the

20   Court first if you would just relieve me as counsel in this          16:43:09

21   case and allow me to practice in the Arizona district courts in

22   the future.  I know that if you revoke my pro hac vice status

23   that it will severely impair my ability to practice in this

24   state's federal courts.

25             THE COURT:  Ms. McCarthy, do you have anything you          16:43:27

32

```
 1  wish to say?

 2          MS. McCARTHY:  I don't, Your Honor.

 3          THE COURT:  Well, I'm going to take the matter under

 4  advisement.

 5          MR. SAVOY:  Okay, Your Honor.                        16:43:35

 6          THE COURT:  Because frankly, sir, I will tell you

 7  this.  You're a young lawyer, so I'll give you a little bit of

 8  a break.  But what you did was -- was more than foolish; it was

 9  dishonest, and in my view it's perjurious.

10          I am not going to refer you to the United States     16:43:50

11  Attorney for prosecution, although I think perhaps I should.  I

12  am not going to report you to the State Bar of California

13  unless I am required to do so.  But I also don't think removing

14  you from this case is sufficient punishment, nor will it teach

15  you a lesson.                                                16:44:07

16          I don't necessarily have, in anticipation, removing

17  you for all time from pro hac vice status, but I certainly

18  have, in anticipation, removing you from a period to practice

19  pro hac vice status here, and that is not to say that you don't

20  have to report that in other bar applications --             16:44:28

21          MR. SAVOY:  Yes, Your Honor.

22          THE COURT:  -- when you report in the future.

23          But I think what you did was serious enough that it --

24  that I'm not going to simply allow you to withdraw in this

25  action.                                                      16:44:39
```

1        MR. SAVOY:  I understand, Your Honor.

2        THE COURT:  So I am going to contemplate what I can

3   and should do, and what is just, and at the same time takes

4   into account your young -- your lack of experience, but at the

5   same time you knew what you were doing when you signed that                   16:44:54

6   affidavit stating that it was true after having gone back to

7   Mr. Giannini and said you didn't want to put it in there.  You

8   had read it by that time.  You had signed it.  It is not true.

9   You are -- you are standing by it, but you can't stand by

10  everything in there.                                                          16:45:10

11       MR. SAVOY:  I'm just standing by my interpretation of

12  the conversation.  And I know that it was highly colored, and I

13  don't know that my interpretation of what happened or my

14  recollection is all that clear, because I was in a huge fog of

15  emotion at that point in time.                                                16:45:23

16       THE COURT:  All right.  Well, I'm not imposing any

17  sanction on you at this time.

18       MR. SAVOY:  Thank you, Your Honor.

19       THE COURT:  I'm going to notice a hearing.

20       MR. SAVOY:  Okay.                                                         16:45:29

21       THE COURT:  I'm going to allow you to attend the

22  hearing in person.  I don't know whether I'm going to allow you

23  to attend telephonically.  If you choose to attend

24  telephonically and you wish to request it, I'll consider it at

25  that time.                                                                    16:45:41

```
 1              MR. SAVOY:  Okay, Your Honor.
 2              THE COURT:  The hearing will still be a real hearing.
 3    You will be able to demonstrate, if you wish, put on any
 4    evidence suggesting that you shouldn't be sanctioned at all.
 5              I think as we stand here there is certainly a basis to    16:45:48
 6    hold such a hearing, and I do not think under the circumstances
 7    that if the allegation -- if my view of what the allegations
 8    are is borne out, that simply allowing you to remove yourself
 9    from this action is sufficient sanction, and at least want to
10    reserve the right to give you more of a sanction, even if not a    16:46:08
11    lifetime sanction from appearing in the state -- in the United
12    States district courts for the District of Arizona.
13              So I'm going to look at that, I will issue an order
14    shortly, and it will line out what I'm going to do with respect
15    to you.  All right?                                                16:46:25
16              MR. SAVOY:  Thank you, Your Honor.
17              THE COURT:  Thank you.
18              Mr. Giannini -- do you have anything you wish to say
19    with respect to Mr. Giannini, Ms. McCarthy?
20              MS. McCARTHY:  Your Honor, again, the record before       16:46:34
21    you, I believe, speaks for itself.  Thank you.
22              THE COURT:  Well, Mr. Giannini, I don't have any basis
23    to believe that you committed perjury.  I do believe that what
24    you authored was unwise at best, and when you insisted on
25    keeping it in after Mr. Savoy came back and suggested you take      16:46:59
```

1    it out is concerning to me.

2         But it was Mr. Savoy who was your attorney.  It was

3    Mr. Savoy who asserted that it was all true.  He did so under

4    oath.  He signed it.  He signed the response to the motion to

5    strike and you didn't do that.  So I'm not going to hold a          16:47:18

6    hearing with respect to you about whether or not I ought to

7    revoke your pro hac vice status; it has been granted.

8         But I will tell you that if your conduct in the

9    remainder of this litigation suggests that you are breaching

10   your ethical rules, I will notice up such a hearing.              16:47:36

11        Do you understand that?

12        MR. GIANNINI:  Yes, Your Honor.

13        THE COURT:  All right.  Is there anything more you

14   would like to say?

15        MR. GIANNINI:  No, Your Honor.                               16:47:43

16        THE COURT:  All right.

17        Anything else, Ms. McCarthy?

18        MS. McCARTHY:  No, Your Honor.  Thank you.

19        THE COURT:  Thank you.

20        I'm going to return -- Mr. Giannini, I'm going to            16:47:57

21   return this to you.

22        Ms. McCarthy, if I do -- as I do notice up a hearing

23   for Mr. Savoy, I may request your attendance --

24        MS. McCARTHY:  Yes, Your Honor.

25        THE COURT:  -- and participation as a witness at that        16:48:14

```
 1   time.

 2           MS. McCARTHY:  Yes, Your Honor.

 3           THE COURT:  All right.

 4           MS. McCARTHY:  Thank you.

 5           THE COURT:  Thank you.                    16:48:22

 6           (Proceedings concluded at 4:48 p.m.)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1
 2                          C E R T I F I C A T E
 3
 4
 5
 6
 7              I, GARY MOLL, do hereby certify that I am duly
 8      appointed and qualified to act as Official Court Reporter for
 9      the United States District Court for the District of Arizona.
10              I FURTHER CERTIFY that the foregoing pages constitute
11      a full, true, and accurate transcript of all of that portion of
12      the proceedings contained herein, had in the above-entitled
13      cause on the date specified therein, and that said transcript
14      was prepared under my direction and control.
15
16
17              DATED at Phoenix, Arizona, this 5th day of March,
18      2013.
19
20
21                              s/Gary Moll
22                              _____
23
24
25
```