WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

National Association for the Advancement of Multijurisdiction Practice; Allison Girvin; Mark Anderson; and Mark Kolman,

        Plaintiffs,

v.

Hon. Rebecca White Berch, Chief Justice; Hon. W. Scott Bales, Vice Chief Justice; Hon. John Pelander; and Hon. Robert M. Brutinel, Justices,

        Defendants.

No. CV-12-1724-PHX-BSB

**ORDER**

In this matter, Plaintiffs, the National Association for the Advancement of Multijurisdiction Practice (the NAAMJP), Allison Girvin (Girvin), Mark Anderson (Anderson), and Mark Kolman (Kolman), challenge Arizona Supreme Court Rule 34(f), which provides for admission on motion to the Arizona Bar (the AOM Rule). (Doc. 36.) Plaintiffs allege that Arizona's AOM Rule is unconstitutional because it allows admission on motion for attorneys admitted in states having reciprocal admission rules for Arizona attorneys (reciprocity states), but requires attorneys admitted to practice law in states that do not have reciprocal admission rules (non-reciprocity states) to take the uniform bar examination (UBE) to gain admission to the Arizona Bar. (*Id.*) Plaintiffs seek declaratory and injunctive relief; specifically Plaintiffs request an order declaring Arizona's AOM Rule unconstitutional and enjoining its enforcement. (*Id.* at ¶ 97.)

The parties have filed several dispositive motions. Plaintiffs have filed a motion for summary judgment (Doc. 28), and Defendants have filed a motion to dismiss [1] (Doc. 52) and a cross motion for summary judgment.[2] (Doc. 54.) After the dispositive motions were fully briefed, the NAAMJP and Kolman filed a motion to admit Kolman to the Arizona Bar. (Doc. 90.) Plaintiffs also filed a motion to amend the Second Amended Complaint to add a party. (Doc. 95.) As set forth below, the Court grants summary judgment in Defendants' favor on Plaintiffs' claims and denies Defendants' motion to dismiss as moot. The Court also denies Plaintiffs' motion for summary judgment,[3] denies Plaintiffs' motion to admit Kolman to the Arizona Bar, and denies Plaintiffs' motion to amend.

---

[1] In their motion to dismiss, Defendants argue that the Second Amended Complaint should be dismissed for violating Rule 8, which requires a "short and plain statement" of the claims that is "simple, concise, and direct." (Doc. 52 at 24 (citing Fed. R. Civ. P. 8(a)(1) and (2)).) The Second Amended Complaint — which is comprised of ninety-seven paragraphs, forty-six footnotes, and forty-nine pages of legal and policy arguments, conclusory allegations, and miscellaneous irrelevant discussions — does not comply with Rule 8 and the Court could dismiss it on that basis. However, considering the procedural posture of the case, and in the interest of judicial economy, the Court declines to dismiss the Second Amended Complaint for violating Rule 8 and will address the merits of the parties' arguments.

[2] Plaintiffs have requested oral argument on the dispositive motions. (Doc. 84.) Because the parties have exhaustively briefed the pending motions with hundreds of pages of argument in numerous filings (Docs. 28, 52, 53-1, 54, 54-1, 69, 70, 70-1, 71, and 72), the Court finds that oral argument is not necessary to resolve the pending motions and denies Plaintiffs' request. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999) (explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily, oral argument is not required).

[3] Plaintiffs filed their Complaint on August 13, 2012 (Doc. 1), an Amended Complaint on October 15, 2012 (Doc. 14), and the Second Amended Complaint on December 21, 2012. (Doc. 36.) Plaintiffs filed their motion for summary judgment on December 6, 2012 (Doc. 28), *before* filing their Second Amended Complaint, and therefore that motion was technically mooted by that complaint. Plaintiffs, however, did not file an additional motion for summary judgment, nor did they seek leave to apply the arguments in their motion for summary judgment to the claims in their Second Amended Complaint. Defendants, nonetheless, filed a response to Plaintiffs' motion for summary judgment, which they combined with a cross motion for summary judgment. (Doc. 54.) Plaintiffs filed a reply in support of their motion for summary judgment consolidated with their opposition to Defendants' motion for summary judgment and motion to dismiss. (Doc. 69.) Plaintiffs also filed a separate opposition to Defendants' motion for summary judgment and motion to dismiss. (Doc. 70.) Although the procedural history is convoluted, the parties' motions for summary judgment have been fully briefed and the Court has considered the parties' arguments.

# I. Background

## A. Plaintiff NAAMJP and the Individual Plaintiffs

The NAAMJP is a non-profit corporation that describes its mission as improving the legal profession by promoting the adoption of the American Bar Association's (ABA) recommendation for reciprocal bar admission. (Doc. 36 at 4-5; Russell Decl. ¶¶ 1and 3.)[4] Plaintiffs' counsel Joseph Giannini, who is also a director of the NAAMJP (Doc. 54-1 ¶ 32; Doc. 70-1 ¶ 32), has filed numerous challenges to state and federal bar admission requirements on a variety of grounds, including the Supremacy Clause, the Commerce Clause, Title VII, the Fifth Amendment right to property and right to travel, and the Full Faith and Credit Clause. *See Paciulan v. George*, 229 F.3d 1226, 1228 (9th Cir. 2000) (citing *McKenzie v. Rehnquist*, 1999 WL 1215630 (D.C. Cir. Nov. 22, 1999)); *Morissette v. Yu*, 1994 WL 123871 (9th Cir. Apr. 11, 1994); *Giannini v. Real*, 911 F.2d 354 (9th Cir.1990); *Giannini v. Comm. of Bar Exam'rs*, 847 F.2d 1434 (9th Cir. 1988)).

Plaintiff Kolman has been a licensed Maryland attorney since 1971. (Doc. 36 at 6; Kolman Decl. ¶ 1.) Kolman has also been admitted by waiver to practice in the District of Columbia, which has reciprocity with Arizona.[5] (Doc. 69 at 9 n.3) Kolman is a partner with Dickstein Shapiro LLP in Washington, D.C. (Kolman Decl. ¶ 4.) He moved to Arizona in 2008. (*Id*. at ¶ 11.) Kolman attests that he has obtained a certificate of completion of the Arizona Law for Admission on Motion Course and passed the Multi-State Professional Responsibility Examination (MPRE). (*Id*. at ¶ 13.) He also attests that he has provided the Arizona Committee on Character and Fitness the documentation required for admission on motion. (*Id*.) Kolman applied for, and was denied, admission

---

[4]     Plaintiffs attached to their motion for summary judgment the declarations of Jeffrey Russell, Girvin, Anderson, and Kolman (Doc. 28, Exs. 1-4). Although Plaintiffs did not comply with the Local Rules' requirement that a party file a statement of facts "separate from the motion and memorandum," LRCiv. 56.1, the Court will not deny Plaintiffs' motion on that basis.

[5]     A "List of Reciprocal and Non-Reciprocal Jurisdictions with Arizona for Admission on Motion" is located at www.azcourts.gov.

on motion to the Arizona Bar because his state of licensing, Maryland, does not have reciprocity with Arizona. (*Id*. at ¶ 14.) On February 24, 2011, Kolman filed a petition for review with the Arizona Supreme Court. (*Id*. at ¶ 15.) The court denied his petition on April 19, 2011. (*Id*.)

Plaintiff Girvin is a licensed California attorney. (*Id*. at 8; Girvin Decl. ¶ 2.) She moved to Arizona in 2012. (Doc. 36 at 8.) Girvin received a score of 272 on the UBE administered in Arizona (Arizona UBE) in July 2012;[6] her score was one point below a passing score of 273. (Girvin Decl. ¶¶ 13, 15.) Girvin alleges that she failed the examination "after counsel for defendants communicated [defense counsel] had the connections, power, and ruthless intent to retaliate for filing this lawsuit." (Doc. 36 at 8; Girvin Decl. ¶¶ 16-17.) Girvin scored 134.6 on the MBE, a portion of the bar examination consisting of 200 multiple choice questions. (Girvin Decl. at ¶¶ 15, 19.) Girvin attests that the Arizona Supreme Court and the National Conference of Bar Examiners have refused to disclose a breakdown of her MBE score, or her state and national rank on the MBE test. (*Id*. at ¶ 20.) Girvin scored 137.4 on the MEE, the essay portion of the UBE. (*Id*. at ¶ 15.) She attests that the Arizona Supreme Court has refused to provide a breakdown of her scores on the MEE. (*Id*. at ¶ 21.)

Plaintiff Anderson is a licensed Montana attorney. (Doc. 36 at 9; Anderson Decl. ¶ 1.) Anderson attests that Arizona's rules regarding admission on motion have deterred him from moving to Arizona to practice law. (Anderson Decl. ¶¶ 1-2.) He alleges that he will move to Arizona "if Arizona abrogates its tit-for-tat bar admission Rule . . . ." (Doc. 36 at 9.)

---

[6]    Arizona adopted the Uniform Bar Examination (UBE) and first administered the UBE in July 2012. *See* www.ncbex.org. The UBE consists of the Multistate Essay Examination (MEE), the Multistate Bar Examination (MBE), and two Multistate Performance Test (MPT) tasks. *Id.*

## B. Admission to the Arizona Bar and Rule 34

The Rules of the Arizona Supreme Court provide three methods of admission to the practice of law in Arizona: (1) admission by Arizona UBE (Ariz. R. Sup. Ct. 34(a)); (2) admission on motion (Ariz. R. Sup. Ct. 34(f)); and (3) admission by transfer of UBE score from another jurisdiction (Ariz. R. Sup. Ct. 34(h)).

The Arizona Supreme Court Committees on Examinations and Character and Fitness make initial determinations regarding admission to the bar based on educational and fitness findings. (DSOF ¶¶ 1,4, Ex. A.)[7] A person aggrieved by a decision of either Committee may file a petition for review with the Arizona Supreme Court pursuant to Ariz. R. Sup. Ct. 36(g)(1). The Arizona Supreme Court has exclusive jurisdiction to make the ultimate decision regarding who may practice law in Arizona and under what conditions. (DSOF ¶ 2; Ex. A.); *see also* Ariz. R. Sup. Ct. 31.

Plaintiffs challenge the Arizona Supreme Court's rule governing admission on motion, Rule 34(f)(1). When Plaintiffs filed this matter, Rule 34(f) provided that:

> 1. An applicant who meets the requirements of (A) through (H) of this paragraph (f)(1) may, upon motion, be admitted to the practice of law in this jurisdiction. The applicant shall:
>
> A. have been admitted by bar examination to practice law in another jurisdiction allowing for admission of licensed Arizona lawyers on a basis equivalent to this rule;
>
> * * *
>
> C. have been primarily engaged in the active practice of law in one or more states, territories, or the District of Columbia for five of the seven years immediately preceding the date upon which the application is filed.

Ariz. R. Sup. Ct. 34(f)(A) and (C).

---

[7] Citations to "DSOF" are to Defendants' Statement of Facts in Support of their Motion for Summary Judgment, located at exhibit 1 to Defendants' Motion for Summary Judgment. (Doc. 54, Ex. 1.) Exhibit A to Defendants' Statement of Facts is the Declaration of Emily Holliday, an employee of the Administrative Office of the Courts, and manager of Attorney Admissions Unit, Certification and Licensing. (*Id.*) Plaintiffs object that paragraphs one through five of Defendants' statement of facts are immaterial and irrelevant. Because these paragraphs discuss procedures for admission to the Arizona Bar, which are relevant to the issues in this case, Plaintiffs' objections are unfounded. (Doc. 70, Ex. 1 at 4.)

Effective July 1, 2013, the Arizona Supreme Court expanded Rule 34(f)(1) to allow attorneys to apply for admission on motion to the Arizona Bar if they have been "admitted by bar examination to practice law in one or more states, territories, or the District of Columbia, and have been admitted to and engaged in the active practice of law for at least five years in another jurisdiction or jurisdictions allowing for admission of licensed Arizona lawyers on a basis equivalent to this rule." Ariz. R. Sup. Ct. 34(f) (2013).

Under this amendment, attorneys who were admitted by bar examination in a non-reciprocal jurisdiction, and then became admitted by motion and practiced in a jurisdiction that Arizona deems reciprocal, such as the District of Columbia, may also apply for admission on motion. Although this amendment to Rule 34(f) likely increases the number of attorneys eligible for admission on motion, it does not render the pending action moot because it does not abrogate the reciprocity requirement at the heart of Plaintiffs' challenge to that rule.

**II.** **Judicial Notice**

Before considering the pending motions, the Court considers Plaintiffs' request that the Court take judicial notice that the State of Montana adopted the UBE in July 2013. (Docs. 87 and 88.) Defendants oppose this request and argue that Montana's adoption of the UBE is not material to the issues before the Court. (Doc. 89.) Defendants also argue that Plaintiffs' request for judicial notice improperly includes additional arguments related to issues that the parties have fully briefed.

Under Federal Rule of Evidence 201, a trial court may take judicial notice of facts "if requested by the party and supplied with the necessary information." Fed. R. Evid. 201(d). A fact is appropriate for judicial notice if it is "not subject to reasonable dispute because it is (1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined by from sources whose accuracy cannot reasonably be questioned." *Id.* at 201(b). Facts contained in public records are considered

appropriate subjects of judicial notice. *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 (9th Cir. 2006).

The Court confirmed that the Montana Supreme Court adopted the UBE on July 3, 2013 by consulting the National Conference of Bar Examiners website, www.ncbex.org and the Montana Bar Association's website, www.montanabar.org. Although the Court will take judicial notice that the Supreme Court of Montana adopted the UBE in July 2013, that fact is not relevant to the issues in this case. Because the Court did not permit additional briefing on the pending dispositive motions, the Court will not consider Plaintiffs' other arguments asserted in its request for judicial notice.

## III. Standards of Review

### A. Summary Judgment Motions

Federal Rule of Civil Procedure 56 authorizes the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);[8] *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying the portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.

If the moving party meets its initial burden, the opposing party must establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The opposing party must demonstrate the existence of a factual dispute that is both material, meaning it affects the outcome of the claim under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, meaning "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Freecycle Sunnyvale v.*

---

[8] The 2010 amendments to Rule 56 did not alter the standard for granting summary judgment and, therefore, cases applying the prior version of Rule 56 remain applicable. *See* Fed. R. Civ. P. 56 advisory committee's note (2010 amendments).

*Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010) (quoting *Anderson*, 477 U.S. at 248). The opposing party "must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 252). However, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B. Rule 12 Motions to Dismiss

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. "[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. When a claim is challenged under this rule, the court construes the complaint liberally in the plaintiff's favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007). The court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inferences in the plaintiff's favor, and views the complaint in the light most favorable to the plaintiff. *Id.* at 555.

### IV. Summary of the Claims and Defenses

Plaintiffs' Complaint and First Amended Complaint named the Arizona Supreme Court and four Arizona Supreme Court Justices as Defendants. (Docs. 1 and 14). In the Second Amended Complaint, however, Plaintiffs omitted the Arizona Supreme Court as a Defendant, and instead named as Defendants only four Arizona Supreme Court Justices, in their official capacities. (Doc. 36 at 10.)

Plaintiffs bring this suit pursuant to 42 U.S.C. § 1983 and assert violations of the First Amendment, the Privileges and Immunities Clause, the Dormant Commerce Clause, and the Fourteenth Amendment's Equal Protection and Due Process Clauses. (Doc. 36.) Plaintiffs seek summary judgment on all the claims in their Second Amended Complaint, but their motion addresses only their assertion of standing, their First Amendment

Claims, excluding Girvin's retaliation claim, and their right to travel claim under the Privileges and Immunities Clause. (Doc. 28.)

In their motion to dismiss and their motion for summary judgment, Defendants assert nearly identical arguments that Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction, or summary judgment entered in Defendants' favor, because Plaintiffs claims are barred by: (1) the Eleventh Amendment; (2) the *Rooker-Feldman* doctrine; (3) judicial and legislative immunity; and (4) Article III's justiciability doctrines. (Docs. 52 and 54.) Defendants also argue that Plaintiffs claims are barred because they failed to exhaust state remedies by seeking a rule change through Ariz. R. Sup. Ct. 28. Defendants further argue that they are entitled to summary judgment, or dismissal for failure to state a claim, because Plaintiffs' claims lack merit. This argument is directed to Plaintiffs' claims under the First Amendment, the Dormant Commerce Clause, the Privileges and Immunities Clause, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. (Docs. 52 and 54.)

## V.  Analysis of Potential Bars to Plaintiffs' Claims

### A.  Eleventh Amendment Immunity

Defendants first argue that this Court lacks subject matter jurisdiction over Plaintiffs' claims because the State of Arizona and the Arizona Supreme Court are not amenable to suit in federal court under the Eleventh Amendment. (Doc. 54 at 4.) The Eleventh Amendment bars suit against a state unless Congress has abrogated the state's sovereign immunity or the state has waived it. *Holley v. Cal. Dep't of Corrs.*, 599 F.3d 1108, 1111 (9th Cir. 2010). This protection extends to the agencies and departments of a state. *Id.* "The Arizona Supreme Court . . . is an 'arm of the state' for Eleventh Amendment purposes." *Lucas v. Ariz. Sup. Ct. Fiduciary Certification Program*, 2011 WL 5289774, at *1 (9th Cir. Nov. 3, 2011); *see also Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir.1987) ("[A] suit against the Superior Court is a suit against the State, barred by the eleventh amendment."). Thus, unless an exception

applies, the Eleventh Amendment would bar Plaintiffs from suing the Arizona Supreme Court or the State of Arizona.

Defendants acknowledge that Plaintiffs have not named the State of Arizona or the Arizona Supreme Court as Defendants in the Second Amended Complaint. Rather, the Defendants are four Arizona Supreme Court Justices, acting in their official capacities. (Doc. 36 at 10.) Defendants, however, assert that because Plaintiffs seek relief against "Arizona," the "State," and the "Arizona Supreme Court," and do not seek any relief against the named Justices, their claims are actually against the Arizona Supreme Court or the State of Arizona and are barred by the Eleventh Amendment. (Doc. 54 at 5.)

Relying on *Mothershed v. Justices of the Sup. Ct.*, 410 F.3d 602 (9th Cir. 2005), Defendants further argue that Plaintiffs' claims against the Justices are really claims against the Arizona Supreme Court because that court promulgated the challenged AOM Rule at the direction of the State as a sovereign. In *Mothershed*, the plaintiff alleged that certain Arizona rules governing *pro hac vice* admission and admission requirements for out-of-state attorneys violated the Sherman Act and the First Amendment. *Id.* at 605. Although the defendants in *Mothershed* were state bar officials and state supreme court justices, the Ninth Circuit did not address whether a suit against these individuals would be barred under the Eleventh Amendment as a suit against the state.

Instead, the Ninth Circuit found that the individual defendants were state actors for purposes of *Parker* immunity to antitrust liability.[9] *Id.* at 608-09. The Ninth Circuit stated that "although [plaintiff's] claim is nominally against certain state bar officials and the Supreme Court Justices in their individual capacities, it is the Supreme Court of Arizona that is the real party in interest because the state bar rules that [plaintiff] is challenging are promulgated by the court in its supervisory role over the practice of law

---

[9]    In *Parker v. Brown*, the Supreme Court held that the Sherman Act does not apply to certain categories of state action. *Id.* at 608 (citing *Parker v. Brown*, 317 U.S. 341, 352 (1943)). The Supreme Court later held that one of the exempted categories of state action is the regulation of attorneys by a state supreme court. *Id.* (citing *Bates v. State Bar of Ariz.*, 433 U.S. 350, 359 (1977)).

in Arizona." *Id.* at 609. Thus, the court concluded that the plaintiff's antitrust claims were barred. *Id.*

The court, however, did not find that the Eleventh Amendment, or any other form of immunity, barred the plaintiff's First Amendment claims against the defendants, even though it had found that these defendants were acting at the direction of the state as a sovereign. Indeed, the court considered the merits of the plaintiff's First Amendment claims. *Id.* at 610-612 (finding claims failed as a matter of law because the challenged rules were reasonable time, place, and manner restrictions on Arizonan's First Amendment right to obtain and consult with a lawyer). Thus, *Mothershed* does not establish that the Eleventh Amendment bars Plaintiffs' claims.

Furthermore, Plaintiffs argue that the *Ex Parte Young* exception to Eleventh Amendment immunity applies and allows their claims. (Doc. 69 at 7.) The *Ex Parte Young* exception allows government officials to be sued in their official capacity for violating federal law. *Ex Parte Young*, 209 U.S. 123, 160 (1908); *see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris (Harris)*, ___ F.3d ___, 2013 WL 4615131 (9th Cir. Aug. 30, 2013); *Salt River Project Agr. Imp. and Power Dist. v. Lee (SRP II)*, 672 F.3d 1176, 1181 (9th Cir. 2012). The *Ex Parte Young* exception only permits suits for prospective injunctive relief. *Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir. 1984). Additionally, the *Ex Parte Young* exception "requires a 'special relation' between the state officer sued and the challenged statute, such that the officer has 'some connection with the enforcement of the act [.]'" *Paisley v. Darwin*, 2011 WL 3875992, at *3 (D. Ariz. Sept. 2, 2011) (quoting *Confederated Tribes & Bands of Yakama Indian Nation v. Locke*, 176 F.3d 467, 469 (9th Cir.1999)).

Here, Plaintiffs seek only prospective injunctive relief, they allege violations of federal law, and they are suing the government actors who allegedly violated federal law in his or her official capacity. (*See* Doc. 36 at 10.) In an analogous case, the Ninth Circuit held that a plaintiff could sue tribal officials, including Justices of the Navajo Nation Supreme Court. *SRP II*, 672 F.3d at 1181. In so holding, the Court stated, "[t]his

lawsuit for prospective injunctive relief may proceed against the officials under a routine application of *Ex Parte Young*." *Id.* at 1177; *see also Harris*, 2013 WL 4615131, at *3 (under the *Ex. Parte Young* exception, the California Attorney General was not immune under the Eleventh Amendment because she had the duty to prosecute any violations of the allegedly unconstitutional statute). Accordingly, the Eleventh Amendment does not bar Plaintiffs' claims in this suit. *See Giannini v. Real*, 711 F. Supp. 992, 996 (C.D. Cal. 1989) (finding that although the Eleventh Amendment barred damage claims against the State of California, plaintiff's § 1983 claims for injunctive relief against state officials were not barred by the Eleventh Amendment).

## B.     The *Rooker-Feldman* Doctrine

Defendants next argue that the *Rooker-Feldman* doctrine bars Kolman's and Girvin's claims. (Doc. 54 at 5-7.) Although 28 U.S.C. § 1331 usually vests federal courts with jurisdiction over federal constitutional claims, the *Rooker-Feldman* doctrine is an exception that applies to preclude jurisdiction. This exception arises out of a negative inference from 28 U.S.C. § 1257, the statute that grants jurisdiction to review a state court judgment only to the United States Supreme Court, and not the federal district courts. *See D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Under the *Rooker-Feldman* doctrine, the federal district courts lack subject matter jurisdiction over a suit that is a "de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004); *Rooker*, 263 U.S. 413; *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986). This doctrine applies even when the challenge to the state court decision involves federal constitutional issues. *Feldman*, 460 U.S. at  484–86.

The Supreme Court, however, has emphasized the *Rooker-Feldman* doctrine's limited scope explaining that "the *Rooker-Feldman* doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*

*Corp.*, 544 U.S. 280, 283-84 (2005). The Court noted that in both *Rooker* and *Feldman*, the cases that gave rise to the doctrine, the plaintiffs were directly challenging a state court judgment. *Exxon*, 544 U.S. at 284-85 (noting that the plaintiffs in *Rooker* alleged that the "adverse state-court judgment was rendered in contravention of the Constitution" and so should be declared "null and void," and that the plaintiffs in *Feldman*, in part, directly challenged a state court's denial of their petitions seeking waiver of a rule that required bar applicants to have graduated from an ABA-approved law school). In both cases, the plaintiffs "called upon the District Court to overturn an injurious state-court judgment." *Id*. at 291-92.

### 1. Plaintiffs' "As Applied" Challenges to the AOM Rule

The Second Amended Complaint alleges that, on its face and as applied to Plaintiffs, the AOM Rule violates the First Amendment (Count I). (Doc. 36 at 32-39.) The Second Amended Complaint also generally asserts that Rule 34(f)(1)(A) and (C) violate the Plaintiffs' rights under the Privileges and Immunities Clause (Count II), the Dormant Commerce Clause (Count III), and the Equal Protection Clause (Count IV). (*Id.* at 39-45.) The Second Amended Complaint further alleges that Girvin's rights under the Due Process Clause of the Fourteenth Amendment were violated when she was assigned a failing grade on the UBE. (Count V.) (*Id*. at 46-48.) Finally, the Second Amended Complaint seeks an order admitting Plaintiffs to the Arizona Bar. (*Id*. at 49.)

Defendants argue that although Kolman and Girvin characterize their claims as facial attacks on the constitutionality of Arizona's AOM Rule, their claims are "inextricably intertwined" with the final decisions of the Arizona Supreme Court denying them admission to the Arizona Bar and, therefore, they are asking this Court to review a state court decision and it lacks jurisdiction to do so. (Doc. 54 at 6) (citing *Craig v. State Bar of Cal*., 141 F.3d 1353, 1354 (9th Cir. 1998).) In the *Rooker-Feldman* context, the phrase "inextricably intertwined" describes the conclusion that a claim asserts an injury whose source is a state court judgment and, therefore, such a claim is barred by *Rooker-Feldman*. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). "The crucial

- 13 -

point is whether the district court is being asked to review the state court decision." *Fayyumi v. City of Hickory Hills*, 18 F. Supp. 2d 909, 913 (N.D. Ill. 1998) (citing *Feldman* 460 U.S. at 483-84 n.16). The Ninth Circuit has explained that "inextricably intertwined" simply means a plaintiff cannot assert legal error of a state court judgment in a district court. *Kougasian*, 359 F.3d at 1142–43.

Kolman applied for admission on motion and the Committee on Character and Fitness denied his admission. The Arizona Supreme Court denied his petition for review. To the extent that Kolman asserts violations of his constitutional rights based on the Arizona Supreme Court's 2011 denial of his application for admission to practice law in Arizona pursuant to Arizona's AOM Rule, he is directly attacking a state court judgment and, under *Rooker-Feldman,* the Court lacks jurisdiction to consider his claims that Arizona's AOM Rule is unconstitutional "as-applied" to him. *See Feldman*, 460 U.S. at 487-88; *Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2009) (affirming district court's ruling that the *Rooker-Feldman* doctrine precluded subject matter jurisdiction over claims for injunctive relief requiring defendants to issue plaintiff a license to practice law). Accordingly, Defendants are entitled to summary judgment on Kolman's "as-applied" challenges to Arizona's AOM Rule. *See Levanti v. Tippen*, 585 F. Supp. 499, 503 (S.D. Cal. 1984) (district court lacks jurisdiction to review denial of admission which amounts to an "as-applied" challenge).

Furthermore, Kolman's motion for an order directing the Arizona Supreme Court to immediately admit him to the Arizona Bar under amended Rule 34(f) would require this Court to overturn the Arizona Supreme Court's prior denial of his application for admission on motion and thus *Rooker-Feldman* bars review of that motion.[10] *See Exxon*, 544 U.S. at 291-92. Accordingly, the Court will deny Kolman's motion for an order

---

[10] In his motion for an order directing the Arizona Supreme Court to admit him to the Arizona Bar (Doc. 90), Kolman argues that he has completed the requirements for admission on motion and that he is eligible for admission on motion under Rule 34(f), as amended July 1, 2013, because he has been admitted to practice in the District of Columbia, which has reciprocity with Arizona. Kolman asks this Court to order the Arizona Supreme Court to immediately admit him to the Arizona Bar without requiring him to take further action.

directing the Arizona Supreme Court to admit him to the Arizona Bar for lack of subject matter jurisdiction.[11] (Doc. 90).

Girvin failed the July 2012 UBE administered in Arizona, but did not petition the Arizona Supreme Court for review of the Committee on Examination's determination of her grade. (DSOF ¶ 28; Doc. 70, Ex. 1 at 6, admitting DSOF ¶ 28.) Girvin alleges that she was denied procedural due process because the results of the Arizona UBE "are secret, [t]he grading policy is secret," and "there is no meaningful opportunity for judicial review" of those results. (Doc. 36 at 47.) Defendants assert that because Girvin did not seek review in the Arizona Supreme Court, the Committee on Examinations' initial determination that she should be denied admission to the Arizona Bar constitutes a final decision of the Arizona Supreme Court, and federal court review of that decision is barred by the *Rooker-Feldman* doctrine. (Doc. 54 at 6.) The *Rooker-Feldman* doctrine does not apply unless the federal plaintiff seeks to "overturn an injurious state-court judgment." *Exxon*, 544 U.S. at 292.

Defendants do not cite any authority that supports their argument that the Committee on Examination's recommendation that Girvin be denied admission to the Arizona Bar constitutes a "state-court judgment" for purposes of the *Rooker-Feldman* doctrine. Instead, Defendants cite *Craig v. State Bar of Cal.,* 141 F.3d 1353 (9th Cir. 1998), to support their argument that Girvin is challenging a decision of the Arizona Supreme Court. In that case, however, the plaintiff sought review of the Committee of Bar Examiners decision in the California Supreme Court and the court denied review. *See Craig*, 141 F.3d at 1353. Thus, in *Craig*, the plaintiff was challenging a decision of the California Supreme Court regarding his bar admission and his claim was barred by

---

[11] Kolman also seeks immediate admission to the bar of the United States District Court for the District of Arizona. (Doc. 90 at 4.) Kolman must comply with Local Rule of Civil Procedure 83.1 to be admitted to the bar of this Court. *See* LRCiv 83.1(a). The Court denies Kolman's request that it "immediately grant" him admission to the District Court without requiring him to follow the procedure set forth in Local Rule 83.1.

the *Rooker-Feldman* doctrine. *Id.* at 1354. Here, because Girvin did not seek review in the Arizona courts, she is not seeking review of a state court judgment. Although Girvin's procedural due process claim may not be subject to review for some other reason, it is not precluded by the *Rooker-Feldman* doctrine.

### 2.    Plaintiffs' Facial Challenges to the AOM Rule

The *Rooker-Feldman* doctrine, however, does not bar Plaintiffs' general challenges to Arizona's AOM Rule. *See Feldman*, 460 U.S. at 1317. Plaintiffs seek an order declaring Ariz. R. Sup. Ct. 34(f) unconstitutional on its face. (Doc. 36 at 49.) This request is not individual to Kolman, Anderson, or Girvin, and it is not based on any Arizona Supreme Court decision denying an individual application for admission on motion to the Arizona Bar. Therefore, this Court has jurisdiction to consider a facial attack on the Arizona AOM Rule. *See Levanti*, 585 F. Supp. at 503 (finding that the district court had jurisdiction over plaintiff's claim that the grading scheme employed by the bar examiners unconstitutionally discriminates against non-residents); *Doe v. Florida Bar*, 630 F.3d 1336, 1341-42 (11th Cir. 2011) (noting that, in contrast to an as-applied challenge, "[a] facial challenge . . . seeks to invalidate a statute or regulation itself" and considering merits of facial challenge to Florida Bar's rules governing recertification process); *Craig,* 141 F.3d at 1354-55 (affirming district court's dismissal of complaint for lack of subject matter jurisdiction because plaintiff's allegations regarding the state bar's refusal to modify the oath to conform with his religious beliefs was personal to him and his "sweeping prayer" for "relief as the Court deems just and proper" did not convert his "distinctly individual claims into a general challenge to the oath requirement.").

### C.    Judicial Immunity

Defendants also assert that this suit is barred because as Arizona Supreme Court Justices they have judicial immunity. (Doc. 54 at 7.) Generally, judges who are sued in their personal capacities for decisions made in their judicial capacities are entitled to absolute judicial immunity. *Forrester v. White*, 484 U.S. 219, 225–26 (1988). Judicial immunity applies "'however erroneous the act may have been, and however injurious in

its consequences it may have proved to the plaintiff.'" *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). "Grave procedural errors or acts in excess of judicial authority do not deprive a judge of this immunity." *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988). Moreover, "judicial immunity is not overcome by allegations or bad faith or malice . . . ." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

Here, Plaintiffs are suing the Defendants in their official capacities, thus a judicial immunity defense is unavailable. In *Kentucky v. Graham*, the Supreme Court explained that personal immunity does not bar official capacity suits:

> When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses[.] In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.

473 U.S. 159, 167–68 (1985) (internal citations and footnote omitted); *see also Pulliam v. Allen*, 466 U.S. 522, 541–542 (1984) ("We conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity."). Accordingly, judicial immunity does not bar this action.

### D. Legislative Immunity

Defendants also assert that "if Plaintiffs had" made allegations related to the adoption of the challenged AOM Rule, they would have absolute legislative immunity. (Doc. 54 at 7.) The Second Amended Complaint, however, does not include allegations related to the adoption of the AOM Rule at issue and thus does not implicate the legislative immunity doctrine. The Court declines to speculate whether legislative immunity might have barred other claims that Plaintiffs could have brought.

### E. Article III Justiciability Doctrines

Defendants next argue that this case does not present a justiciable case or controversy, as Article III requires. They argue that the NAAMJP, Girvin, Kolman, and Anderson lack standing to challenge Arizona's AOM Rule because they lack the requisite

injury. (Doc. 54 at 8-11.) Plaintiffs assert that they having standing because they are injured by Arizona's "tit-for-tat bar admission rules." (Doc. 70, Ex. 1 at 2.)

### 1. The NAAMJP's Standing

Defendants assert that the NAAMJP does not have standing to bring this action because it cannot be the "object of the challenged AOM Rule and accordingly lacks the injury required by Article III." (Doc. 54 at 8.) The standing doctrine ensures that a plaintiff's claims arise in a "concrete factual context" appropriate to judicial resolution. *Valley Forge Christian Coll. v. Ams. United For Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). Standing ensures that the proper party has brought suit. To establish standing, a plaintiff must show that he has suffered a concrete injury, that there is a causal connection between his injury and the defendant's conduct, and that the injury will likely be redressed by a favorable decision. *United States v. Hays*, 515 U.S. 737, 742-43 (1995) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 561; *see also Warth v. Seldin*, 422 U.S. 490, 518 (1975) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.").

### a. Third-Party Standing

The NAAMJP argues that it has third-party standing to assert claims for attorneys who are not before the Court and "who wish to remain anonymous." (Doc. 36 at 5.) Plaintiffs allege that the unnamed attorneys, who are members of the NAAMJP, are "stigmatized, slandered, and humiliated by the Rule 34(f) blanket presumption that they are not competent in their profession." (Doc. 36 at 5.) These allegations do not confer standing on the NAAMJP.

A litigant may bring a case on behalf of a third party in limited circumstances when: "'(1) the litigant has suffered an injury in fact, giving him a sufficiently concrete interest in the outcome of the issue; (2) the litigant has a close relation to the third party;

and (3) there exists some hindrance to the third party's ability to protect his own interest.'" *Nat'l Ass'n for Advancement of Multijurisdiction Practice v. Gonzales*, 2006 WL 3779792, at *3-4 (3d Cir. Dec. 21, 2006) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 189 n. 4 (3d Cir. 2006)). The NAAMJP has not met these requirements.

Even assuming that the NAAMJP has shown some injury and that there is a sufficient relationship between the NAAMJP and its unnamed attorney members, the NAAMJP fails to show how these attorneys are unable to protect their own interests. Accordingly, the NAAMJP does not have third-party standing. *See Gonzales*, 2006 WL 3779792, at *3 (finding that unnamed attorneys that allegedly suffered injuries due to district courts' local rules on admission *pro hac vice* did not confer standing on the NAAMJP).

### b.    First Amendment Standing

The NAAMJP also asserts that it has standing to challenge Arizona's AOM Rule because it is a corporation with a federal right to petition for redress of grievances and "state restrictions on that federal right are subject to First Amendment scrutiny." (Doc. 36 at 5.)  The NAAMJP essentially argues that because the NAAMJP has First Amendment rights, it has standing to challenge Arizona's AOM Rule.  In support of that assertion, the NAAMJP relies on *Citizens United v. Fed. Election Comm.*, 558 U.S. 310 (2010).  The NAAMJP's reliance on *Citizens United* is misplaced.

In *Citizens United*, the Supreme Court considered a non-profit corporation's constitutional challenges to certain provisions of the Bipartisan Campaign Reform Act of 2002.  The Court held "that the First Amendment does not allow political speech restrictions based on a speaker's corporate identity." *Id*. at 337.  Thus, *Citizens United* would support the NAAMJP's position if it were asserting that it has standing to assert that its political speech was restricted because of its corporate identity.  This case, however, does not involve the NAAMJP's political speech or any infringement on its First Amendment rights.  Therefore, the NAAMJP does not have standing to assert the

constitutional claims alleged in the Second Amended Complaint because it has not suffered the requisite injury.

### 2. Girvin's and Anderson's Standing

Defendants also argue that Girvin and Anderson cannot assert the claims in the Second Amended Complaint because they do not satisfy Article III's "case or controversy" requirements. (Doc. 54 at 9.) The exercise of judicial power under Article III of the Constitution depends on the existence of a case or controversy. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). Federal plaintiffs "'must allege some threatened or actual injury resulting from the putatively illegal action.'" *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)). Abstract or hypothetical injury is not sufficient. Plaintiffs must allege that they "have sustained or [are] immediately in danger of sustaining some direct injury" as a result of the challenged statute or official conduct. *Mass. v. Mellon*, 262 U.S. 447, 488 (1923). The injury or threat of injury must be both "real and immediate," and not "conjectural" or "hypothetical." *E.g., Golden v. Zwickler*, 394 U.S. 103, 109–110 (1969).

Defendants argue that Girvin and Anderson have not demonstrated that as a result of Arizona's AOM Rule they have suffered an injury that may be legally redressed.[12] Girvin does not allege that she applied for admission on motion to the Arizona Bar or that the AOM Rule has prevented her from seeking to practice law in Arizona. (Doc. 36 at 38.) Accordingly, Girvin has not presented this Court with a justiciable claim related to Arizona's AOM Rule, and this Court lacks jurisdiction over her constitutional challenges to that rule. *See Arthur v. Sup. Ct. of Iowa*, 709 F. Supp. 157, 162 (S.D. Iowa 1989) (dismissing plaintiffs' claims for lack of standing because they had not applied for admission to the Iowa Bar under the challenged rule); *Nat'l Ass'n of Multijurisdiction Practice*, 2006 WL 3779792, at *3 (finding that NAAMJP's attorney members had not

---

[12] Defendants also argue that Girvin and Kolman lack standing to raise Privileges and Immunities and Commerce Clause claims because they are residents of Arizona. (Doc. 54 at 10.) The Court addresses Plaintiffs' ability to pursue these claims in Section VI.C. Defendants do not challenge Girvin's standing to assert her retaliation claim, which the Court addresses in Section VI.A. (Doc. 54 at 9; Doc. 36 at 8.)

suffered any injury because there was no showing that they had applied to practice in the federal district courts or that they would seek to practice there but-for the local rules).

Anderson also has not applied to practice in Arizona, but he alleges that he has not moved to Arizona and applied to practice law because of the AOM Rule. (Anderson Decl. ¶¶ 1-2.) In *Paciulan*, 38 F. Supp. 2d at 1135-36, the court considered the plaintiffs' constitutional challenges to California's rules on *pro hac vice* admission, even though plaintiffs had not alleged that they had applied for *pro hac vice* status in a particular state court proceeding and that they were denied such status. *Id.* at 1135. The court noted that several Ninth Circuit decisions "note that standing may be found in circumstances like [those before the court] where further application would be futile." *Id.* (citing *Desert Outdoor Adv., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996) ("Desert and OMG also have standing to challenge the permit requirement, even though they did not apply for permits, because applying for a permit would have been futile.")). The court did not resolve the issue of standing, but rather "assum[ed] for purposes of argument that plaintiffs ha[d] standing, [and concluded that] plaintiffs ha[d] nevertheless failed to state a claim." *Paciulan*, 38 F. Supp. 2d at 1136. Here, even assuming that Anderson has standing to challenge Arizona's AOM Rule, as discussed below, Defendants are entitled to summary judgment on his claims.

### F. Exhaustion

Defendants further argue that Kolman, Girvin, and Anderson have not exhausted their claims because they have "not petitioned the Arizona Supreme Court for changes to the AOM Rule in order to initiate discussion about admission on motion in the appropriate state forum." (Doc. 54 at 11.) Defendants argue that because the AOM Rule is a matter of substantial state interest, Plaintiffs should seek changes through state channels. In support of this assertion, Defendants cite *In re Griffiths*, 413 U.S. 717, 723 1973). The *Griffiths* decision recognized that a state has "a constitutionally permissible substantial interest in determining whether a [state bar] applicant possesses 'the character and general fitness requisite for an attorney or counsel-at-law.'" *Id.* (quoting *Law*

*Students Research Council v. Wadmond*, 401 U.S. 154, 159 (1971)). That decision, however, did not address exhaustion of challenges to a state bar's rules related to admission processes. Here, the Court need not determine whether Plaintiffs were required to exhaust their claims by seeking an amendment to the AOM Rule because their claims are subject to summary judgment, as discussed below.

### G. Conclusion Regarding Potential Bars to Plaintiffs' Claims

As set forth above, the Court has considered Defendants' arguments that Plaintiffs' claims are barred or that the Court lacks jurisdiction over these claims The Court finds that (1) the Eleventh Amendment does not bar Plaintiffs' claims because the *Ex Parte Young* exception applies to allow Plaintiffs' claims, (2) under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction over Kolman's "as applied" challenges to Arizona's AOM Rule and his motion for admission to the Arizona Bar because those claims seek review of a state court judgment, (3) the *Rooker-Feldman* doctrine does not bar Girvin's procedural due process claim based on her failing bar score because that claim does not challenge a state court judgment, (4) the *Rooker-Feldman* doctrine does not bar Plaintiffs' general challenges to the AOM Rule because the Court has jurisdiction to consider facial attacks on the rule, (5) the Defendants are not entitled to judicial immunity, which is a form of personal capacity immunity, because they have been sued in their official capacities, (6) the Court will not speculate on whether legislative immunity would apply to bar arguments that Plaintiffs have not asserted, (7) the NAAMJP does not have standing to assert claims on behalf of its attorney members, (8) the Court lacks jurisdiction over Girvin's constitutional challenges to the AOM Rule, except her retaliation claim, because she has not alleged that she suffered an injury as a result of the AOM Rule, and (9) the Court will not determine whether Plaintiffs were required to exhaust their claims by seeking a rule change prior to filing suit.

In the absence of any disputed facts, Defendants are entitled to summary judgment on Kolman's "as applied" challenges, Girvin's challenges to the AOM Rule, except her

retaliation claim, and the NAAMJP's claims.[13]  Because Plaintiffs' other claims are not barred by immunity or lack of jurisdiction, in the following sections the Court addresses Girvin's First Amendment retaliation claim, Girvin's, Kolman's and Anderson's arguments that the AOM Rule facially violates the First Amendment, Anderson's claims under the Privileges and Immunities Clauses, and Plaintiffs' Dormant Commerce Clause, equal protection, and due process claims.  .

## VI.    Analysis of Plaintiffs' Claims

### A.    Girvin's First Amendment Retaliation Claim

In Count I of the Second Amended Complaint, Girvin alleges that "defendants' agents" failed her by one point on the July 12, 2012 Arizona UBE to retaliate against her for "exercising her constitutional right to petition."[14] (Doc. 36 at 38-39.)  Girvin alleges that "the defendants' agents have expressly stated an intention to retaliate, and they have set out to ruin plaintiff's career for exercising her constitutional right to petition."  (*Id.*) Girvin contends that her scores are of passing quality and that she demonstrated more than a minimum level of competence in her answers.  (*Id*. at 39.)  She contends that Arizona's test results are "secret, final, and not reviewable."  (*Id.*)

In her declaration, Girvin avers that she "believe[s] this failing score is the result of retaliation against [her] by agents of the defendants."  (Girvin Decl ¶ 16.)  She further declares that "defendants' agents have expressly stated in blunt and unambiguous terms an intention to retaliate, asserting they would ruin [her] attorney's career if he did not dismiss the lawsuit."  (*Id.* ¶ 17.)  Defendants argue that these statements are not admissible because they are "speculation, opinion, and hearsay."  (Doc. 54 at 12.)

---

[13]    The Court could dismiss these claims under Rule 12(b)(1) or (b)(6), or enter summary judgment under Rule 56.  Because Defendants assert the same arguments in their motion to dismiss and their motion for summary judgment, and because Plaintiffs have also filed a motion for summary judgment, the Court will apply the summary judgment standard and rule on that basis.

[14]    Pursuant to its prior order striking paragraph 73 of the Second Amended Complaint, (Doc. 83), the Court will not consider the allegations in that paragraph.

The Ninth Circuit has held that a free speech retaliation claim is cognizable under section 1983. *See e.g., Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir. 1989) ("Deliberate retaliation by state actors against an individual's exercise of [the right to petition the government for redress of grievances] is actionable under section 1983."); *see also Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977). Although it is not expressly mentioned in the Constitution, retaliation is actionable because retaliatory actions may chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). A plaintiff may demonstrate a First Amendment retaliation claim by showing that defendants intended to interfere with the plaintiff's exercise of his First Amendment rights, and the defendants' acts "would chill or silence a person of ordinary firmness from future First Amendment activities." *See Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999); *see also Pinard v. Clatskanie Sch. Dist.*, 467 F.3d 755 (9th Cir. 2006).

Here, to establish Defendants' liability under § 1983, Girvin must show that Defendants personally participated in the alleged deprivation of her First Amendment rights. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under § 1983 there must be a showing of personal participation in the alleged rights deprivation.") A plaintiff must link the named defendants to the violation at issue. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010). Liability may not be imposed under the theory of respondeat superior, *Iqbal*, 556 U.S. at 676; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009), and administrators may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Additionally, retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, plaintiff must show a nexus between the protected speech and the adverse action. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000).

Here, Girvin alleges that her failing score on the July 2012 Arizona UBE was motivated by the desire of "Defendants' *agents*" to retaliate against her for filing this lawsuit against Defendants. Girvin's claims are directed at unidentified "agents" of Defendants who are not parties to this action. She alleges that "defendants' agents" retaliated against her for filing this action and "have expressly stated an intention to retaliate, and they have set out to ruin plaintiff's career" or to ruin her attorney's career. (Doc. 39 at 38-39.) The Second Amended Complaint lacks specific factual allegations connecting each individually named Defendant to the alleged retaliatory conduct. The allegations do not specify what role each Defendant played in the described conduct and how each Defendant caused, or failed to correct, the alleged harm. In short, Girvin fails to show an affirmative link between the alleged injury and the conduct of the named Defendants. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. 662. Each defendant may only be liable for misconduct directly attributed to him or her because there is no vicarious or respondeat superior liability under § 1983. *Iqbal*, 556 U.S. at 677-79; *see also Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009).

Because § 1983 does not provide for respondeat superior or vicarious liability, Girvin's retaliation claim against "defendants' agents" fails as a matter of law. *See Mann v. Brenner*, 2010 WL 1220963, at *2 (3d Cir. Mar. 30, 2010) (dismissing a First Amendment retaliation claim and noting that vague and conclusory allegations that plaintiff was assessed an unreasonable fine in retaliation for using the legal process failed to state a claim); *Davis v. Ramen*, 2008 WL 39700869, at *6 (E.D. Cal. Aug. 22, 2008) (dismissing First Amendment retaliation claim based on plaintiff's failure to "link each named defendant with affirmative act or omission that demonstrates a violation of plaintiff's federal rights.").

Moreover, Girvin has not presented evidence to create a factual dispute over whether "defendants' agents" assigned a failing score to her on the July 2012 Arizona

UBE in retaliation for her participation in this lawsuit. Defendants, however, have presented evidence that the Committee on Examination consists of twelve members and its duties include administering and grading the Arizona Bar exam. (DSOF ¶ 12.) Although members of the Committee on Examination (Examiners) may be responsible for grading a specific examination question, not every Examiner is assigned a question to grade. (*Id.*) When an Examiner is assigned a question to grade, he is responsible for overseeing the grading process and directing grading activities, including recording and reporting scores. (DSOF ¶ 12.) Graders help the Examiners with these duties. Graders read the exam answers, analyze the answers, and assign a grade to the answers. The Graders report that grade to the Examiner. (*Id.*) Defendants have provided the Court with declarations from the Graders and Examiners who scored the Arizona UBE administered on July 24 and July 25, 2012. (DSOF Exs. B and C; Doc. 62.) Plaintiffs object to these declarations as immaterial. (Doc. 70, Ex. 1 at 3.) Plaintiffs' objection is unfounded. The Examiner and Grader declarations are relevant to the grading of the July 2012 Arizona UBE, which is at issue in Girvin's retaliation claim.

The exams are graded anonymously. (DSOF ¶ 14.) Bar applicants are assigned a random identification (ID), which is the only identifier on the answers viewed by the Examiner and the Grader. (*Id.*) Communications regarding answers, grades, and applicants are conducted using the applicant's ID, not the applicant's name or other specific identifying information. (*Id.*) There were eight written questions on the July 2012 Arizona UBE. (DSOF ¶ 17.) Eight Examiners and thirteen Graders participated in the grading process. (*Id.*) The only people involved in grading the exams and issuing grades were the Examiners assigned to a particular question, and the Graders assigned to assist the Examiners. (*Id.* at ¶ 20.) None of the Examiners or Graders who participated in the grading process for the July 2012 Arizona Bar exam had any knowledge of the name of the person whose exam they graded at any point during or after the grading process. (*Id.* at ¶¶ 21, 22.)

Girvin does not present any facts, or even allege any facts, to raise a genuine issue that the Defendants directed any of the Examiners or Graders to assign a particular, or a failing, grade to Girvin's Arizona UBE. (Doc. 36 at 38-39; Doc. 70, Ex. 1 ¶¶ 14-15, 20-23.) Although Girvin speculates that someone other than the Graders and Examiners, such as an unidentified "licensing official," must have been involved in grading her July 2012 Arizona UBE (Doc. 70, Ex. 1 ¶¶ 14-15, 19, 20-23), her unsupported allegations are not sufficient to create a genuine issue of disputed fact.

Girvin further alleges that failing Arizona's UBE by one point is uncommon and thus her failure by that margin is evidence of retaliation. (Doc. 70, Ex. 1 ¶ 24.) Contrary to Girvin's assertion, her failure by one point does not support a finding of retaliation. Five applicants for the July 2012 bar exam scored one point below passing. (DSOF ¶ 24.) There is no evidence that any of those applicants had filed a lawsuit against the Arizona Supreme Court or any Arizona Supreme Court Justice before failing the UBE. Girvin's assertion that few applicants fail the Arizona UBE by one point does not create a genuine issue of disputed material fact regarding retaliation against her for participating in this lawsuit.[15] In summary, Girvin's retaliation claim fails as a matter law because she has not linked any of the Defendants with the alleged retaliation. Moreover, she fails to create a genuine issue of material fact regarding retaliation against her for participating in this lawsuit. Therefore, Defendants are entitled to summary judgment on Girvin's First Amendment retaliation claim.

---

[15] Under Arizona law, only the Arizona Supreme Court, not the Committee of Bar Examiners, has the authority to grant or deny admission to the bar. Ariz. R. Sup. Ct. 31. An applicant aggrieved by a decision of that Committee, may seek review in the Arizona Supreme Court. Ariz. R. Sup.Ct. 36(g)(1). (Doc. 54 at 16) Defendants argue that because Girvin did not petition the Arizona Supreme Court for review of the Committee of Bar Examiners' assignment of a failing grade, the court could not have retaliated against her, and therefore no deprivation of a constitutional right has taken place. (Doc. 54 at 16 (citing *Giannini v. State Bar of Cal.*, 206 Fed. Appx. 672 (9th Cir. 2006) (denying First Amendment retaliation claim alleging state bar assigned him a failing grade for advocating in favor of admission on motion without reciprocity because he did not petition the state supreme court for review).) Because the Court has determined that Girvin's retaliation claim fails on other grounds, the Court does not resolve this issue.

### B.    First Amendment Free Speech, Association, and Petition Claims

Plaintiffs argue that Arizona's AOM Rule impermissibly infringes on their First Amendment rights to free speech, association, and to petition in a public forum. (Doc. 36 at 32-38.)  As previously discussed in Section V.B, Plaintiffs' "as applied" claims are barred and the Court's review is limited to Plaintiffs' facial challenge to Arizona's AOM Rule.  "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Rust v. Sullivan*, 500 U.S. 173, 183 (1991). Plaintiffs have not met this strict standard.

### 1.    Content/View Point Discrimination and Breadth of Rule 34(f)

Plaintiffs contend that Arizona's AOM Rule discriminates on the basis of content and viewpoint because it "denies one group of citizens the right to address selected audiences on controversial issues of public policy . . . ." (Doc. 36 at 32) (quoting *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 546 (1980)).  Plaintiffs assert that Arizona's AOM Rule discriminates on the basis of content and viewpoint because "it permits attorneys from reciprocity states to obtain a license and petition the courts and speak; whereas it categorically prohibits attorneys from non-reciprocity states the same precious freedoms." (Doc. 36 at 32.)  Plaintiffs further argue that Arizona's AOM Rule is overly broad because it "chills more speech than necessary by categorically excluding lawyers from non-reciprocity states." (Doc. 36 at 34.)

Contrary to Plaintiffs' assertion, Arizona's AOM Rule does not "categorically prohibit" attorneys admitted to practice in non-reciprocity states from admission to practice law in Arizona.  Rather, these attorneys may obtain a license to practice law in Arizona by taking the Arizona UBE or by transferring a UBE score from another jurisdiction.  *See* Ariz. R. Sup. Ct. 34(a).  Admission on motion is not the only method of admission to the Arizona Bar.  Furthermore, the AOM Rule does not improperly "make differential licensing distinctions based on a speaker's identity as a member of a favored or disfavored bar." (Doc. 36 at 34.)  Although Arizona's AOM Rule distinguishes

between attorneys who were admitted to practice in states that Arizona deems reciprocal and attorneys who were not admitted to practice in such states, that distinction does not violate the First Amendment.

The Ninth Circuit recognizes that "states traditionally have enjoyed the sole discretion to determine qualifications for bar membership," and has upheld regulations on bar membership against First Amendment challenges. *See Paciulan*, 38 F. Supp. 2d at 1137 (N.D. Cal. 1999) (state rule permitting *pro hac vice* admission for non-residents, but not for residents licensed to practice law in other states, did not constitute impermissible speaker discrimination in violation of the First Amendment); *see also United Mine Workers of Am. v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967) ("the States have broad power to regulate the practice of law"). The Supreme Court has explained that the "interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975).

In addition, "to further its substantial interest in regulating the legal profession, the State of Arizona may institute reasonable time, place, and manner restrictions on Arizonans' First Amendment right to consult with an attorney." *Mothershed*, 410 F.3d at 611 (upholding Arizona's rule on *pro hac vice* admissions against First Amendment challenge). Arizona may also institute reasonable time, place, and manner restrictions on the practice of law in Arizona. *See Paciulan*, 38 F. Supp. 2d at 1137 (the practice of law is protected speech under the First Amendment). Time, place, and manner regulations are reasonable "provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 858 (9th Cir. 2004) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 79 (1989) (internal quotation marks omitted)).

"The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. Speech restrictions are content-neutral when they can be justified without reference to the content of the regulated speech." *Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1043 (9th Cir. 2002) (internal quotation marks and citation omitted). Rule 34(f) is content-neutral because it establishes eligibility requirements for admission on motion without regard to the area of law the bar applicant intends to practice. In other words, that rule does not limit admission on motion to attorneys based on the attorney's area of practice or the attorney's actual or prospective clients. *See Mothershed*, 410 F.3d at 612 (finding Arizona's *pro hac vice* rules "content-neutral because they impose a generally applicable prohibition on the retention of out-of-state counsel without regard to the subject matter of the representation.").

A time, place, and manner regulation is narrowly tailored if the substantial governmental interest it serves "would be achieved less effectively absent the regulation and the regulation achieves its ends without . . . significantly restricting a substantial quantity of speech that does not create the same evils." *Galvin v. Hay*, 374 F.3d 739, 753 (9th Cir. 2004) (internal quotation marks omitted; alteration in original). The State of Arizona has a substantial interest in regulating the practice of law within the state. *See Bates*, 433 U.S. at 361 ("the regulation of the activities of the bar is at the core of the State's power to protect the public"). Rule 34(f) furthers that interest by "secur[ing] for [Arizona] attorneys who decide to relocate, the advantage of favorable terms of admission to another state's bar by offering that same advantage to attorneys of such other states that reciprocate." *See Schumacher v. Nix*, 965 F.2d 1262, 1271-72 (3d Cir. 1992) (finding that bar admission rule prohibiting graduates from unaccredited law schools from sitting for Pennsylvania's bar examination, except such graduates who were members in good standing of a bar of a 'reciprocal state' and who had practiced law in that state for five years, was rationally related to the state's interest in securing mutual treatment for its attorneys seeking admission to the bar of another state). Finally, the

Arizona rules offer several additional avenues through which attorneys may gain admission to the Arizona Bar. *See* Ariz. Sup. Ct. R. 34(a). Because Arizona's AOM Rule is a reasonable time, place, and manner regulation, Plaintiffs' claims that the rule violates the First Amendment because it discriminates on the basis of content and viewpoint, and because it is overly broad, fail as a matter of law. Defendants are entitled to summary judgment on this claim.

## 2. Prior Restraint on Speech

Plaintiffs further contend that Arizona's AOM Rule is a "prior restraint" on speech that "categorically excludes" attorneys from non-reciprocity states from Arizona courtrooms before they have a chance to appear. (Doc. 36 at 36.) "[P]rior restraint analysis is triggered by the existence of official discretion to deny the use of a given forum for First Amendment protected activity." *Jersey's All-Am. Sports Bar, Inc. v. Wash. State Liquor Control Bd.*, 55 F. Supp. 2d 1131, 1137 (W.D. Wash. 1999). Thus, a prior restraint exists when the enjoyment of protected expression is contingent upon the approval of government officials. *Near v. State of Minn. ex rel Olson*, 283 U.S. 697, 713 (1931). For example, a prior restraint exists when a permit or license requirement places unchecked discretion in the hands of a government official. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988) (citations omitted).

In support of their claim that Arizona's AOM Rule is an improper prior restraint on speech, Plaintiffs rely on several cases, including *Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001). These cases do not support a finding that Arizona's AOM Rule is an improper prior restraint on speech.[16] (Doc. 36 at 35; Doc. 69 at 29-31.) In *Legal Services*, the Court considered limitations on a non-profit corporation's distribution of Congressionally-appropriated funds to grantee organizations that provide free legal

---

[16] *See* Doc. 69 at 20-25 (citing e.g., *Citizens United*, 558 U.S. at 337 ("the First Amendment does not allow political speech restrictions based on a speaker's corporate identity"); *Consol. Edison.*, 447 U.S. at 544 (suppression of inserts discussing controversial public policy issues in public utility's monthly bills infringed on the First Amendment); *Romer v. Evans*, 517 U.S. 620, 627-636 (1996) (amendment to Colorado Constitution that prohibited all state or local government action designed to protect homosexuals from discrimination violated the Equal Protection Clause)).

assistance to indigent clients, including clients seeking welfare benefits. *Id*. at 537. Congress prohibited the plaintiff corporation from funding any organization representing clients seeking to amend or challenge existing welfare law. *Id* at 538. The Court found that this funding restriction violated the First Amendment because it was "aimed at the suppression of ideas inimical to the Government's own interests." *Id*. at 549. The Court in *Legal Services* did not analyze the funding restriction at issue as a prior restraint on speech.

Moreover, even if Arizona's AOM Rule could be considered a restriction on an attorney's ability to express himself in the form of litigation, the AOM Rule contains objective standards that are amenable to judicial review and does not permit licensing decisions at the "whim" of the Arizona Supreme Court. *See* Ariz. R. Sup. Ct. 34(f); *Thomas v. Chicago Park Dist.*, 534 U.S. at 323 (restriction on free expression must "contain adequate standards to guide the official's discretion and render it subject to effective judicial review.") Furthermore, although the Supreme Court has held that litigation and the right to hire counsel may be entitled to First Amendment protection, *see Ill. State Bar Ass'n*, 389 U.S. at 221-22*,* the First Amendment is not an absolute bar to government regulation on free expression and association. *See NAACP v. Button*, 371 U.S. 415, 453 (1963).

Plaintiffs have not shown that Arizona's AOM Rule creates an improper prior restraint on speech as a matter of law and have not shown that there is a genuine dispute of material fact on that issue.[17] Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claim that Arizona's AOM Rule is an improper prior restraint on speech in violation of the First Amendment. *See In re Gadda*, 2006 WL 322515, at *2 (9th Cir. Dec. 7, 2006) (finding that court's order precluding attorney from reapplying for admission to bar of the district court until he satisfied a key membership requirement — establishing that he was a member of the California Bar — was not an unconstitutional

---

[17]     Although Defendants did not specifically address Plaintiffs' prior-restraint argument, they addressed Plaintiffs' First Amendment claims collectively and moved for summary judgment on all of Plaintiffs' First Amendment claims.

restraint on free speech); *Gallo v. U.S. Dist. Ct. for the Dist. of Ariz.*, 349 F.3d 1169, 1184 (9th Cir. 2003) (finding that a requirement that an applicant for admission to a district court's bar must be a member in good standing of the bar of the state's highest court was "well within the District Court's rule making power and . . . [did] not violate any constitutional right.") (internal citations omitted).

### 3.  Freedom of Association

Plaintiffs further argue that Arizona's AOM Rule constitutes "compelled association that abridges the First Amendment right of Freedom of Association . . . ." (Doc. 36 at 36.)  Plaintiffs argue that because Arizona's AOM Rule denies admission on motion to attorneys from non-reciprocal states, the rule abridges attorneys' freedom to associate with non-reciprocal states.  Plaintiffs also assert that Arizona's AOM Rule improperly compels attorneys to associate with reciprocal states.  (Doc. 36 at 37.)

The First Amendment includes "a right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) (citing cases).  Plaintiffs have not cited authority to support their argument that limiting admission on motion to reciprocating states violates the First Amendment right of freedom of association.  Indeed, under Ninth Circuit precedent, Arizona's AOM Rule does not violate the First Amendment right to association because Arizona provides other paths for gaining admission to the Arizona Bar.  *See Gordon v. State Bar of Cal.*, 2010 WL 750115 at *1 (9th Cir. Mar. 5, 2010) (rejecting claim that California's requirement that a bar applicant must have attended an ABA-accredited school violated her First Amendment freedoms of association and non-association "because attending an ABA-accredited school [was] not the only path for qualifying for the California state bar examination . . . .") (citing *Besig v. Dolphin Boating & Swimming Club*, 683 F.2d 1271, 1276 (9th Cir. 1982) (rejecting plaintiffs' First Amendment claim brought under non-association theory when membership in club

- 33 -

may have been more favorable but was not mandatory to access desired facilities)).[18] Because there are no disputed issues of fact related to Plaintiffs' claim based on a violation of the First Amendment right of association, and Defendants are entitled to judgment as a matter of law, the Court grants summary judgment in Defendants' favor on this claim.

### 4. Right to Petition

Finally, Plaintiffs assert that Arizona's AOM Rule violates the First Amendment right to petition "because it arbitrarily and irrationally assumes that the Plaintiffs, and all experienced lawyers from non-reciprocity states will file sham petitions for an anti-competitive purpose, and only file sham petitions for an anti-competitive purpose unless they take another entry level bar exam." (Doc. 36 at 38; Doc. 69 at 32 (citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) (discussing the Supreme Court's prior decision in *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), in which the Court held that immunity from antitrust liability did not apply to "sham" activities).)

Plaintiffs' arguments are derived from cases discussing the Sherman Act, not the First Amendment. Furthermore, Plaintiffs do not provide any support for their allegations that the Arizona Supreme Court adopted Arizona's AOM Rule because it believed that attorneys from non-reciprocal states would violate rules of ethical and professional conduct. Plaintiffs do not explain how their allegations support a claim that Arizona's AOM Rule violates their right to petition.

The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." *U.S. Const. amend. I.* The right to petition extends to all departments of the government, including the executive department, the

---

[18] Similarly, in *Paciulan*, the court found that a California rule preventing residents licensed to practice law in other states from gaining *pro hac vice* status in California courts did not violate the First Amendment by preventing them from freely associating with clients and other attorneys. 229 F.3d. at 1230. The court found that under the plaintiffs' "sweeping formulation of the First Amendment, any regulation of bar membership would be deemed unconstitutional." *Id.*

legislature, agencies, and the courts. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

The Arizona AOM Rule limits admission on motion to attorneys licensed in states Arizona deems reciprocal. The AOM Rule, however, does not deny Plaintiffs "meaningful access to the courts" because they "may still bring their claims in [Arizona] courts as litigants; they simply may not bring claims as lawyers without first satisfying [Arizona's] rules for admission to the state bar." *See Paciulan*, 38 F. Supp. 2d at 1138 (rejecting plaintiffs' claim that California's rule on admission *pro hac vice* violated their right of access to the court). In addition, Rule 34(a) provides several avenues for an attorney to gain admission to the Arizona Bar.

"[P]laintiffs have not alleged a denial of their First Amendment rights simply because they may not practice law in [Arizona] due to a failure to fulfill the requirements for admission to the State Bar." *See id.* Accordingly, Plaintiffs' First Amendment right-to-petition claim fails and the Court grants summary judgment in Defendants' favor on this claim.

### C.     Privileges and Immunities Clauses Claims

In Count II of the Second Amended Complaint, Plaintiffs assert a violation of the Privileges and Immunities Clauses of both Article IV, § 2 and of the Fourteenth Amendment. (Doc. 36 at 39.) Plaintiffs argue that Arizona's AOM Rule punishes non-resident attorneys from non-reciprocity states by forcing them to take the Arizona UBE although they have already passed another state's bar examination. Plaintiffs assert that Arizona's AOM Rule prevents attorneys from non-reciprocal states from pursuing professional pursuits and instituting legal actions in Arizona. (*Id.* at 41-42.)

As an initial matter, because Kolman and Girvin are Arizona residents, they have no claim under the Privileges and Immunities Clauses. *See Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 77 (1873) (the Privileges and Immunities Clauses provide "no security for the citizen of the state in which [the privileges] were claimed."); *United Bldg. and Const. Trades Council of Camden Cnty. and Vicinity v. Mayor and Council of the*

*City of Camden*, 465 U.S. 208, 217 (1984) (residents of New Jersey did not have a claim under the Privileges and Immunities Clauses based on ordinance by a New Jersey city requiring that at least 40% of employees and contractors working on city construction projects be city residents). Thus, the Court considers only Anderson's Privileges and Immunities Clauses claims because he is a Montana resident.

### 1.     Article IV, § 2

Under the Privileges and Immunities Clause of Article IV, "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."[19] U.S. Const. art. IV, § 2. This clause seeks to prevent "a state from discriminating against citizens of other states in favor of its own." *Hague v. C.I.O.*, 307 U.S. 496, 511 (1939) (holding that to establish a claim under the Privileges and Immunities Clause, plaintiffs must allege discrimination on the basis of out-of-state residency). Article IV, § 2 protects an individual's right to "pursue a livelihood in a State other than his own." *Baldwin v. Mont. Fish & Game Comm'n*, 436 U.S. 371, 386 (1978). The Supreme Court has held that the practice of law is considered a "privilege" for purposes of the Privileges and Immunities Clause of Article IV, § 2. *Sup. Ct. of N.H. v. Piper*, 470 U.S. 274, 276-78 (1985).

Here, Arizona's AOM Rule does not depend on a bar applicant's residency and is not a residency classification. *See* Ariz. R. Sup. Ct. 34(f). Rather, its application turns on whether the state or states in which an attorney has "been admitted by bar examination," or in which an attorney has "been admitted to and engaged in the active practice of law for at least five years," allow reciprocity for licensed Arizona attorneys. Ariz. R. Sup. Ct. 34(f)(1)(A). This rule applies equally to Arizona residents and non-residents who seek admission to the Arizona Bar on motion.

In the cases that Plaintiffs cite in support of their claim, the courts held that the Privileges and Immunities Clause prohibits discrimination against out-of-state applicants

---

[19]     Under this Clause, the term "citizen" and "resident" are used interchangeably. *See Austin v. New Hampshire*, 420 U.S. 656, 662 n.8 (1975).

for bar admission who met all of the necessary qualifications for bar membership except for residence in the state. *See Sup. Ct, of Va. v. Friedman*, 487 U.S. 59 (1988); *Piper*, 470 U.S. 274. These cases are distinguishable because the Court was analyzing rules with residency requirements. In *Piper*, the challenged rule included a residency requirement for admission to the bar. 470 U.S. at 277 n.1 (finding that New Hampshire Supreme Court Rule excluding non-residents from the bar violated the Privileges and Immunities Clause of Article IV, § 2). In *Friedman*, the Court found that Virginia's residency requirement for admission to the state's bar without examination violated the Privileges and Immunities Clause.[20] *Id*. at 65-66. Here, contrary to Plaintiffs' allegation (Doc. 36 at 8-9), Arizona's AOM Rule does not require Arizona residency as a prerequisite to admission on motion to the Arizona Bar. *See* Ariz. R. Sup. Ct. 34(f)(1)(A)-(H). The rule applies equally to residents and non-residents who wish to apply for admission on motion. Thus, the rule does not implicate Article IV, § 2.

Relying on *Hillside Dairy v. Lyons*, 539 U.S. 59 (2003), Plaintiffs further argue that discrimination on the basis of out-of-state residency is not a necessary element for a violation of the Privileges and Immunities Clause. (Doc. 69 at 9-10), As Defendants argue, Plaintiffs misinterpret *Hillside Dairy*. (Doc. 72 at 9.) In *Hillside Dairy*, the Court did not hold that discrimination on the basis of out-of-state residency is no longer required to establish a Privileges and Immunities Clause claim. Rather, the Court found that a claim for a violation under the Privileges and Immunities Clause cannot be dismissed merely because the challenged law does not discriminate against out-of-state residents on its face. *Id*. at 67.

Here, Arizona's AOM Rule does not discriminate against out-of-state citizens on its face or as applied. Indeed, in a similar challenge to a reciprocity provision in an

---

[20]     In *Friedman*, the Court explained that "*Piper* establishes that a nonresident who takes and passes an examination prescribed by the State, and who is otherwise qualified for the practice of law, has an interest in practicing law that is protected by the Privileges and Immunities Clause." *Id*. at 65. "The clear import of *Piper* is that the Clause is implicated whenever . . . a State does not permit qualified nonresidents to practice law within its borders on terms of substantially equality with its own residents." *Id*. at 66.

admission on motion rule, the Fourth Circuit concluded that the reciprocity provision did not violate Article IV, § 2 noting that the challenged state rule imposed the same obligations on its citizens that it imposed on citizens of other states. *See Hawkins v. Moss*, 503 F.2d 1171, 1180 (4th Cir. 1974) (upholding South Carolina Supreme Court rule allowing an attorney licensed in another state to be admitted on motion to the South Carolina Bar, provided the other state granted reciprocal rights to attorneys admitted to practice in South Carolina). Thus, the Court concludes that Arizona's AOM does not implicate the Privileges and Immunities Clause of Article IV, § 2 and Defendants are entitled to summary judgment on this claim.

### 2. Fourteenth Amendment Privileges and Immunities Clause

Plaintiffs also assert that Arizona's AOM Rule interferes with their right to interstate travel to pursue their profession in violation of the Privileges and Immunities Clause of the Fourteenth Amendment. (Doc. 36 at 39, 41; Doc. 69 at 18.) This Clause has traditionally protected only those rights accruing from United States citizenship. *See e.g. Slaughter-House Cases*, 83 U.S. at 77 (1872).

The Supreme Court did not specifically identify these privileges and immunities in the *Slaughter-House Cases*, but included among them "some which owe their existence to the Federal government, its National character, its Constitution, or its laws." *Id*. "The courts and legal commentators have interpreted the decision as rendering the Clause essentially nugatory." *Paciulan*, 229 F.3d at 1229 (citing Robert H. Bork, *The Tempting of America 180* (1990) ("[T]he privileges and immunities clause . . . has remained the cadaver that it was left by the *Slaughter–House Cases*."); Laurence H. Tribe, American Constitutional Law 556 (2d ed. 1988) ("The S*laughter–House* definition of national rights renders the fourteenth amendment's privileges or immunities clause technically superfluous[.]"); Kevin Christopher Newsom, *Setting Incorporationism Straight*: *A Reinterpretation of the Slaughter–House Cases*, 109 Yale L.J. 643, 646 (2000) ("In contemporary constitutional discourse, *Slaughter–House* stands for one simple truth: that the Privileges or Immunities Clause is utterly incapable of performing any real work in

the protection of individual rights against state interference, and that any argument premised on the Clause is therefore a constitutional non-starter.")).

In *Saenz v. Roe,* however, the Supreme Court applied the Privileges and Immunities Clause in a right-to-travel context to hold that travelers deciding to become permanent residents of a new state have "the right to be treated like other citizens of that State." 526 U.S. 489, 500-07 (1999). Plaintiffs rely on *Saenz* in support of their assertion that Arizona's AOM Rule violates that the Privileges and Immunities Clause of the Fourteenth Amendment by restricting travel. (Doc. 36 at 41, Doc. 69 at 12.)

Plaintiffs' reliance on *Saenz* is misplaced because Arizona's AOM Rule treats Plaintiffs like residents of Arizona who seek admission on motion. In *Saenz*, California imposed a durational residency requirement on welfare benefits by limiting those benefits during a recipient's first year of California residency to the amount that the recipient would have received in the state of his prior residence. *Saenz*, 526 U.S. at 1519. Unlike *Saenz*, Arizona's AOM Rule does not impose a durational residency requirement on admission to the Arizona Bar. Additionally, Arizona's AOM Rule promotes travel by easing admission requirements for some out-of-state attorneys. Therefore, Plaintiffs' Fourteenth Amendment Privileges and Immunities Clause claim fails and the Court enters summary judgment in Defendants' favor on this claim.

### D.     Dormant Commerce Clause

In Count III of the Second Amended Complaint, Plaintiffs assert that Arizona's AOM Rule violates the Dormant Commerce Clause because it unreasonably burdens interstate commerce by disqualifying "certain experienced attorneys from admission on motion privileges . . . depending on prior state licensing." (Doc. 36 at 42-44.) The Dormant Commerce Clause prohibits "economic protectionism — that is regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. v. Limbach*, 486 U.S. 269, 273 (1988).

In this case, the burden to show that the challenged rule burdens interstate commerce rests with Plaintiffs. *See Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)

1   (party challenging validity of rule bears of burden of showing that it discriminates against

2   interstate commerce).  Plaintiffs must show "that the rule favors residents vis-a-vis non-

3   residents, either on its face or in its practical effects."  *Shapiro v. Cooke*, 552 F. Supp.

4   581, 588 (D.C.N.Y. 1982).  When a state regulation promotes a legitimate local public

5   interest that has only incidental effects on commerce, the regulation is constitutional

6   unless the burden on commerce is excessive compared to the local benefits.  *Pike v.*

7   *Bruce Church, Inc.*, 397 U.S. 137, 142 (1970),

8       As Defendants argue, courts have found that states have a legitimate, substantial

9   interest in regulating the practice of law for public protection purposes.  (Doc. 54 at 20

10  (citing *Hawkins*, 503 F.2d at 1175).  The Supreme Court has recognized "the traditional

11  authority of state courts to control who may be admitted to practice before them."  *Leis v.*

12  *Flynt*, 439 U.S. 438, 444 n.5 (1979).[21]  Additionally, courts have recognized that "[i]f a

13  state may constitutionally require all applicants to take the examination, the Commerce

14  Clause is not offended by a rule which permits some, but not all, out-of-state attorneys to

15  be admitted on waiver of the examination."  *Shapiro v. Cooke*, 552 F. Supp. 581, 588

16  (D.C.N.Y. 1982).

17

18  _____

19      [21]    Plaintiffs argue that Defendants erroneously rely on *Leis v. Flynt*, 439 U.S.
    438 (1978) for the proposition that the practice of law is not a fundamental right because
20  *Leis* was overruled in *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), "in which
    the Court held that the denial of a defendant's right to out-of-state counsel admitted *pro*
21  *hac vice* is reversible error per se."  (Doc. 69 at 20.)  Plaintiffs misconstrue *Gonzalez-*
    *Lopez*.

22      In *Leis*, the Supreme Court held that an out-of-state attorney seeking to appear
    *pro-hac* vice did not have an interest protected by the Due Process Clause of the
23  Fourteenth Amendment.  439 U.S. at 442.  Contrary to Plaintiffs' assertion, *Gonzalez-*
    *Lopez* did not overrule that holding.  In *Gonzalez-Lopez*, the Court recognized that
24  criminal defendants who have the means to hire their own attorneys have a Sixth
    Amendment right to counsel of their choice.  548 U.S. at 144.  The Court held that the
25  trial court's erroneous deprivation of a criminal defendant's choice of counsel — by
    denying counsel admission *pro hac vice* — entitled him to reversal of his conviction.  *Id.*
26  at 150.  In *Gonzalez-Lopez*, the government conceded that the trial court had erroneously
    denied defendant counsel of his choosing, thus, the Court did not consider the state's *pro*
27  *hac vice* rules or determine whether refusing to grant *pro hac vice* status violated any
    rights of counsel.  The Court's holding was based on the Sixth Amendment.  It is not
28  applicable to this case and did not overturn the holding in *Leis* that the practice of law is
    not a fundamental right for purposes of the Due Process Clause.

- 40 -

Moreover, the existence of alternative means for admission to the bar, such as the Arizona UBE, undermines Plaintiffs' Dormant Commerce Clause claim. *See Scariano v. Justices of Sup. Ct. of State of Ind.*, 38 F.3d 920, 927 (7th Cir. 1994) ("The requirement that an applicant sit for the bar exam can hardly be deemed discriminatory when the vast majority of Indiana attorneys have taken the exam. In the past, this court has found the exam alternative significant under the Commerce Clause.").

Plaintiffs further argue that Arizona's AOM Rule burdens commerce by requiring attorneys licensed in non-reciprocity states take an "entry level bar" examination. (Doc. 36 at 43.) In support of this argument, Plaintiffs cite *Wiesmueller v. Kosobucki*, 571 F.3d 699 (7th Cir. 2009). In *Wiesmueller*, the court found that the Wisconsin Supreme Court rule allowing graduates of the two state law schools to be admitted to practice law in Wisconsin without taking the bar examination was subject to scrutiny under the Commerce Clause. *Id*. at 707. The court found that "[i]t is enough that an aspiring lawyer's decision about where to study, and therefore, where to live as a student, can be influenced by the diploma privilege to bring this case at least within the outer bounds of the commerce clause; because the movement of persons across state lines, for whatever purpose, is a form of interstate commerce." *Id*. at 705. The Seventh Circuit remanded the case to the district court to determine whether the diploma privilege violated the Commerce Clause.

Unlike the rule at issue in *Wiesmueller*, Arizona's AOM Rule applies equally to residents of Arizona and non-residents and does not burden interstate commerce. Rather, Arizona's AOM Rule is a "means of making available reciprocal admissions to the Arizona Bar" and it promotes interstate commerce by easing the admission requirements for some out-of-state attorneys. *See Golfarb v. Sup. Ct. of Va.*, 766 F.2d 859, 863 (4th Cir. 1985) (rejecting commerce clause challenge to Virginia rule admitting only those out-of-state attorneys to the bar without examination who intended to practice full time in Virginia). Thus, Arizona's AOM Rule encourages cross-state or multi-state practice and does not place an undue burden on interstate commerce. *See Shapiro*, 552 F. Supp. at

588 (noting that New York's admission-on-motion rule "encourages and enhances" interstate commerce by waiving the bar examination for qualified out-of-state attorneys).

Arizona's AOM Rule also effectuates a legitimate local public interest of encouraging other states to admit Arizona attorneys on similar terms of reciprocal admission and therefore overcomes any minimal burden on interstate commerce that might exist. *See* (DSOF ¶ 7); *Schumacher*, 965 F.2d at 1270 (finding that promoting reciprocal bar admission on motion a legitimate interest). Therefore, Plaintiffs' Dormant Commerce Clause claim fails and the Court grants Defendants summary judgment on this claim.[22]

### E.    Equal Protection Claim under the Fourteenth Amendment

Count IV of the Second Amended Complaint alleges that Arizona's "hop-scotch licensing classifications violate the Equal Protection Clause." (Doc. 36 at 44-45; Doc. 70 at 8.) In support of this claim, Plaintiffs point to the Arizona Supreme Court's exceptions to the standard examination and admission process, including (1) Rule 38(a) *pro hac vice* admission, (2) Rule 38(b) "certificate of registration" for foreign legal consultants, (3) Rule 38(c) admission without examination for full-time law school faculty members, (4) Rule 38(f) admission for attorneys working for approved legal services organizations to practice in Arizona, and (5) Rule 38(h) admission for in-house corporate counsel. (Doc. 36 at 44-45; Doc. 70 at 8.) Plaintiffs assert that these rules on admission are illogical because, although Plaintiffs are ineligible for admission on motion, they

---

[22]    Plaintiffs also cite *Great Atlantic & Pacific Tea Co. v. Cottrell*, 424 U.S. 366 (1976) in support of their Dormant Commerce Clause claim. (Doc. 36 at 43; Doc. 70 at 3.) In *Great Atlantic*, the Court rejected the reciprocity requirement of a Mississippi regulation allowing the sale of milk products from Louisiana in Mississippi if Louisiana accepted milk products from Mississippi on a reciprocal basis. The Court found that the reciprocity requirement did not serve Mississippi's interest in maintaining its health standards because it would allow milk from Louisiana even if its standards were lower than Mississippi's standards. *Id.* at 376. The Court did not hold that all reciprocity requirements violate the Commerce Clause; instead its holding turned on its finding that the reciprocity requirement did not serve a state interest. Here, Arizona's AOM Rule serves the interest of encouraging other states to admit Arizona attorneys on similar terms. *See* (DSOF ¶ 7.)

theoretically could be qualified to practice law in Arizona under Rules 38(c), 38(f), 38(g), and 38(h). (Doc. 36 at 45.) Plaintiffs appear to argue that because Arizona provides a variety of avenues for attorney admission to the Arizona Bar, its AOM Rule does not serve a legitimate interest. (*Id.*; Doc. 70 at 7-9.)

When evaluating claims under the Equal Protection Clause, the court must first determine the appropriate level of scrutiny to apply to the challenged rule. When a law disadvantages a suspect class or impinges on a "fundamental right," the court applies the strict scrutiny test. In the absence of such circumstances, the court analyzes the rule under a rational basis test. *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1327 (9th Cir. 1985). Plaintiffs correctly state that rules that infringe on fundamental rights are subject to strict scrutiny (Doc. 36 at 44), but they have not shown infringement on a fundamental right or discrimination against a suspect class that would trigger that standard of review in this case. *See Giannini*, 911 F.2d at 358 (9th Cir. 1990) (finding that "the challenged bar examination neither impairs a fundamental right nor discriminates against a suspect class").

In *Piper*, the Supreme Court held that the right to practice law is a "fundamental right" for purposes of the Privileges and Immunities Clause. 470 U.S. at 1276-78. The holding in *Piper*, however, is limited to the Privileges and Immunities Clause and does not apply in the context of an Equal Protection Clause claim. *See Lupert*, 761 F.2d at 1327 n.2; *Giannini*, 911 F.2d at 359 (there is no fundamental right to practice law or to take a bar examination under the Fourteenth Amendment Equal Protection Clause). Additionally, Plaintiffs do not define any "suspect class" to which they belong and lawyers are not members of a "suspect class." *See Giannini*, 911 F.2d at 359 ("lawyers are not a suspect class"); *Maynard v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 701 F. Supp. 738, 742 (C.D. Cal. 1988) (finding that there is no legal support for the contention that federal legal practitioners should be deemed a suspect class).

Accordingly, the proper standard of review is the rational basis test. *See Schware v. Bd. of Exam'rs*, 353 U.S. 232, 238-39 (1957). The Supreme Court has been especially

deferential to legislative classifications in the context of challenges to the state regulation of licensed professions. *See, e.g., Watson v. Maryland*, 218 U.S. 173 (1910); *Ohralik v. State Bar Ass'n*, 436 U.S. 447 (1978). Here, as Defendants assert, Arizona's AOM Rule is rationally related to Arizona's legitimate interest in regulating its bar and seeking to ensure that attorneys licensed in Arizona will be treated equally in states having reciprocity with Arizona. (DSOF ¶ 7); *see Schumacher*, 965 F.2d at 1270 (finding that promoting reciprocal bar admission on motion is a legitimate interest for purposes of the Equal Protection Clause); *Shapiro*, 552 F.2d at 588 n.13; *Hawkins v. Moss*, 503 F.2d at 1178 ("Reciprocal statutes or regulations, it has been uniformly held, are designed to meet a legitimate state goal and are related to a legitimate state interest. For this reason, they have been found invulnerable to constitutional attack on equal protection grounds.").

Plaintiffs do not explain how Arizona's exceptions to the standard examination and admission procedures provided in Rule 38, support their claim that Arizona's AOM Rule violates the Equal Protection Clause. (Doc. 36 at 45.) Thus, there are no disputed facts regarding this claim and Defendants are entitled to judgment as a matter of law. Therefore, the Court enters summary judgment in Defendants' favor on Plaintiffs' claim under the Equal Protection Clause.

### F. Fourteenth Amendment Due Process

In Count V of the Second Amended Complaint, Plaintiffs allege substantive and procedural due process violations. (Doc. 36 at 45.) Plaintiffs' allegations in support of their due process claims are difficult to decipher. For example, Plaintiffs allege that "[t]he testing process for sister-state attorneys is a taboo subject, shrouded in secrecy, wrapped in a riddle, [and] surrounded by a conundrum in large part because of a gentleman's club agreement." (Doc. 36 at 46.) Even viewed in the light most favorable to Plaintiffs, these allegations do not state a claim for relief. *See* Rule 12(b)(6). The Court nonetheless addresses Plaintiffs' claims.

### 1. Substantive Due Process

Plaintiffs argue that Defendants' reliance on Arizona's UBE to test already licensed attorneys violates the Due Process Clause because the UBE does not conform to standardized testing requirements. (Doc. 36 at 37 n.31; Doc. 70 at 9.) In support of this argument, Plaintiffs refer to *The Standards for Educational and Psychological Testing* (1999), published by the American Educational Research Association, American Psychological Association, and the National Council on Measurement in Education. Defendants respond that this is a policy argument that does not support a due process claim.

Each state is free to prescribe the qualifications for admission to practice for those lawyers who appear in its courts. *Leis*, 439 U.S. at 442. Plaintiffs do not explain why or how the *Standards for Educational and Psychological Testing* are applicable to the Arizona UBE or how Arizona's alleged failure to comply with those standards gives rise to a due process claim. Further, the Ninth Circuit has held that a "state need not use a professionally validated examination." *Giannini*, 911 F.2d at 354, 358. Accordingly, Plaintiffs have not shown a substantive due process violation.

Moreover, Plaintiffs do not allege that Defendants participated in drafting Arizona's UBE and are thus responsible for any failure to conform to certain testing standards. Because a government official is only liable for his own conduct, and Plaintiffs have not presented any evidence that Defendants acted or failed to act unconstitutionally, Defendants are entitled to summary judgment on this claim. *See Simmons*, 609 F.3d at 1020-21 (granting summary judgment in favor of defendants on plaintiff's claims that defendants were liable for failing to supervise when there was no evidence that defendants themselves engaged in unconstitutional conduct).

### 2. Procedural Due Process

Girvin alleges that she was denied procedural due process because she was not provided notice of her "MBE scores or subjective (MEE) scores in each subject." (Doc. 36 at 47.) She further alleges that Arizona's grading policy is secret, the results of

Arizona's UBE are secret, and she was not provided a meaningful opportunity for judicial review of her examination results.  (Doc. 36 at 47.)  The Court "assume[s] that the due process clause requires the state to employ fair procedures in processing applications for admission to the bar, and therefore, that an applicant who has failed the bar examination is entitled to some procedural protections."  *See Whitfield v. Ill. Bd. of Law Exam'rs*, 504 F.2d 474, 477-78 (7th Cir. 1974).  However, there are no genuine issues of disputed fact regarding Girvin's claim and it fails as a matter of law.

Contrary to her assertion, the rules governing admission to the Arizona Bar provide that an unsuccessful applicant may petition the Arizona Supreme Court for review of a grade assessed on the bar exam.  *See* Ariz. R. Sup. Ct. 35(c)(4).  Although Girvin did not petition the Arizona Supreme Court for review, she had a "full and fair opportunity" to do so.  (DSOF ¶ 28; Doc. 70, Ex. 1 ¶ 25-31); *see Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 (1982) (a "full and fair opportunity" means that the "state proceedings need do no more than satisfy the minimal procedural requirements for the Fourteenth Amendment's Due Process Clause.").  Additionally, under the rules governing admission to the Arizona Bar, Girvin could retake Arizona's UBE two more times without approval from the Committee on Examination.  *See* Ariz. R. Sup. Ct. 35(a)(1).

Considering Girvin's opportunity to challenge her grade before the Arizona Supreme Court and to retake the Arizona UBE, the requested procedures —"notice of her MBE scores" and of her "subjective scores (MEE) in each subject" or further information about the grading process — were not constitutionally required.  *See Brewer v. Wegmann*, 691 F.2d 216, 217-18 (5th Cir. 1982) (finding that bar-examination procedure that included destruction of examinations after grading thereby denying applicant an opportunity review his own examination or obtain review of the fairness of the grade did not violate due process because applicant could retake the examination).  Several courts have rejected due process challenges to the bar examination processes when applicants are permitted to retake the examination.  *See Tyler v. Vickery*, 517 F.2d 1089, 1103-05

(5th Cir. 1975) (holding that due process is not offended by a bar-examination procedure that does not allow failing applicants to obtain review of the determination that he failed, "primarily because an unqualified right to retake the examination at its next regularly scheduled administration satisfies both the purpose of a hearing and affords it protection"); *Singleton v. La. State Bar Ass'n,* 413 F. Supp. 1092, 1098-1100 (E.D. La. 1976) (finding that destruction of examination papers and the lack of a procedure for review of a failing paper did not offend due process); *Whitfield*, 504 F.2d at 477-78 (7th Cir. 1974) (due process does not require that a bar applicant be permitted to see his examination when he had a right to retake it because "reexamination provides an adequate means of exposing grading errors."). The Court therefore finds that Girvin was provided with procedural due process and grants summary judgment in favor of Defendants on Plaintiff Girvin's procedural due process claim.

### G.       Sixth Cause of Action — "Violation of 42 U.S.C. § 1983"

Count VI of the Second Amended Complaint incorporates the allegations contained in the preceding counts and asserts a "violation of 42 U.S.C. § 1983." (Doc. 36 at 49.) That statute, however, merely provides a private cause of action and is not itself an independent source of substantive constitutional rights. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Accordingly, the Court will grant summary judgment in favor of Defendants on Count VI to the extent that is alleges an independent violation of § 1983.

### H.       Conclusion Regarding Summary Judgment on Plaintiffs' Claims

As set forth above, the Court finds that Plaintiffs have failed to establish that there are any genuine issues of material fact regarding their claims and that Defendants are entitled to judgment as a matter of law. Therefore, the Court grants summary judgment in Defendants' favor on (1) Girvin's First Amendment retaliation claim, (2) Plaintiffs' claims that the AOM Rule facially violates their First Amendment rights to free speech, association, and to petition in a public forum, (3) Plaintiffs' Privileges and Immunities Clauses claims, (4) Plaintiffs' Dormant Commerce Clause claims, (5) Plaintiffs' Equal

Protection Clause claims, (6) Plaintiffs' due process claims, and (7) Plaintiffs' claim for a violation of 42 U.S.C. § 1983.

## I. Declaratory Judgment

Finally, Plaintiffs request declaratory judgment under 28 U.S.C. § 2201. (Doc. 36 at 49.) As set forth above, Plaintiffs have not established a violation of any substantive right. Because a claim for declaratory relief cannot stand on its own, the Court grants Defendants summary judgment on Plaintiffs' claim for declaratory relief. *See Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1044 (9th Cir. 2010) (affirming dismissal of claims for declaratory relief based on dismissal of claims for substantive relief); *Hoeck v. City of Portland*, 57 F.3d 781, 787 (9th Cir. 1995) (having "determined that the City did not violation [plaintiff's] substantive due process rights, [the court] find[s] that [plaintiff's] claim for declaratory relief is likewise without merit.").

## VII. Motion to Join "John Doe" Plaintiff

On August 6, 2013, Plaintiffs filed a motion to join a John Doe plaintiff. (Doc. 93.) The motion seeks to join a party and to add claims that Rule 34(f)(1)(A), as amended effective July 1, 2013, is unconstitutional. John Doe purports to be an attorney admitted to the Florida Bar by examination who has practiced law in Florida for over twenty years (Doc. 93, attachment 1 at 2), and who has been admitted on motion to the Texas and Tennessee Bars. (*Id.,* attachment 1 at 3.) Plaintiffs assert that under Rule 34, as amended, even though Texas and Tennessee have reciprocity with Arizona, John Doe is ineligible for admission on motion under Rule 34 because he has not practiced in either Texas or Tennessee for five of the last seven years.

### A. Amendment of Pleadings

Because Plaintiffs have previously amended their complaint, and Defendants do not consent to a further amendment, Plaintiffs need leave of court to amend the Second Amended Complaint. *See* Fed. R. Civ. P. 15(a); *Desert Empire Bank v. Ins. Co*., 623 F.2d 1371, 1374 (9th Cir. 1980) (noting that Rule 15 standards are implicated by a motion to amend pleadings to add a new party). As indicated in the Court's prior order,

Plaintiffs must comply with Local Rule of Civil Procedure Local 15.1. (Doc. 18.) This rule provides, in relevant part, that:

> A party who moves for leave to amend a pleading . . . must attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added. The proposed amended pleading is not to incorporate by reference any part of the preceding pleading, including exhibits.

> LRCiv 15.1(a).

Although Plaintiffs' motion discusses John Doe and the claims he wishes to assert, Plaintiffs have not attached a proposed third amended complaint as an exhibit to their motion. In view of Plaintiffs' failure to comply with Local Rule 15.1(a), the Court will deny their motion for leave to amend.

Moreover, even if Plaintiffs had complied with Rule 15.1(a), the Court would deny leave to amend the complaint a third time. Rule 15 provides that the court should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The court should permit amendment in the absence of undue delay, bad faith or dilatory motive, prejudice to the opposing party, and futility of the amendment. *Foman v. United States*, 371 U.S. 178 (1962). In *Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973), the Ninth Circuit considered these factors, and concluded that they are not of equal weight. Specifically, the court noted that, standing alone, even lengthy delay is an insufficient ground for denial of leave to amend. "Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading." *Id.* at 1191; *see also Hanson v. Hunt Oil Co.*, 398 F.2d 578, 581-82 (8th Cir. 1968).

Here, because John Doe's claims are based on July 1, 2013 amendments to Arizona's AOM Rule, and the motion to amend was filed one month after the effective date of that amendment, there is no evidence of undue delay on Plaintiffs' part. However, permitting Plaintiffs leave to file a third amended complaint at this point in the

proceedings would prejudice Defendants. This matter has been pending for nearly a year and Plaintiffs have already amended their complaint twice. As discussed in this Order, the parties have filed and exhaustively briefed cross motions for summary judgment and several other motions, without a case management order or any discovery. Therefore, the parties apparently consider this matter suitable for resolution without discovery. The procedural posture of this case weighs in favor of denying Plaintiffs' motion to amend. *See Matsumoto v. Republic Ins. Co.*, 792 F.2d 869, 872 (9th Cir. 1986) (holding that the district court did not abuse its discretion in denying motion to amend when discovery had already commenced and defendant's motion for summary judgment was pending).

### B. Same Transaction or Occurrence

Plaintiffs now seek leave to add an unidentified plaintiff to assert claims related to a July 1, 2013 amendment to Arizona's AOM Rule. Although the AOM Rule, as it existed before the July 1, 2013 amendment, is the subject of the Second Amended Complaint, John Doe's challenges to the AOM Rule as it now exists are unique to his situation. In his declaration in support of the motion for joinder, John Doe states that his "situation differs from the other plaintiffs." (Doc. 93, attachment 1 at 2.) John Doe asserts that "the clerk of admissions for Arizona attorney licensing," told him that he does not qualify for admission on motion under the "new Rule because he [has] not worked in Texas or Tennessee for five of the last seven years." (Doc. 93, attachment 1 at 3.) John Doe does not indicate whether he formally applied for admission to the Arizona Bar on motion.

John Doe's challenges to amended Rule 34(f)(1)(A)(ii) do not arise out of the same transaction or occurrences that are claimed by Plaintiffs in the Second Amended Complaint. *See* Fed. R. Civ. P. 20(a)(1)(A) (providing that "[p]ersons may join in one action as plaintiffs if . . . they assert any right to relief . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and there is a common question of law or fact.); *see also Desert Empire*, 623 F.2d at 1374 (noting

that Rule 20 standards are implicated by a motion to amend pleadings to add a new party).

Additionally, John Doe's assertion that the amended rule is unconstitutional is contrary to Plaintiff Kolman's current position that he should be admitted to the Arizona Bar under the amended rule. Thus, the proposed claims fail the commonality requirement of Rule 20. *See* Fed. R. Civ. P. 20(a)(1)(A) and (B). To the extent that John Doe seeks to join in the claims asserted in the Second Amended Complaint, amendment would be futile because, as set forth in this Order, those claims fail as a matter of law.

Finally, the addition of a "John Doe" plaintiff on the facts of this case is inconsistent with Rule 10(a), which requires that a complaint name all parties. Fed. R. Civ. P. 10(a); *see also In re Zicam Cold Remedy Mktg. Sales Practices, and Prod. Liab. Litig.*, 2010 WL 2308388, at *2 (D. Ariz. Jun. 9, 2010) (denying leave to amend to add a John Doe defendant based, in part, on Rule 10(a)); *see also S. Methodist Univ. Ass'n v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979) (discussing that courts have allowed plaintiffs to use fictitious names when the issues involve sensitive matters of a "highly personal nature, such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families . . . .).

## VIII. Conclusion

As set forth above, the Court enters summary judgment in Defendants' favor. Because Defendants' Motion for Summary Judgment (Doc. 54) and Defendants' Motion to Dismiss (Doc. 52) assert nearly identical arguments, the Court denies the motion to dismiss as moot.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Hearing (Doc. 84) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Requests to Take Judicial Notice (Docs. 87 and 88) are **GRANTED** to the extent that the Court takes judicial notice that the Supreme Court of Montana adopted the UBE in July 2013.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 54) is **GRANTED** and that the Clerk of Court shall enter judgment in favor of Defendants and against Plaintiffs and shall terminate this action.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 28) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. 52) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Motion for "Order Admitting [Kolman] Forthwith to the Bar of the Arizona Supreme Court Based on a Recent Change in the Challenged Arizona Supreme Court Rule" (Doc. 90) is **DENIED** for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Join Party (Doc. 93) is **DENIED.**

Dated this 19th day of September, 2013.

_____
Bridget S. Bade
United States Magistrate Judge